UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - x

JOHN S. MACDONALD and JESSICA C. SPEARMAN,

                Plaintiffs,

          v.

CASHCALL, INC.;
WS FUNDING, LLC;
DELBERT SERVICES CORP.; and
J. PAUL REDDAM,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 2:16-cv-02781-MCA-LDW

Hon. Madeline Cox Arleo, U.S.D.J.

**Oral Argument Requested**

Motion Date:  May 6, 2019

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
(A Delaware Limited Liability Partnership)
4 Times Square
New York, New York 10036
(212) 735-3000 (telephone)
(212) 735-2000 (facsimile)

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000 (telephone)
(202) 661-0560 (facsimile)

*Attorneys for Defendants CashCall, Inc., WS
Funding, LLC, Delbert Services Corp. and
J. Paul Reddam*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................3

I.     FACTUAL BACKGROUND.............................................................................3

     A.     Mr. MacDonald's Western Sky Loan ....................................................4

     B.     Ms. Spearman's Western Sky Loans ....................................................5

II.     PROCEDURAL BACKGROUND....................................................................6

     A.     The CFPB Action................................................................................6

     B.     The New Jersey Department of Banking and Insurance Order ............7

     C.     This Action.........................................................................................8

ARGUMENT .........................................................................................................8

I.     A CLASS ACTION IS NOT THE SUPERIOR METHOD OF ADJUDICATION ..........8

     A.     Plaintiffs Have Not Demonstrated That Their Proposed Class Action Is Superior to the CFPB Action or the NJDOB Action, or to Individual Actions ............................................................................................9

          1.     This Action Is Not Superior to the CFPB Action. .......................9

          2.     This Action Is Not Superior to the NJDOB Action ..................13

          3.     This Action Is Not Superior to Individual Actions ...................14

     B.     Plaintiffs' Superiority Analysis Is Insufficient ....................................14

II.     PLAINTIFFS' CLASS DEFINITIONS ARE NOT ASCERTAINABLE........................15

III.     COMMON QUESTIONS OF LAW OR FACT DO NOT PREDOMINATE .................17

     A.     The Classes Include Uninjured Borrowers Under the Usury Statute. ...................18

     B.     The Classes Include Borrowers Who Received the Benefit of the Bargain And Were Not Injured ......................................................................22

     C.     Individualized Issues Predominate Regarding Proximate Causation ...................23

IV.     PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY AND ADEQUACY REQUIREMENTS..........................................................................................26

      A.      Plaintiffs Are Not Typical of the Purported Classes...............................................26

      B.      Plaintiffs Have Failed to Show That They Are Adequate Class Representatives .........................................................................................28

V.      PLAINTIFFS WAIVED ANY RIGHT TO BRING THIS CLASS ACTION .................29

CONCLUSION.......................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Abby v. City of Detroit*,
218 F.R.D. 544 (E.D. Mich. 2003) ........................................................ 14

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................. 30

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................. 14

*Bearden v. Honeywell Int'l, Inc.*,
2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) ................................... 23

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015)............................................................ 12

*Betts v. Advance Am.*,
213 F.R.D. 466 (M.D. Fla. 2003) ................................................... 27, 29

*Byrd v. Aaron's Inc.*,
2017 WL 4326106 (W.D. Pa. Aug. 4, 2017) ................................... 21, 23

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998)............................................................... 11

*Ciser v. Nestle Waters N. Am. Inc.*,
596 F. App'x 157 (3d Cir. 2015) .......................................................... 25

*Coleman v. Commonwealth Land Title Ins. Co.*,
318 F.R.D. 275 (E.D. Pa. 2016)........................................................... 26

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................................................... 20

*Conde v. Sensa*,
2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)........................................ 9

*Coyle v. Hornell Brewing Co.*,
2011 WL 2147218 (D.N.J. May 26, 2011) ........................................... 29

*Demmick v. Cellco P'ship*,
2010 WL 3636216 (D.N.J. Sept. 8, 2010) ............................................ 24

*Gardner v. First Am. Title Ins. Co.*,
2003 WL 221844 (D. Minn. Jan. 27, 2003)........................................... 12

*Gennari v. Weichert Co. Realtors*,
   691 A.2d 350 (N.J. 1997) ................................................................ 24

*Glover v. Udren*,
   2013 WL 6237990 (W.D. Pa. Dec. 3, 2014) ................................... 21

*Glover v. Wells Fargo Home Mortg.*,
   629 F. App'x 331 (3d Cir. 2015) .................................................... 21

*Gonzalez v. Corning*,
   885 F.3d 186 (3d Cir. 2018) ........................................................... 20

*Gregory v. Finova Capital Corp.*,
   442 F.3d 188 (4th Cir. 2006) ................................................... 10, 12

*Hammer v. Vital Pharms.*,
   2015 WL 12844442 (D.N.J. Mar. 31, 2015) .................................. 28

*Harnish v. Widener Univ. Sch. of Law*,
   833 F.3d 298 (3d Cir. 2016) ........................................................... 18

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ........................................................................ 25

*Horowitz v. AT&T, Inc.*,
   2019 WL 77306 (D.N.J. Jan. 2, 2019) ........................................... 30

*Hughes v. Panasonic Consumer Elec. Co.*,
   2011 WL 2976839 (D.N.J. July 21, 2011) ..................................... 22

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ............................................................ 21

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997) ........................................................ 11

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ........................................................... 20

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ............................................... 26, 27, 28

*In re Thalomid and Revlimid Antitrust Litig.*,
   2018 WL 6573118 (D.N.J. Oct. 30, 2018) ........................... 15, 18, 21

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*,
   2018 WL 497071 (D.N.J. Jan. 22, 2018) .............................. 22, 23, 24

*Inetianbor v. CashCall, Inc.*,
   314 F.R.D. 535 (S.D. Fla. 2016) ................................................................................ 16

*Inetianbor v. CashCall, Inc.*,
   No. 13-60066-CIV-COHN/SELTZER, ECF No. 284 (S.D. Fla. Sept. 19, 2016) ............. 14, 15

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ................................................................................ 9, 10

*Korea Week, Inc. v. Got Capital, LLC*,
   2016 WL 3049490 (E.D. Pa. May 27, 2016) ................................................................ 30

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*,
   26 F.3d 375 (3d Cir. 1994) ..................................................................................... 30

*MacDonald v. CashCall, Inc.*,
   883 F.3d 220 (3d Cir. 2018) ................................................................................... 30

*Mahtani v. Wyeth*,
   2011 WL 2609857 (D.N.J. June 30, 2011) .................................................................. 25

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .......................................................................... 18, 24, 27

*Martinez v. T.D. Bank USA, N.A.*,
   2017 WL 2829601 (D.N.J., June 30, 2017) .................................................................. 17

*McNair v. Synapse Grp., Inc.*,
   2009 WL 1873582 (D.N.J. June 29, 2009) .............................................................. 10, 24

*Neuscheler v. See*,
   36 A.2d 753 (N.J. 1944) .................................................................................... 19, 20

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) .......................................................................... 18, 20, 21

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
   200 F.R.D. 521 (D. Md. 2001) ............................................................................ 9, 12

*Pennsylvania v. Budget Fuel Co.*,
   122 F.R.D. 184 (E.D. Pa. 1988) ................................................................................ 9

*Pettrey v. Enter. Title Agency, Inc.*,
   241 F.R.D. 268 (N.D. Ohio 2006) ............................................................................. 14

*Powell v. Huntington Nat. Bank*,
   2014 WL 5500729 (S.D. W.Va. 2014) ........................................................................ 23

*Reap v. Continental Casualty Co.*,
    199 F.R.D. 536 (D.N.J. 2001) .................................................................... 21

*Resolution Trust Corp. v. Minassian*,
    777 F. Supp. 385 (D.N.J. 1991) .................................................................. 18

*Riffle v. Convergent Outsourcing, Inc.*,
    311 F.R.D. 677 (M.D. Fla. 2015) ................................................................ 21

*Rosenstein v. Rosenstein*,
    185 A. 368 (N.J. 1936) ............................................................................... 19

*Speare v. Consolidated Assets Corp.*,
    367 F.2d 208 (2d Cir. 1966) ........................................................................ 19

*Veras v. LVNV Funding, LLC*,
    2014 WL 1050512 (D.N.J. Mar. 17, 2014) ................................................. 13

*Wholesale Transmissions, Inc. v. Merchants Capital Access, LLC*,
    2012 WL 12887386 (C.D. Cal. May 24, 2012) .......................................... 20

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015) ............................................................ 17

*Zieger v. Advance Am.*,
    2014 WL 7388365 (D. Del. 2014) ............................................................... 20

**STATUTES**

N.J.S.A. § 17:11C-18(h) ..................................................................................... 13

N.J.S.A. § 31:1-3 ................................................................................................. 19

N.J.S.A. § 31:1-4 ................................................................................................. 19

**RULES**

Fed. R. Civ. P. 23 ........................................................................................ 1, 2, 8

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 26

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 28

Fed. R. Civ. P. 23(b)(3) ........................................................................ 2, 8, 15, 18

L. Civ. R. 11.1 .................................................................................................... 28

## PRELIMINARY STATEMENT

According to Plaintiffs, "[t]his lawsuit is about whether [Defendants] violated the law by making loans at interest rates higher than what is allowed by law."  (Ex. AA at 3, Pls.' Mem. of Law in Supp. of Mot. for Class Certification Pursuant to Fed. R. Civ. P. 23 (hereinafter "Mot.")).  But the subject matter of this lawsuit has already been litigated to conclusion in another federal court, and remains pending in a separate administrative matter before the New Jersey Department of Banking and Insurance ("NJDOB").  For this and the other reasons set forth herein, this action is not the superior method for adjudicating Plaintiffs' claims, and the Motion to Certify Class ("Motion") should be denied with prejudice.

Perhaps anticipating such an outcome, Plaintiffs seek to distinguish this case by dressing it up as a claim for relief under three separate statutes.  It is well established, however, that the superiority requirement of Federal Rule of Civil Procedure ("Rule") 23 does not hinge on the number of claims that can be brought, or the amount of relief that can be obtained.  What matters is the nature and extent of the other existing litigation, and whether that litigation involves the same underlying conduct.  And as Plaintiffs acknowledge, this entire case is based on an alleged violation of a single statutory scheme—New Jersey's usury and consumer finance licensing statutes—which is the same basis for both actions that preceded Plaintiffs' lawsuit.

The nature and extent of the other actions, as well as the conduct alleged in each, clearly establish that this action is not the superior method for adjudicating Plaintiffs' claims.  Indeed, one of the two existing cases—a lawsuit initiated in 2013 by the Consumer Financial Protection Bureau (the "CFPB Action")—has already been tried before a District Court.  The CFPB Action involves the same Defendants, the same New Jersey borrowers that Plaintiffs seek to represent, and the same facts at issue in this case.  The second case, an NJDOB enforcement action, was

1

initiated two weeks before Mr. MacDonald filed his original complaint involving the same facts against the same Defendants.

Against this backdrop, this lawsuit is a textbook example of lawyer-driven, copycat litigation. By all appearances, Plaintiffs brought this case to maximize their interest in any resolution of the two actions that have already been brought on their behalf. In fact, Ms. Spearman testified that she could obtain the relief she seeks here through the CFPB Action. (Ex. A at 130:2-13). Accordingly, certification of this action would not be consistent with the "fair[] and efficient[] adjudicat[ion]" of claims requirement in Rule 23(b)(3).

But the superiority requirement is not the only Rule 23 requirement that Plaintiffs fail to satisfy. Plaintiffs do not meet their burden under Rule 23 for several other reasons, including:

- Plaintiffs' proposed classes are unascertainable because they (i) require an individualized determination of the physical location of each borrower at the time of loan origination; and (ii) are improperly defined based on a determination of the merits of Plaintiffs' claims (*i.e.*, are "fail-safe" classes), which cannot be assessed at this stage.

- Individual issues predominate, because Plaintiffs have not met their burden to identify an objective method for determining which purported class members were injured. Indeed, it is apparent that many purported members were not harmed at all, because they made total payments less than the amount disbursed to them as loan proceeds. Yet Plaintiffs are silent as to how the fact of injury will be established. Plaintiffs' deposition testimony further demonstrates that they cannot satisfy the predominance requirement, because their testimony illustrates how the Court would need to conduct individualized inquiries to determine whether Defendants' alleged misconduct caused any losses and whether class members received the "benefit of the bargain."

2

- Plaintiffs have not demonstrated that their claims or defenses are typical of the class, or that they can adequately represent the interests of a class. In particular, Plaintiffs must divert attention away from class interests to overcome their deposition testimony, which is inconsistent with the allegations and claims in the Amended Complaint. For example, Plaintiffs testified that the interest rate was "almost irrelevant," and that it was in their "best interest" to take out the loans. (Ex. A at 50:8-12; Ex. B at 234:3-7). Mr. MacDonald's testimony also makes clear that his credibility will be a major focus of the litigation, preventing him from representing the interests of the class. Simply put, Plaintiffs cannot shoulder the burden of representing the class.

Independently and taken together, these deficiencies make clear that this case is not suitable for class certification. The Court therefore should deny Plaintiffs' Motion with prejudice. Alternatively, the Court should stay this case pending the outcome of the cross-appeals in the CFPB Action.

## BACKGROUND

### I.     FACTUAL BACKGROUND

Plaintiffs obtained consumer-installment loans from Western Sky ("Western Sky Loans"), a company owned by a member of the Cheyenne River Sioux Tribe ("CRST"). Plaintiffs' Western Sky Loans were subsequently purchased and serviced by CashCall, Inc., or one of its wholly-owned subsidiaries, WS Funding, LLC and Delbert Services Corporation. Defendants entered into this business arrangement with Western Sky based on the advice and recommendation of outside legal counsel—Katten Muchin Rosenman LLP—which had advised Defendants that these loans would not be subject to New Jersey law. (Ex. C at 224-26).

To obtain the Western Sky Loans, Plaintiffs reviewed and signed the Western Sky Consumer Loan Agreement ("Loan Agreement"), confirming that they had "**READ ALL OF**

THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO." (Ex. D at CC-M-00000014). These terms included the Annual Percentage Rate, Finance Charge, total amount of payments, and a disclosure that Western Sky "may assign or transfer this loan agreement or any of [its] rights under it at any time." (*Id.* at CC-M-00000010, 12). Plaintiffs also agreed not "TO PARTICIPATE IN A CLASS ACTION LAWSUIT," and acknowledged that "**THIS LOAN CARRIES A VERY HIGH INTEREST RATE**" and "**YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE**." (*Id.* at CC-M-00000013-14).

### A.      Mr. MacDonald's Western Sky Loan

Mr. MacDonald took out a Western Sky Loan because he needed a "quick funds transfer and turnaround" to pay his divorce lawyer and "[o]ther financial obligations." (Ex. B. at 67:8-11, 69:16-21, 233:10-16). Prior to selecting a loan, Mr. MacDonald "[m]ost likely" compared other lenders and their "turnaround time" because "the funding and how quickly the funds could have been transferred" was a "big, important topic." (*Id.* at 78:22-79:15). Mr. MacDonald ultimately selected Western Sky based on the "extremely convenient" funds transfer, which met his expectations because "the funds were transferred quickly." (*Id.* at 80:16-81:5).

Mr. MacDonald executed his Loan Agreement on December 18, 2012 (Ex. D), and received his $5,000 Western Sky Loan. (Ex. B at 70:15-21, 95:15-17). He understood all of the terms, including the interest rate and finance charges. (*Id.* at 94:9-12, 94:18-96:4). Although Mr. MacDonald was concerned about the finance charges and total payments, he nevertheless "pushed through" for the loan. (*Id.* at 96:1-99:20). The interest rate was "almost irrelevant," and he based his decision on "the requirements I had financially and what was available for me at the time for that quick funds transfer and turnaround." (*Id.* at 233:10-16, 234:3-7). Mr. MacDonald

made loan payments with the assistance of his then-girlfriend, Ilissa Martinez, who paid at least a thousand dollars from her personal funds. (Mr. MacDonald and Ms. Martinez later married and then divorced). (*Id.* at 102:16-18; Ex. E at 20:3-5, 27:18-28:7, 35:16-22).

Mr. MacDonald testified that his Western Sky Loan "was valid," and he did not know if he suffered any identifiable losses from the Western Sky Loan. (Ex. B at 113:6-11, 230:6-16). Mr. MacDonald also could not recall when he decided to sue Defendants (*id.* at 221:8-12), when he first came into contact with his attorneys (*id.* at 222:8-13), how he came into contact with his attorneys, whether he searched online for an attorney (*id.* at 225:2-8), which attorney he spoke with first (*id.* at 225:9-12), and who initiated the contact (*id.* at 222:17-21). Ms. Martinez subsequently testified that she had initiated contact with Plaintiffs' counsel and had engaged them as attorneys. (Ex. E at 52:14-53:8).

### B. Ms. Spearman's Western Sky Loans

Ms. Spearman obtained three separate Western Sky Loans between October 2012 and August 2013, paying off each loan in full. (Ex. F; Ex. A at 33:19-34:2). Ms. Spearman took out the Western Sky Loans because she "was running short of funds" (Ex. A at 34:7-12), "money was really tight" (*id.* at 47:20-48:6), and she needed short-term funds to meet "whatever expenses that [she] had at the time," including medical expenses (*id.* at 69:16-70:13, 85:14-19, 113:18-21). It was "difficult" for Ms. Spearman to obtain loans from other lenders based on her 2010 bankruptcy, and Western Sky was her "only option." (*Id.* at 60:4-15, 72:17-22, 87:3-9, 121:12-16). Ms. Spearman stated that it was in her "best interest" to take out the Western Sky Loans because the funds she received allowed her to meet these financial obligations. (*Id.* at 50:8-12, 72:17-22, 87:3-9, 113:22-114:4).

According to Ms. Spearman, Western Sky could not have been more clear about the terms of the Western Sky Loan. (*Id.* at 60:22-61:11). She reviewed and understood the interest

rate, governing law, and all other terms of the loan.  (*Id.* at 38:16-19, 52-57, 74:15-76, 90:5-10, 113:5-9).  These terms, including the interest rate, were not a factor in her decision because she "needed the money" and "knew that [she] was not going to be able to obtain a loan through a traditional lender."  (*Id.* at 52-57, 87:10-20).  Ms. Spearman was deliberate in paying back each loan as soon as possible, and paid her first loan off within six weeks.  (*Id.* at 52:16-53:5, 67:13-16, 87:10-20, 95:21-96:3).  She never disputed the validity of the loan: "I had no reason to dispute them.  I took the loan[s] out; and when I took the loan[s] out, I took them out with the anticipation of paying them back, not defaulting on them."  (*Id.* at 66:6-17, 106:13-21).  Ms. Spearman stated that she had a positive experience with her Western Sky Loans, which prompted her to inquire with CashCall about a mortgage loan.  (*Id.* at 106:5-12, 103:1-8; Ex. G).

## II.   PROCEDURAL BACKGROUND

### A.   The CFPB Action

On December 16, 2013, more than three years before this lawsuit was filed, the CFPB filed a Complaint against these same Defendants, and subsequently amended the Complaint on March 21, 2014.  (*See generally* Ex. O; Second Certification of J. Barloon).  The CFPB filed the action on behalf of all New Jersey consumers, and consumers from other "subject states," who signed a Loan Agreement and obtained a Western Sky Loan.  (*See id.* ¶¶ 19-25; ¶¶32-34).  The CFPB sought restitution of "all interest, fees, and principal collected from consumers" and "disgorgement of ill-gotten gains" on behalf of borrowers in New Jersey.  (*See id.* at 28).

The District Court for the Central District of California granted summary judgment in favor of the CFPB, finding that the law of the subject states applied, the Western Sky Loans were void under these laws, and that Defendants had violated the Consumer Financial Protection Act of 2010.  (*See generally* Ex. P).  The court conducted a bench trial on remedies and found, based upon the testimony and other evidence, that restitution was not appropriate.  (*See* Ex. Q).  The

court concluded that "the evidence indicated quite clearly that consumers received the benefit of their bargain–i.e., the loan proceeds," and that "Defendants plainly and clearly disclosed the material terms of the loans to consumers—including fees and interest rates—before the loan[s] were funded." (*Id.* at 16). The court assessed a statutory penalty of $10,283,886. (*Id.* at 18).

The CFPB appealed to the Ninth Circuit and Defendants cross-appealed. The CFPB seeks review of "whether the district court properly denied [its] claim for restitution" and the penalty amount, while Defendants have appealed the liability determination. (*See* Ex. R at 1; Ex. S at 1). The CFPB filed its brief on October 19, 2018, and Defendants filed their brief on December 19, 2018. (*See generally* Ex. T). The CFPB filed its Response and Reply on February 19, 2019, and Defendants' Response and Reply is due April 11, 2019. (*See id.*).

### B.    The New Jersey Department of Banking and Insurance Order

The NJDOB also has initiated an action against these same Defendants, on behalf of the same consumers and concerning the same loans. In particular, the NJDOB issued an Order to Cease and Desist to Western Sky and the Defendants on May 3, 2016 (hereinafter "NJDOB Action"), alleging that Defendants and Western Sky had "imposed interest rates . . . which are above and in excess of the rates permitted under New Jersey civil and criminal usury laws set forth in N.J.S.A. [§] 31:1-1 and N.J.S.A. [§] 2C:21-19." (Ex. N ("NJDOB Order") at 6). The NJDOB also claimed that Western Sky Loans were "void *ab initio* and shall not be enforceable in this State." (*Id.* at 8 ¶ 5). The NJDOB Order demands restitution on behalf of New Jersey borrowers tied to the amount each borrower paid toward the loan and seeks a $25,000 penalty per violation. (*Id.* at 9-10 ¶¶ 6(b), 8). Defendants responded to the NJDOB Order on June 23, 2016 with answers and defenses for each allegation. (First Certification of J. Barloon). Defendants also met with the NJDOB on June 28, 2016, and subsequently produced loan data for New Jersey borrowers. (*Id.*).

### C.     This Action

After both of these enforcement proceedings were initiated, Mr. MacDonald filed the present action on May 17, 2016, which was subsequently amended on September 25, 2018 to add Ms. Spearman as a Plaintiff.  (*See generally* Ex. H).

### ARGUMENT

## I.     A CLASS ACTION IS NOT THE SUPERIOR METHOD OF ADJUDICATION.

This action is third in line for relief.  One of the two actions that preceded this case—the CFPB Action—has already been tried to conclusion and is now on appeal.  The second case, the NJDOB Action, was filed two weeks before this case and remains pending.  Given these other actions, Plaintiffs cannot demonstrate that this lawsuit is the superior method of adjudicating their claims, as Rule 23 requires.  Accordingly, their Motion should be denied with prejudice.

Plaintiffs bear the burden to show that this action is "superior to other available methods for fairly and efficiently adjudicating the controversy."   Rule 23(b)(3).   The criteria for determining whether this case is superior to the CFPB and NJDOB actions include the "extent and nature of any litigation concerning the controversy," the "desirability or undesirability of concentrating the litigation" in this Court, and the "class members' interests in individually controlling the prosecution or defense of separate actions."  *Id.*

Plaintiffs have not shown that these factors militate in favor of class certification.  And they cannot do so, because (i) the CFPB and NJDOB already represent the *same* class of New Jersey borrowers in ongoing proceedings against these *same* Defendants; (ii) both actions involve the *same* underlying conduct, relating to the *same* statutory scheme; and (iii) the CFPB Action is far more advanced than this action.  Thus, there is no practical benefit to the putative classes in having this Court adjudicate their claims.

**A.      Plaintiffs Have Not Demonstrated That Their Proposed Class Action Is Superior to the CFPB Action or the NJDOB Action, or to Individual Actions.**

It is well-established that an action brought by a government agency already acting on behalf of a putative class, alleging the same misconduct as the class, is superior to a private class action.  *See, e.g.*, *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211 (9th Cir. 1975) (holding state attorney general action superior); *Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 185 (E.D. Pa. 1988) (holding *parens patriae* action superior); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 532 (D. Md. 2001) (holding Maryland Insurance Administration action superior). This is particularly true when the government action is more advanced or the agency has expertise relating to the alleged conduct, because the Court avoids "substantial expenditure of judicial time which would largely duplicate" the agency's work.  *Conde v. Sensa*, 2018 WL 4297056, at *16 (S.D. Cal. Sept. 10, 2018) (citation omitted).

**1.      This Action Is Not Superior to the CFPB Action.**

The CFPB Action began more than two years before Plaintiffs initiated this case against the same Defendants for the same alleged conduct, and satisfies all of the criteria for the Court to find that Plaintiffs' class action is not superior.

***The Alleged Conduct Is Identical in Each Action.***   The CFPB Action is based on Defendants' collection and servicing of the Western Sky Loans.  In particular, the CFPB alleges that New Jersey consumers "suffered and continue to suffer substantial financial harm as a result of Defendants' purchase, servicing, and collection of those [Western Sky] loans."  (Ex. O at ¶ 45).  Plaintiffs admit that the same conduct is at issue here.  (Mot. at 1).  Accordingly, the conduct at issue in this litigation overlaps entirely with the conduct at issue in the CFPB Action.

Plaintiffs' attempt to distinguish this case from the CFPB Action is limited to a single footnote, in which they state that the CFPB Action "was brought under the Consumer Finance

Protection Act and not individual state's laws." (*Id.* at 14 n.6). But the fact that each action claims relief under different statutes is irrelevant. As long as "both actions involve the same [] *conduct* of the [D]efendants and both seek to provide relief for those injured thereby," then the specific claims for the relief requested do not matter. *Kamm*, 509 F.2d at 213 (emphasis added). This principle is especially applicable here, because *all* of the claims in both cases are based on alleged violations of *one* statutory scheme (New Jersey licensing and usury laws). Thus, the significant overlap between the allegations in the CFPB Action and this case militates in favor of finding that this action is not the superior method for adjudicating Plaintiffs' claims.

**The CFPB Action Seeks Relief on Behalf of the Same Borrowers.** The CFPB Action includes all consumers from "subject states," including New Jersey, who obtained a Western Sky Loan between 2010 and 2013. (*See* Ex. O at ¶¶ 18-25, 32-34). Accordingly, consistent with Plaintiffs' proposed class definitions, the CFPB Action includes any New Jersey borrower who made a single payment on a Western Sky Loan after 2010. (Mot. at 14-15). Moreover, both this action and the CFPB Action seek restitution for consumers, as well as other monetary penalties and court costs. (Ex. H at ¶¶ 102F-H; Ex. O at 28-29).

Plaintiffs may argue that the CFPB Action is not superior because the District Court determined that restitution was not warranted, or because the CFPB does not seek treble damages. However, courts consider whether each action seeks similar relief, rather than the amount of relief sought or the relief actually obtained. *See, e.g.*, *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191-92 (4th Cir. 2006) (finding disparity in relief sought could not overcome other superiority considerations). In fact, the mere *possibility* of an administrative remedy has been deemed superior to a proposed class action, thus demonstrating that the actual relief obtained is irrelevant to the superiority analysis. *See, e.g.*, *McNair v. Synapse Grp., Inc.*,

2009 WL 1873582, at *14 (D.N.J. June 29, 2009) (explaining that defendant's "practices also could be challenged by the state"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 464 (D.N.J. 1998) ("There are also administrative remedies that are available that may be superior to the remedies sought in the nationwide class action suit . . . ."); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 353 (D.N.J. 1997) ("[T]here exists an administrative remedy that has been established to assess the technical merits of [plaintiffs'] claims and that can handle those claims in a more efficient manner . . . .").

And even if the Court were to consider the amount of monetary relief obtained in the CFPB Action, which it should not, the borrowers may still receive restitution and other damages based on the outcome of the Ninth Circuit cross-appeals.  The Ninth Circuit must rule on "whether the district court properly denied the [] claim for restitution."  (*See* Ex. R).  In fact, should the CFPB succeed in its appeal, the remedies inquiry will be *broader* than in this case. As discussed below, relief in this case is limited to the amounts paid *in excess* of the New Jersey usury rate.  (*See infra* at 18-19).  The CFPB, however, seeks relief for all New Jersey borrowers, regardless of the number of payments or the amount that they paid.  (*See* Ex. O at 28, ¶ 4).  Thus, the nature of the CFPB Action militates in favor of finding that this lawsuit is not superior.

***The CFPB Action Is Far More Advanced.***  The CFPB sought to represent New Jersey and other "subject state" borrowers more than two years before this case.  (*See generally id.*). Moreover, the CFPB Action has already completed dispositive motions and a remedies trial, and is now on appeal before the Ninth Circuit.  This action, by contrast, is in its infancy, given that it still must complete class certification, let alone dispositive motions, expert discovery, and a trial.

In addition to being more advanced, the CFPB Action was brought by an agency whose stated mission is to "*provide a single point of accountability for* . . . protecting consumers in the

11

financial marketplace." (Ex. I at 3 (emphasis added)). At the time that Mr. MacDonald filed the original complaint, the CFPB had secured more than $11.7 billion in restitution for consumers, as well as $440 million in civil money penalties in its five years of existence. (Ex. J at 1). The CFPB's stated "expertise" is therefore a relevant factor in the superiority analysis. *Ostrof*, 200 F.R.D. at 532. *See also Gardner v. First Am. Title Ins. Co.*, 2003 WL 221844, at *8 (D. Minn. Jan. 27, 2003).

For all of the reasons set forth above, Plaintiffs cannot demonstrate that this case is superior to the CFPB Action. However, if the Court has any concern about the application of the superiority requirement to Plaintiffs' Motion, it should, at a minimum, stay this action until the Ninth Circuit rules on the pending cross-appeals. *See Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 78 (E.D.N.Y. 2015) (staying class action pending conclusion of FTC inquiry and subsequent action because stay "effectively manage[s]" the "overlap between the [agency] and private litigation"). This Court possesses "discretionary authority to stay [the] decision on class certification pending resolution of [the CFPB's] adjudication," which "promote[s] judicial efficiency due to the [CFPB's] special expertise." *Id.* at 79. The CFPB seeks an order directing Defendants to pay restitution to New Jersey borrowers of the amount of principal, interest and fees paid; thus, if the CFPB is successful on appeal, Plaintiffs would be awarded reimbursement of any and all payments made on their Western Sky Loans. Indeed, such an outcome would satisfy Ms. Spearman, who confirmed that she could obtain the damages she seeks through the CFPB Action. (Ex. A at 130:2-13); *see also Gregory*, 442 F.3d at 192 (finding conclusion that class action was not superior was "reinforced by the fact that the class action plaintiffs have acknowledged that, if successful in the adversary proceeding, they could be made 'more or less'

whole").  By denying the Motion (or staying this action until the Ninth Circuit decision), the Court avoids duplicative and unnecessary litigation.

### 2.   This Action Is Not Superior to the NJDOB Action.

Plaintiffs also cannot demonstrate that this case is superior to the NJDOB Action.  The NJDOB—a state agency whose role is to protect New Jersey borrowers relating to "money matters"—issued the Order to these same Defendants, on behalf of the same New Jersey borrowers that Plaintiffs seek to represent, relating to precisely the same conduct.

First, the NJDOB Action alleges the *same* conduct that the Plaintiffs allege: that Defendants and Western Sky "imposed interest rates . . . which are above and in excess of the rates permitted under New Jersey civil and criminal usury laws set forth [at] N.J.S.A. [§] 31:1-1 and N.J.S.A. [§] 2C:21-19."  (Ex. N at 6; *see* Mot. at 1).

Second, like the CFPB Action, the NJDOB Order encompasses all proposed class members.  (Ex. N at 8).  Moreover, the NJDOB relies upon the same statutory scheme relied upon by Plaintiffs in this lawsuit and the CFPB for its restitution demand.  (Ex. N at 8-10; Ex. H at ¶ 102).  And the fact that the NJDOB has yet to recover restitution on behalf of Plaintiffs and the purported class members does not alter this Court's superiority analysis.  As the cases cited above emphasize, the mere *possibility* of a government action can be superior to a class action.

Third, unlike Plaintiffs, the NJDOB has expertise relating to the claims here.  Indeed, the NJDOB is the state agency responsible for issuing and enforcing regulations concerning New Jersey's consumer finance laws, including usury.  *See, e.g.*, N.J.S.A. § 17:11C-18(h).  And this Court has recognized that the NJDOB has "pervasive authority . . . to regulate the consumer loan business as well as entities engaged in that business as consumer lenders."  *Veras v. LVNV Funding, LLC*, 2014 WL 1050512, at *8 (D.N.J. Mar. 17, 2014) (citation omitted).

### 3.      This Action Is Not Superior to Individual Actions.

Plaintiffs also fail to show that this case is superior to individual actions.  Class actions "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted).  But the availability of treble damages, costs, and attorneys' fees, all of which are available under the NJCFA, "weigh[s] against class certification," because the "financial barrier to bringing suit is eliminated." *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003); *Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 284 (N.D. Ohio 2006).

### B.      Plaintiffs' Superiority Analysis Is Insufficient.

Rather than explain why their action is superior to the CFPB Action, Plaintiffs cite to *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV-COHN/SELTZER (S.D. Fla. Sept. 19, 2016), ECF No. 284 (hereinafter "Inetianbor Order"), which held that a class action and a Florida Attorney General action were, taken together, the superior method for relief.  (Mot. at 36-37). Plaintiffs' reliance on that decision is misplaced.  There, the court gave "substantial weight" to an explicit statement by the Florida Attorney General during oral argument that the class action should proceed in parallel with the state action.  (Inetianbor Order at 13).  The court also relied on the advanced stage of the class action relative to the enforcement action.  (*Id.* at 15-16).

Neither of these factors is present here.  The CFPB and the NJDOB have not advocated for the Court to certify Plaintiffs' classes.  And even if they were to do so, this case is much less advanced than the CFPB Action, in sharp contrast to the facts in *Inetianbor*.  The Florida enforcement action was not filed until almost a year and a half *after* the *Inetianbor* class action; at the time of class certification, the *Inetianbor* action was "closer to a final judgment" than the Florida enforcement action.  (*Id.* at 16).  The opposite is true here.  The CFPB filed its complaint more than two years *before* this lawsuit, and the District Court has already ruled on the merits of

the claims and has conducted a remedies trial.   Accordingly, denying Plaintiffs' Motion is consistent with the *Inetianbor* ruling.[1]

## II.   PLAINTIFFS' CLASS DEFINITIONS ARE NOT ASCERTAINABLE.

Plaintiffs' Motion should also be denied for the simple reason that the proposed classes are unascertainable.  This Court has held that "to demonstrate ascertainability, a plaintiff must show that (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *In re Thalomid and Revlimid Antitrust Litig.*, 2018 WL 6573118, at *18 (D.N.J. Oct. 30, 2018) (citations omitted).  In other words, ascertainability "focuses on whether the class members can be identified without resorting to individualized fact finding."  *Id.* Here, the proposed classes are unascertainable, because they are defined based on the borrower's physical location at the time each loan was originated.  In addition, the proposed classes are impermissible "fail-safe" classes, because they are defined in terms of the merits of Plaintiffs' claims and cannot be determined at this stage of the litigation.

The Plaintiffs have proposed a "Six Year Class" and a "Four Year Class," both of which include "All individuals who . . . made payments to one or more Defendants on loans originated by the Western Sky Enterprise where the borrower was located in the State of New Jersey at the time the loan was originated."  (Ex. H at ¶¶ 63-64).  These definitions make clear that whether a borrower is a member of a class depends on "where the borrower was located . . . at the time the

---

[1]   In any event, the *Inetianbor* court's analysis was flawed, because it focused on whether simultaneous, coordinated prosecutions were the superior method of adjudication. (Inetianbor Order at 10).  That is not the standard.  The standard is whether the proposed class action is "superior to *other* available methods."  Rule 23(b)(3) (emphasis added).

loan was originated." (*Id.*). And Plaintiffs themselves acknowledge that a borrower is a member of a class only if he or she was "locat[ed] in New Jersey at the time of the loan." (Mot. at 19).

Plaintiffs' only attempt to demonstrate ascertainability is to point to Defendants' stipulation "that they maintain loan level data and can produce detailed data identifying each of the class members and the relevant information concerning their loans." (*Id.* at 19-20). However, Defendants stipulated that they can provide the "borrower address," as it was provided by the borrower on the Western Sky Loan Agreement. (Ex. K at ¶ 3c.). "Borrower address" would be relevant if the proposed classes were limited to New Jersey residents, but that is not how the classes are defined. Instead, Plaintiffs ask this Court to inquire into each borrower's physical location at a specific point in time—the time of "origination" of the loan—and have identified no reliable or administratively feasible method for that determination.

Plaintiffs defined the classes in this manner, notwithstanding the holding in *Inetianbor v. CashCall, Inc.*, 314 F.R.D. 535 (S.D. Fla. 2016) that a substantially similar proposed class was not ascertainable. In *Inetianbor*, the plaintiff proposed a class of borrowers who "entered into a loan agreement with Western Sky in Florida." *Id.* at 537. The court denied certification because "a borrower's residence and the location where the borrower entered into a loan agreement are distinct criteria for class membership." *Id.* In particular, the court held that "[w]hile a class member's residence may be readily ascertainable, Plaintiff has not shown that determining where a class member 'entered into a loan agreement' is administratively feasible." *Id.*

The court's analysis in *Inetianbor* applies equally here. Simply put, determining where a borrower was located at the time of origination of the loan is not possible based on the borrower's residential address, and Plaintiffs have not otherwise demonstrated an administratively feasible method of determining physical location at the time of origination.

The proposed classes are unascertainable for the additional reason that they are improper "fail-safe" classes. A fail-safe class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim," which means its existence cannot be ascertained until a liability determination. *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (citation omitted); *see also Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *12-13 (D.N.J. June 30, 2017) (striking class allegations based on "fail-safe" class).

Here, Plaintiffs' proposed classes include individuals who made payments on loans originated by the "Western Sky Enterprise," which is defined by Plaintiffs as "an enterprise to make, service, and collect unlawful, usurious, and unconscionable consumer loans." (Ex. H at ¶ 18). This definition goes to the heart of Plaintiffs' claims. Indeed, based on this definition, determining whether an individual obtained a loan through the alleged "Western Sky Enterprise," and thus whether he or she is a class member, can occur only after a determination that an "enterprise" existed *and* that the enterprise existed to "make, service, and collect unlawful, usurious, and unconscionable consumer loans."[2] Such a determination is impossible at this stage—and the classes are therefore unascertainable.

## III.   COMMON QUESTIONS OF LAW OR FACT DO NOT PREDOMINATE.

Before obtaining certification, Plaintiffs must also show—through rigorous analysis—that "questions of law or fact common to class members predominate over any questions

---

[2] Plaintiffs may seek to rely on the statement in their Motion that "Western Sky Financial, together with Defendants, are referred to in this brief as the 'Western Sky Enterprise.'" (Mot. at 3). Even if that definition controls (which it should not, given that it is not offered by Plaintiffs as a definition and is expressly limited to their brief), it still requires a determination of which loans, if any, were "originated by" an "enterprise" consisting of Western Sky and Defendants, as the Plaintiffs allege, and which loans were originated only by Western Sky, as Defendants maintain.

affecting only individual members." Rule 23(b)(3). In particular, Plaintiffs must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012) (citation omitted); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001). And before a class may be certified, "the putative class must first demonstrate economic loss—that is, the fact of damage—on a common basis." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 306 (3d Cir. 2016) (citation omitted). Here, Plaintiffs fail to meet their burden because (1) the proposed classes include potentially significant numbers of uninjured borrowers, and Plaintiffs have not identified a common method for determining the fact of injury as to each borrower; and (2) they have not, and cannot, prove proximate causation without individual inquiries.

A.   **The Classes Include Uninjured Borrowers Under the Usury Statute.**

At this stage, Plaintiffs must show "that all class members were in fact injured." *In re Thalomid*, 2018 WL 6573118, at *11 (citation omitted). However, Plaintiffs make no effort to demonstrate that the fact of injury can be proven with common proof, and instead focus on the availability of records to calculate the *amount* of damages at a later date. In fact, the proposed classes include potentially significant numbers of uninjured borrowers, and the Motion must therefore be denied.

First, whether each proposed class member has suffered a cognizable injury must be analyzed initially through the lens of the usury statute, which by Plaintiffs' own admission forms the basis for all of their theories of liability. (Mot. at 1 ("This case is about Defendants' illegal scheme to issue and collect on usurious consumer loans in New Jersey and across the country")). Under New Jersey's usury statute, however, a borrower is not injured until such time as *he or she has paid more than the applicable usury rate. See Resolution Trust Corp. v. Minassian*, 777 F.

Supp. 385, 390 n.1 (D.N.J. 1991) (interpreting N.J.S.A. § 31:1-4 to allow a borrower to "recover only illegal interest previously paid to the lender"); *Speare v. Consolidated Assets Corp.*, 367 F.2d 208, 212 (2d Cir. 1966) (interpreting New Jersey law and stating that "[i]f the borrower seeks to recover back money already paid, he can obtain only that part usuriously paid, and the lender can retain the legal interest"); *Neuscheler v. See*, 36 A.2d 753, 754 (N.J. 1944) (interpreting N.J.S.A. § 31:1-3 and holding that borrower is entitled only to the interest paid in excess of the New Jersey usury limit). This is so because a successful usury claim does not void the Western Sky Loans. *See Rosenstein v. Rosenstein*, 185 A. 368, 369 (N.J. 1936) (the usury statute "does not make the contract void" (citation omitted)).

Notwithstanding this requirement of the usury law, under Plaintiffs' class definitions, borrowers who made just a *single* payment on their Western Sky Loans would be part of the putative classes, even though they clearly received a net benefit (*i.e.*, they kept the principal amount of the loan) and were not injured. For example, a $5,000 Western Sky Loan with an 84-month loan term and 116.73% annual percentage rate—the same terms of Mr. MacDonald's loan—would have received a disbursement of $4,925 to be repaid in monthly payments of $486.58. (*See* Ex. L). If that borrower made *ten payments* on the loan, all of which were applied to principal, and then stopped paying, he would have paid only $4,865.80.[3] Such a borrower has not been injured and therefore cannot be included in any class. *See Neuscheler*, 36 A.2d at 754.[4]

---

[3]   All of the payments in this example are to principal, and the example therefore does not account for interest. However, any method for determining whether this borrower was injured under Plaintiffs' theory of liability would have to account for amortization at the applicable interest rate.

[4]   Although Plaintiffs suggest that Defendants stopped collecting on Western Sky Loans in New Jersey in September 2016 (Mot. at 7 n.2), Defendants' collection efforts on these loans stopped in May 2016. (*See* Ex. M at ¶ 3).

Put differently, a potential class member has no claim if she was not injured, and she has not been injured under the usury law unless she paid more on the loan than would have been required under the New Jersey usury rate. *Wholesale Transmissions, Inc. v. Merchants Capital Access, LLC*, 2012 WL 12887386, at *3 (C.D. Cal. May 24, 2012) (finding no injury when plaintiff paid only $4,472.11 on a $6,000 cash advance); *Zieger v. Advance Am.*, 2014 WL 7388365, at *6 (D. Del. Dec. 29, 2014) (plaintiff "cannot state a claim for unjust enrichment solely on the basis of repaying $499 of a $650 loan"). But Plaintiffs' Motion contains no uniform method for determining the fact of injury to class members; thus, it provides no way to exclude borrowers who did not pay enough on the loan to have suffered injury. *See Newton*, 259 F.3d at 188; *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018).

In fact, Plaintiffs fail to even acknowledge the fact that no injury occurs under the New Jersey usury statute unless payments exceed not only the principal amount loaned, but the principal amount loaned *plus* the legal interest rate. *See Neuscheler*, 36 A.2d at 754 ("[T]he lender is entitled to charge interest on the lawful amount of the loan" and "is not required to disgorge everything over and above the principal actually advanced."). Instead, they simply point to the availability of data and the potential for expert testimony at a later date to prove the *amount of damages*. (*See*, *e.g.*, Mot. at 35 (asserting only that they "will be able to calculate the precise *amount of damages* for each class member using detailed records kept by Defendants") (emphasis added)). However, "proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)." *Newton*, 259 F.3d at 188. And in any event, Plaintiffs' "assurance to the court that it intends or plans to meet the requirements is insufficient." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 37 (2013)

(rejecting at the class certification stage mere assurances that damages were capable of measurement).

Second, by their very definitions, the proposed classes encompass uninjured borrowers; they are, therefore, impermissibly overbroad. *See In Re Thalomid*, 2018 WL 6573118, at *24-25; *Byrd v. Aaron's Inc.*, 2017 WL 4326106, at *14 (W.D. Pa. Aug. 4, 2017) (noting that the class definition included many situations where "putative class members would not have been injured by the Defendants' conduct, and therefore could not possibly state a claim"); *see also Glover v. Udren*, 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2014) (if a class seeking certification "does not include any element of loss in the class definition, the class cannot be certified under Rule 23(b)(3)"), *aff'd sub nom. Glover v. Wells Fargo Home Mortg.*, 629 F. App'x 331 (3d Cir. 2015).[5]   Indeed, the precise number of uninjured borrowers cannot be determined until Plaintiffs propose a method for demonstrating the fact of injury to class members.   Plaintiffs' failure to propose any method is particularly glaring given the example above, which demonstrates that a borrower who made even several payments on the loan was not injured under the usury statute.   *See Newton*, 259 F.3d at 190 (explaining that "ascertaining which class members have sustained injury means individual issues predominate over common ones."); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (noting that individualized issues will predominate because "this is a case in which any class member may be uninjured, and

---

[5]   The Court should reject any attempt by Plaintiffs to correct the deficiencies in the Motion on Reply, as doing so would prejudice Defendants. *See Reap v. Continental Casualty Co.*, 199 F.R.D. 536, 550 n.10 (D.N.J. 2001) (rejecting plaintiff's effort to amend her class certification motion in her reply brief because "it is improper for a party to present a new argument in his or her reply brief."); *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 681, n.3 (M.D. Fla. 2015) (noting that "in the interests of fairness to all parties and efficient use of judicial resources, the Court will not consider the additional methods proposed in Plaintiff's reply brief" for determining class membership, in part because "Defendants have not had the opportunity to challenge those methods").

there are apparently thousands who in fact suffered no injury.").   Accordingly, common issues do not predominate, and class certification must fail.

**B.     The Classes Include Borrowers Who Received the Benefit of the Bargain And Were Not Injured.**

Even if Plaintiffs eventually propose a method for establishing the fact of injury under the usury statute, which is the threshold for all of their claims, class certification must fail for the separate reason that the proposed classes include uninjured borrowers who received the "benefit of their bargain" under Plaintiffs' NJCFA, RICO and unjust enrichment claims.   No class-wide formula can address this inquiry, because any injury must be determined on an individual basis.

For example, under the NJCFA, Plaintiffs must prove through common evidence an "ascertainable loss," which "occurs when a consumer receives less than what was promised." *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *15 (D.N.J. July 21, 2011) (citation omitted).   Likewise, unjust enrichment claims are inherently fact-specific because a "defendant is only unjustly enriched if a plaintiff does not receive the benefit of the bargain for which he or she paid," and "[l]ogic compels an inquiry as to what exactly was the benefit of the bargain in a given transaction."   *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2018 WL 497071, at *5 (D.N.J. Jan. 22, 2018).

Plaintiffs' own testimony demonstrates that whether a potential class member received the benefit of the bargain under their theories of liability can only be determined on a borrower-by-borrower basis.   Indeed, Plaintiffs testified that, even in hindsight, they could not think of anything else (or did not believe there was anything else) Defendants could have told them before they took out their loans that would have affected their decision to do so.   (Ex. A at 60:22-61:11; Ex. B at 236:12-237:1).   That is because the only terms Plaintiffs deemed relevant were the loan proceeds and the speed and convenience of the funds.   And their testimony confirms that

they got what they were promised.  (*See*, *e.g.*, Ex A at 60:4-15, 69:16-70:13, 72:17-22, 85:14-19, 87:3-9, 113:18-21, 121:12-16; Ex. B at 80:16-81:5).

As the court held in the CFPB Action, the "evidence indicate[s] quite clearly that [Plaintiffs] received the benefit of their bargain–i.e., the loan proceeds," and that "Defendants plainly and clearly disclosed the material terms of the loans to consumers—including fees and interest rates—before the loan[s] were funded."[6]  (Ex. Q at 16; *see also* Ex. A at 38:16-19, 52-57, 74:15-76, 90:5-10, 113:5-9; Ex. B at 94:9-12, 94:18-96:4).  Mr. MacDonald could not articulate any losses that he suffered as a result of his Western Sky Loan.  (Ex. B at 230:6-16).  And Ms. Spearman was so satisfied with her Western Sky Loan experience that she obtained three such loans and inquired about a CashCall mortgage.  (Ex. A at 103:1-8, 106:5-12; Ex. G); *see also In re Tropicana*, 2018 WL 497071, at *5 (denying certification where plaintiffs' testimony did not support their allegations); *Bearden v. Honeywell Int'l, Inc.*, 2010 WL 1223936, at *10-11 (M.D. Tenn. Mar. 24, 2010) (finding no predominance where class members were "satisfied with" defendants' product, which "met their expectations and performed adequately").

The individual questions, therefore, are overwhelming.  And "culling these individuals from the pool of plausible claimants [would] require particularized inquiry" that defeats class certification.  *Byrd*, 2017 WL 4326106, at *14.

### C. Individualized Issues Predominate Regarding Proximate Causation.

In yet another example of Plaintiffs falling short of their burden, Plaintiffs fail to demonstrate that proximate cause under the NJCFA and RICO statutes can be proven with

---

[6]  Judge Wettre's discovery ruling regarding subjective experience under the NJCFA was not a decision on the merits.  *See Powell v. Huntington Nat'l Bank*, 2014 WL 5500729, at *4 (S.D. W. Va. Oct. 30, 2014) ("[T]he merits of class certification should not be decided based upon discovery rulings.").  In any event, neither Plaintiffs nor Judge Wettre addressed the injury and causation elements of Plaintiffs' claims during the discovery proceedings.

common evidence.  Instead, Plaintiffs suggest that merely charging an allegedly usurious interest rate constitutes a *per se* violation of RICO and the NJCFA.  (*See* Mot. at 23 (stating cursorily that any loss "was plainly caused by the illegal conduct at issue")).  This is wrong.

Causation, like injury, is a required element under NJCFA, and "[a] presumption may not be automatically used to eliminate a particular element, particularly with regard to the causal nexus element of a NJCFA claim."  *In re Tropicana*, 2018 WL 497071, at *8 (citation omitted).  And although the NJCFA does not require proof of reliance, it does require inducement.  *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997) ("[M]isrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce buyer to make the purchase" (citation omitted)).

In particular, proximate cause requires courts to look "not only to the defendant's conduct but also to the class members' conduct and then evaluate[] whether both were sufficiently uniform or common for class certification to be appropriate."  *McNair*, 2009 WL 1873582, at *10; *see also Marcus*, 687 F.3d at 611 ("If class members could have known of the alleged defects and the evidence shows that they do not react to information . . . in a sufficiently uniform manner, then individual questions related to causation will predominate.").  Thus, relying on "a uniform course of conduct by itself is not sufficient to satisfy the predominance element for the causation element of a NJCFA claim."  *Demmick v. Cellco P'ship*, 2010 WL 3636216, at *16 (D.N.J. Sept. 8, 2010).

Here, Plaintiffs cannot point to common evidence showing that Defendants' alleged conduct proximately caused injury on a class-wide basis.  In fact, Plaintiffs' own testimony proves the opposite.  Mr. MacDonald testified that he understood the interest rate, governing law, dispute mechanism, and other terms, but that they were *irrelevant* to his decision to take out the

Western Sky Loan.  (Ex. B at 81:11-19, 233-36).   Likewise, Ms. Spearman confirmed that "everything was as clear as it could have been."  (Ex. A at 60:22-61:11).  She understood that there were other loan options with lower interest rates, but decided to proceed with her Western Sky Loan anyway.  (*Id.* at 57:11-58:7).  Simply put, Plaintiffs wanted the Western Sky Loans regardless of the cost of the loans, the "true lender" of the loans, or even the governing law. (*See*, *e.g.*, Ex. Q at 15 (noting that "the CFPB did not present testimony from a single consumer that suggests that a borrower would not have entered into a loan transaction if they had known that CashCall—not Western Sky—was the true lender")).   Thus, Plaintiffs have failed to show how the usurious loans alleged in this case proximately caused class-wide injury.  *See Mahtani v. Wyeth*, 2011 WL 2609857, at *9 (D.N.J. June 30, 2011) (denying class certification where "some purchasers might have gotten what was promised because they used [the product] properly and were satisfied with it.").[7]

The same conclusion applies to RICO.  The Supreme Court has held that any alleged RICO conduct must be the proximate cause of class members' injury.  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  But again, Plaintiffs appear to ask this Court to conclude that RICO liability exists *per se*.   Unlike the allegations in this case, however, the cases cited by Plaintiffs in furtherance of this proposition involved conduct that was *completely fraudulent*, where the defendants provided no services or value to consumers whatsoever.  (*See* Mot. at 24, 26).  Here, Defendants offered and provided something of significant value—cash.  Thus, to the

---

[7]    In any event, an interest rate charged in excess of the usury statute cannot be a *per se* unconscionable commercial practice, because the Third Circuit "requires some element of deceptive conduct, explicit or implicit, to be actionable as an unconscionable practice." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 162 (3d Cir. 2015).  Plaintiffs' testimony demonstrates clearly that Defendants did not deceive them and plainly contradicts the allegations in the Amended Complaint regarding deception.

extent that Plaintiffs are asserting the "complete sham" theory or any other presumption of causation or injury, such theories do not apply here. *See, e.g., Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 288-89 (E.D. Pa. 2016).[8]   Accordingly, Plaintiffs must demonstrate through common proof that Defendants' conduct was the proximate cause of their injury, which they have made no effort to do, and cannot do, based on their deposition testimony.

## IV.   PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY AND ADEQUACY REQUIREMENTS.

The Court also should decline to certify any class because Plaintiffs have not demonstrated that their claims or defenses are typical of their putative classes, or that they can adequately represent the interests of any class.

### A.   Plaintiffs Are Not Typical of the Purported Classes.

Plaintiffs' "claims or defenses" must be "typical of the claims or defenses of the class." Rule 23(a)(3).  Thus, Plaintiffs cannot represent a class if they are "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

That is the case here.  Ms. Spearman's confirmation that "everything was as clear as it could have been" undercuts Plaintiffs' allegations that Defendants acted deceptively.  (*See, e.g.*, Ex. H at ¶ 28; Ex. A at 61:9-11).  Mr. MacDonald undercut Plaintiffs' damages claim when he could not articulate any loss from his Western Sky Loan.  (Ex. B at 230:6-16).  And although

---

[8]   Plaintiffs also fail to show that a class can be certified with respect to Mr. Reddam.  Indeed, Plaintiffs mention him *only one time* in their arguments, in a parenthetical to a different case. (*See* Mot. at 27).  This is not surprising, because Plaintiffs must show not only that Mr. Reddam engaged in unlawful conduct under their claims and that some articulable injury is attributable to him, but also that common evidence will establish a causal link between his alleged conduct and injury to borrowers.  They simply cannot do so, because Mr. Reddam did not lend money to borrowers, did not collect payments, and did not interact with borrowers.  Accordingly, their Motion relating to Mr. Reddam must fail.

Plaintiffs seek "a declaration that the loans at issue are void under New Jersey law," (Ex. H at ¶ 3), both testified that their Western Sky Loans were valid.  (Ex. A at 106:13-21; Ex. B at 113:6-11).  Plaintiffs must divert the Court's attention away from the purported class to assess the impact of this testimony, because Plaintiffs must prove that they did not receive what they were promised (*i.e.*, the "benefit of their bargain").  (*Supra* at 22-23).

Both Plaintiffs also directly refuted their NJCFA claim that the Loan Agreement included "deceptive representations," "fraudulent and unfair and deceptive provisions," and that Defendants engaged in "false and deceptive practices."  (Ex. H at ¶¶ 28, 68, 78, 91).  Quite the contrary, Plaintiffs conceded that they received exactly "what was promised"—the loan amount and a quick funds transfer allowing them to meet short-term financial obligations.  *See Marcus*, 687 F.3d at 606 (citation omitted); (Ex. A at 50:8-12, 72:17-22, 87:3-9, 113:18-114:4; Ex. B at 80:16-81:5).  They repeatedly emphasized that terms such as the interest rate, governing law, finance charges, total amount of payments, and the dispute mechanism—all of which they understood—did not factor into their decision to take out the Western Sky Loans.  (Ex. A at 52-5; Ex. B at 81:11-19, 233-36).  Plaintiffs will therefore be forced to focus on convincing the Court or a jury that the alleged misrepresentations caused their ascertainable loss notwithstanding their testimony (*see supra* at 22), rather than ensuring that absent class members' "interests are fully pursued."  *In re Schering Plough*, 589 F.3d at 602 (citation omitted); *see also Betts v. Advance Am.*, 213 F.R.D. 466, 483 (M.D. Fla. 2003) (holding plaintiff could not represent class because "she understood fully the economics of her transactions with [the defendant] and denies that it made any misrepresentations to her.").

Ms. Spearman also will be a major focus because she obtained and paid off *three different* Western Sky Loans, which reflects her *positive experience* with the Western Sky Loan

Program.  (*See* Ex. A at 106:5-12).  Indeed, it was this positive experience that prompted her to inquire with CashCall about a mortgage.  (*Id.* at 103:1-8; Ex. G).  Ms. Spearman must overcome her satisfaction with the loans in seeking to prove that she did not receive what she was promised or the "benefit of her bargain," and that the loan provisions caused her ascertainable loss (*see supra* at 22), further guaranteeing that she cannot protect the class' interests.  *See Hammer v. Vital Pharms., Inc.*, 2015 WL 12844442, at *8 (D.N.J. Mar. 31, 2015) (denying certification where "Plaintiff's knowledge will be uncommon to other class members and most likely a major focus of the continued litigation in this case").

### B.   Plaintiffs Have Failed to Show That They Are Adequate Class Representatives.

Plaintiffs must demonstrate that they "will fairly and adequately protect the interests of the class."  Rule 23(a)(4).  This rule requires the Court to (i) "test[] the qualifications of the counsel to represent the class"; and (ii) "uncover conflicts of interest between named parties and the class they seek to represent."  *In re Schering Plough*, 589 F.3d at 602 (citation omitted).

Regarding the qualifications of counsel, Plaintiffs fail to even mention, let alone justify, how Schall & Barasch, LLC, their New Jersey counsel of record, will adequately represent a class.  The law firm's involvement in this case is not trivial—Patricia Barasch signed and filed Plaintiffs' Motion, and has participated in proceedings before this Court, as required by L. Civ. R. 11.1.  Without any evidence demonstrating that Schall & Barasch can protect the interests of any class, this Court must deny certification or, at the very least, dismiss Schall & Barasch as counsel for any class that may be certified.

Plaintiffs do not meet the second requirement either, because Mr. MacDonald lacks credibility.  He testified *277 times* that he did not know, or could not remember, an answer to a question, including questions relating to basic facts such as the years in which he married and

divorced (Ex. B at 20:5-9, 20:16-20, 69), or when he decided to sue Defendants (*id.* at 221:8-14). (*See* Certification of William Hendricks).   More importantly, he claimed to not recall fundamental circumstances of his Western Sky Loan, including the date of the loan (Ex. B at 66:21-67:7), the "sales pitch" for the loan (*id.* at 78:3-14), the advertised interest rate (*id.* at 81:6-8), and the reason he stopped making payments (*id.* at 145:17-20, 150:6-14).   He also did not know whether he suffered damages (*id.* at 230:3-16), whether any Defendant acted deceptively (*id.* at 237:20-239:4), or whether an amended complaint was filed (*id.* at 225:17-226:10).   Mr. MacDonald creates "sufficiently grave credibility problems" preventing him from representing a class.  *Coyle v. Hornell Brewing Co.*, 2011 WL 2147218, at *5 (D.N.J. May 26, 2011).

Mr. MacDonald's lack of credibility becomes more concerning in light of the fact that the lawsuit bearing his name was not even initiated by him, but instead by a third party with no Western Sky Loan.  Mr. MacDonald testified that he could not recall the year he first came into contact with his attorneys, which attorney at Nichols Kaster he spoke to first, or even who initiated the contact.   (Ex. B at 222:8-223:2, 225:2-4).   What Mr. MacDonald failed to acknowledge during his sworn testimony was that his now ex-wife, Ms. Martinez, was the catalyst behind this case, initiating contact with Plaintiffs' counsel and engaging them as the attorney.  (Ex. E at 52:14-53:8).  The circumstances surrounding how this lawsuit began clearly demonstrate that Mr. MacDonald cannot adequately represent the class, particularly given his testimony that he "would absolutely not jump to conclusions" that "any laws have been violated."  (Ex. B at 232:6-12); *see also Betts*, 213 F.R.D. at 483 (finding plaintiff inadequate where she admitted that decision to start lawsuit was made by her attorneys).

## V.    PLAINTIFFS WAIVED ANY RIGHT TO BRING THIS CLASS ACTION.

Finally, the Court should deny certification because Plaintiffs waived their right to seek class-wide relief.  "[T]he Supreme Court has enforced waivers of a plaintiff's right to proceed

collectively." *Horowitz v. AT&T Inc.*, 2019 WL 77306, at *3 (D.N.J. Jan. 2, 2019); *see, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236-39 (2013) (enforcing class-action waiver within arbitration agreement).   These class waivers are enforceable regardless of whether arbitration is involved.  *See Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490, at *9 (E.D. Pa. May 27, 2016) (finding "class action waivers outside of arbitration are enforceable").

Plaintiffs explicitly agreed to waive their right "TO PARTICIPATE IN A CLASS ACTION LAWSUIT."  (Ex. D at CC-M-00000013).  The Third Circuit acknowledged that this class waiver was separate and distinct from the arbitration provision, citing to the waiver as a "later part[] of the *Loan Agreement*."  *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 230 n.8 (3d Cir. 2018) (emphasis added).  Thus, the Court should enforce the waiver and deny certification.

Regardless, Plaintiffs offer no basis to invalidate the waiver because they fail to mention, let alone justify, why it should not be enforced.  This omission is glaring because Plaintiffs seek a declaration voiding the waiver.  (*See* Ex. H at ¶ 102B).  Thus, Plaintiffs waived any argument against its enforceability.  *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (finding issue waived if not raised in opening brief).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: March 21, 2019                              Respectfully submitted,

                                                   SKADDEN, ARPS, SLATE, MEAGHER
                                                   & FLOM LLP
                                                   *Attorneys for Defendants*


                                                   By:  s/Andrew Muscato
                                                        Andrew Muscato

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on March 21, 2019, I caused a copy of Defendants' Memorandum of

Law in Opposition to Plaintiffs' Motion for Class Certification and accompanying certifications

and exhibits to be served by e-filing upon counsel for Plaintiffs John S. MacDonald and Jessica

C. Spearman listed below by ECF.

> Patricia A. Barasch, Esq.
> Schall & Barasch, LLC
> Moorestown Office Center
> 110 Marter Avenue, Suite 302
> Moorestown, NJ 08057

Dated: March 21, 2019

> <u>s/Andrew Muscato</u>
> Andrew Muscato