## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN S. MACDONALD and JESSICA C. SPEARMAN, | Civil Action No. 2:16-cv-02781-MCA-LDW |
| Plaintiffs, | Motion Date: May 6, 2019 |
| v. | **ORAL ARGUMENT REQUESTED** |
| CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORP.; and J. PAUL REDDAM, | |
| Defendants. | |

**Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification Pursuant to Fed. R. Civ. P. 23**

**NICHOLS KASTER, PLLP**
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
Robert L. Schug, MN Bar No. 0387013*
Matthew H. Morgan, MN Bar No. 304657*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
aprakash@nka.com
bspecht@nka.com
schug@nka.com
morgan@nka.com

\* Admitted *Pro Hac Vice*

**GUPTA WESSLER PLLC**
Matthew Wessler*
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
matt@guptawessler.com

**SCHALL & BARASCH, LLC**
Patricia A. Barasch, NJ Bar No. 0055480
Moorestown Office Center
110 Marter Ave, Suite 302
Moorestown, NJ 08057
Telephone: (856) 914-9200
Facsimile: (856) 914-9420
pbarasch@schallandbarasch.com

## TABLE OF CONTENTS

**REPLY ARGUMENT** ...................................................................................1

**I. THIS ACTION IS SUPERIOR FOR NEW JERSEY BORROWERS** ......................................................................1

**II. THE PROPOSED CLASS DEFINITIONS ARE PROPER** ....................6

**III. PREDOMINANCE IS SATISFIED** ..............................................................7

**IV. THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL** ....................................................................................11

**V. THE PROPOSED CLASS REPRESENTATIVES ARE ADEQUATE** ....................................................................................11

**VI. DEFENDANTS' LAST-DITCH WAIVER ARGUMENT FAILS** .........14

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*,
478 F.2d 540 (3d Cir. 1973)....................................................................................2

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)............................................................................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................................................15

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006).............................................................................11

*Bosland v. Warnock Dodge, Inc.*,
197 N.J. 543 (2009)..........................................................................................10

*Cf. Ostrof v. State Farm Mut. Auto. Inc. Co.*,
200 F.R.D. 521 (D. Md. 2001)...........................................................................5

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998)............................................................................5

*Chedwick v. UPMC*,
263 F.R.D. 269 (W.D. Pa. 2009) ......................................................................6

*Com. of Pa. v. Budget Fuel Co., Inc.*,
122 F.R.D. 184 (E.D. Pa. 1988).........................................................................3

*Conde v. Sensa*,
2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)...................................................3

*Cox v. Sears Roebuck & Co.*,
138 N.J. 2 (1994)................................................................................................4

*Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997)............................................................................5

*Gilmore v. Pawn King, Inc.*,
2016 WL 1180147 (D. Conn. Mar. 25, 2016) ...........................................................7

*Gregory v. Finova Capital Corp.*,
442 F.3d 188 (4th Cir. 2006) ..................................................................................3

*Heyert v. Taddese*,
431 N.J. Super. 388 (App. Div. 2013) ...................................................................10

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992) ..............................................................................................10

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ..................................................................................12

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ..................................................................................11

*Inetianbor v. CashCall, Inc.*,
No. 13-60066-CIV-COHN/SELTZER, ECF No. 284
(S.D. Fla. Sept. 19, 2016) ................................................................................ 3-4, 6

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ..................................................................................3

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................5

*Lee v. Carter–Reed Co., L.L.C.*,
203 N.J. 496 (2010).................................................................................................10

*Levine v. 9 Net Ave., Inc.*,
2001 WL 34013297 (N.J. Super. Ct. App. Div. June 7, 2001)...............................5

*MacDonald v. CashCall, Inc.*,
883 F.3d 220 (3d Cir. 2018)...................................................................................14

*Makaeff v. Trump Univ., LLC*,
2014 WL 688164 (S.D. Cal. Feb. 21, 2014).............................................................3

*McAnaney v. Smithkline Beecham Corp.*,
2012 WL 12906184 (D.N.J. Oct. 23, 2012) ............................................................5

*McNair v. Synapse Grp., Inc.*,
2009 WL 1873582 (D.N.J. June 29, 2009) ..............................................................5

*Muhammad v. Cty. Bank of Rehoboth Beach, Delaware*,
189 N.J. 1 (2006) .....................................................................................................15

*Muller v. M.D. Sass Assocs., Inc.*,
1992 WL 80938 (D.N.J. Apr. 22, 1992) ...................................................................4

*Parker v. George Thompson Ford, Inc.*,
83 F.R.D. 378 (N.D. Ga. 1979) ................................................................................3

*Rodriguez v. It's Just Lunch, Int'l*,
300 F.R.D. 125 (S.D.N.Y. 2014) ..............................................................................3

*Ryan v. Gina Marie, L.L.C.*,
420 N.J. Super. 215 (App. Div. 2011) ....................................................................10

*Tengood v. City of Philadelphia*,
529 F. App'x 204 (3d Cir. 2013) ..............................................................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .............................................................................................9

## STATUTES

N.J. Stat. § 56:8-2.11 ................................................................................................6

N.J. Stat. § 56:8-2.13 ................................................................................................4

N.J. Stat. Ann. § 31:1-1 ............................................................................................8

## MISCELLANEOUS

2 Newberg on Class Actions (5th ed.) ......................................................................5

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
2018 WL 5264051 (9th Cir. Oct. 19, 2018)
Opening Br. .................................................................................................4

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
2018 WL 6814542 (9th Cir. Dec. 19, 2018)
Defs.' Principal Cross-Appeal Br. ...........................................................2

## REPLY ARGUMENT

Defendants' opposition to certification is largely based on the notion that New Jersey borrowers should be prevented from proceeding as a class in this Court because of the Consumer Financial Protection Bureau's ("CFPB") action in a different forum, where relief is hypothetical and inadequate, and where Defendants themselves are challenging the constitutionality of the CFPB and its authority. But there is no bright-line rule deeming government actions preferable to private suits. This proposed class action is far superior. Defendants' other arguments fare no better. They quibble over semantics and irrelevant testimony, argue about damages and merits issues that are both immaterial at the class certification stage and can be answered on a class-wide basis, and desperately attempt to revive arguments that the Third Circuit has conclusively decided. The Court should reject Defendants' arguments and certify the proposed classes.

## I.     THIS ACTION IS SUPERIOR FOR NEW JERSEY BORROWERS.

Plaintiffs have demonstrated superiority. The 11,158 New Jersey borrowers affected by Defendants' uniform scheme to issue and collect on loans with interest rates higher than New Jersey's legal limit should have their claims decided together in this Court. No class member is interested in separate actions, and the case is manageable given the common issues and ease of calculating damages. Yet Defendants argue against superiority based on the CFPB action and a New Jersey

Department of Banking ("NJDOB") Order. Defendants are wrong.

*First*, Defendants' argument that the CFPB action is superior is disingenuous and invites a "heads-I-win-tails-you-lose" scenario, with New Jersey borrowers on the losing end. In the pending appeal in the CFPB action, Defendants argue: that the CFPB's structure is unconstitutional; that the CFPB lacks authority to bring an enforcement action; that violations of state usury law cannot form the basis of a claim under the Consumer Financial Protection Act ("CFPA"); and that judgment should be entered in Defendants' favor. Defs.' Principal Cross-Appeal Br., 2018 WL 6814542 at *52-56 (9th Cir. Dec. 19, 2018). Defendants make their argument in the alternative, i.e., should the Ninth Circuit affirm the lower tier civil penalty and find restitution unwarranted, they will drop their cross-appeal. *See id.* at *2, n.2. In short, Defendants' view is that New Jersey borrowers should be prevented from pursuing their claims in this Court because of another action where they could recover less than what is sought here or nothing at all.[1] The Court should not reward this gamesmanship.

*Second*, setting aside Defendants' motivations, recovery in the CFPB action is hypothetical. Thus, New Jersey borrowers have an increased likelihood of

---

[1] Defendants' conflicting positions demonstrate their willingness to play fast and loose with the judicial system at the expense of New Jersey borrowers. Defendants further argue that the CFPB's expertise makes that action superior. Not so. *See Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 543 (3d Cir. 1973) ("The expertise of the Commissioner is immaterial, since [the merits decision] must be by the district court.").

recovery if this action moves forward. *See Inetianbor v. CashCall, Inc.*, No. 0:13-cv-60066 at 11 (S.D. Fla. Sept. 19, 2016) (Pls.' Ex. Y) (considering increased likelihood of relief in finding superiority).[2] While the CFPB action has been tried, liability has yet to be affirmed. Unlike this case, where the propriety of New Jersey's statutory structure and Plaintiffs' authority to sue are undisputed, Defendants' appeal calls into question the structure and authority of the CFPB. Thus, eliminating the class action as an avenue of recovery for New Jersey borrowers makes no sense. *See id.* (considering uncertainty of remedy in state action); *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *19 (S.D. Cal. Feb. 21, 2014) (finding superiority where no relief had been obtained in state action).[3]

*Third*, relief in the CFPB action is inadequate.[4] There, the civil penalty of $10.3 million is meant to cover borrowers in New Jersey and twelve other states.

---

[2] Defendants try to distinguish *Inetianbor* based on the attorney general's input. *Inetianbor*, however, is based on several factors, including increased likelihood of relief, uncertainty of remedy, and state law contemplating a private remedy in addition to state action. *Id.* While the CFBP has not provided input and has tried its action, the totality of the circumstances and *Inetianbor* factors support superiority.

[3] Defendants' cases stand in contrast, as they involve actions where settlements had been reached. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975); *Conde v. Sensa*, 2018 WL 4297056, at *16 (S.D. Cal. Sept. 10, 2018); *Com. of Pa. v. Budget Fuel Co., Inc.*, 122 F.R.D. 184, 186 (E.D. Pa. 1988).

[4] Defendants wrongly state that disparity in relief is irrelevant. *See e.g., Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 382 (N.D. Ga. 1979) (considering, in TILA action, statutory cap on class recovery versus relief if individual action); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 148 (S.D.N.Y. 2014) (considering injunctive relief versus monetary relief). *Gregory v. Finova Capital Corp.*, cited by Defendants, holds that disparity in relief could not overcome the other considerations *in that case*. 442 F.3d 188, 192, n.6 (4th Cir. 2006).

3

CFPB's Opening Br., 2018 WL 5264051, at *4 n.1, 12 n.4, 14 (9th Cir. Oct. 19, 2018). In New Jersey alone, Defendants have loaned more than $32,000,000 in principal. Interest rates near or in excess of 100% necessarily place out-of-pocket damages[5] in the same range and, with mandatory trebling,[6] result in approximately nine times the penalty to be shared between thirteen states in the CFPB action. Even if the CFPB obtained restitution, the laws at issue here still provide more through mandatory trebling. *See also* N.J. Stat. § 56:8-2.13 (remedies are "in addition to and cumulative of any other right [or] remedy"); *Inetianbor* at 11 (considering that law allows private remedy in addition to government action).[7]

*Fourth*, the Court should deny Defendants' request for a stay. Defendants have not shown that proceeding in this case imposes a hardship. *See Muller v. M.D. Sass Assocs., Inc.*, 1992 WL 80938, at *3 (D.N.J. Apr. 22, 1992). Plaintiffs are not parties to the CFPB action pending in a different court. Waiting for the Ninth Circuit, where briefing has only just concluded, would not further judicial economy and would prejudice Plaintiffs by delaying a decision on certification.

---

[5] (*See infra* Pt. III (citing authority allowing for collection of all unlawful interest).)
[6] *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 209 (3d Cir. 2013).
[7] If restitution is awarded in the CFPB action, any offset can be handled at the damages stage. As to Ms. Spearman, she testified she was not familiar with the CFPB action (Pls.' Ex. BB: Spearman Dep. 122-123) and, over the objection of counsel that the question called for a legal conclusion and speculation, answered that if she got excess interest through the CFPB action, she would have gotten what she asked for. (Defs.' Ex. A: Spearman Dep. at 130.) This is not the admission Defendants make it out to be and cannot supersede relief allowed by law.

*See McAnaney v. Smithkline Beecham Corp.*, 2012 WL 12906184, at \*1–2 (D.N.J. Oct. 23, 2012) (holding judicial economy best served by moving forward.).

*Fifth*, as to the NJDOB Order, Defendants give no indication that it secured any monetary relief and admit that it has not proceeded to an administrative hearing despite being initiated in 2016.[8] In contrast, since 2016, Plaintiffs have prevailed on the arbitration issue in this Court and on appeal, completed fact discovery, and moved for certification. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 553–54 (E.D.N.Y. 2017) ("The mere possibility of an FTC proceeding does not outweigh the economies… afforded by a class action.") (quotations omitted).

*Finally*, that individual damages are not insignificant does not defeat superiority or make it per se easier for individuals to bring suit. Inviting individual suits would risk inconsistent judgments within New Jersey and use this District's resources to repeatedly answer questions that are capable of class-wide resolution. *See* 2 Newberg on Class Actions § 4:67 (5th ed.) ("In addition to avoiding a flood

---

[8] *Cf. Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 532 (D. Md. 2001) (agency with authority to order individual remedies had "indicated that it will exercise that authority"). Defendants' cases regarding a mere possibility of administrative action are inapposite; they involve findings that individual issues predominate and point to administrative proceedings for management/remedies. *See McNair v. Synapse Grp., Inc.*, 2009 WL 1873582, at \*14 (D.N.J. June 29, 2009); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463 (D.N.J. 1998); *Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 353 (D.N.J. 1997). And, class actions are typically viewed as a useful supplement to such action. Newberg on Class Actions § 4:87 (5th ed.); *Levine v. 9 Net Ave., Inc.*, 2001 WL 34013297, at \*3 (N.J. Super. Ct. App. Div. June 7, 2001) ("[M]ere statutory authorization for such alternative relief [does not] automatically preclude private… actions.").

of individual litigation, a class action may enhance judicial efficiency and legitimacy by preventing inconsistent results.").

## II.     THE PROPOSED CLASS DEFINITIONS ARE PROPER.

Defining the classes to include individuals "located" in New Jersey does not create an ascertainability issue as Defendants wrongly suggest. Defendants identified the number of consumers who listed a New Jersey address on their loan documents. (Pls.' Ex. O: Defs' Interrog. Response Nos. 4, 5 (identifying individuals "who, on the face of the loan, [are] listed as having a New Jersey address.").) They also stipulated that they can produce a list identifying each of these class members, including their address. (Pls.' Ex. R: Stipulation ¶ 4.) This is the group to whom notice will be mailed. Discovery and the stipulation demonstrate that all parties understood this to be the class in question. How the same group is referenced in the class definition is simply semantics. If the Court disagrees, it can easily modify the definitions to refer to individuals identified as New Jersey residents on each loan. *See Inetianbor* at 7-9 (approving a similar revised class definition); *see also Chedwick v. UPMC*, 263 F.R.D. 269, 272 (W.D. Pa. 2009) ("Courts possess the authority to limit or modify class definitions... to provide the precision needed for class certification.").

Nor are the class definitions fail-safe. As Defendants concede, the term "Western Sky Enterprise" is shorthand used to refer to the Defendants. (Defs.' Br.

6

at 17 n.2.) Class membership does not depend on the merits. Regardless, any issue can be resolved by modifying the definitions to substitute the phrase "Western Sky loans."

Accordingly, if the Court adopts Defendants' arguments, Plaintiffs request certification of the following classes: (1) **Six Year Class** – All individuals who, on or after May 17, 2010, made payments to one or more Defendants on Western Sky loans where the borrower is listed on the face of the loan as having a New Jersey address; (2) **Four Year Class** – All individuals who, on or after May 17, 2012, made payments to one or more Defendants on Western Sky loans where the borrower is listed on the face of the loan as having a New Jersey address.

## III. PREDOMINANCE IS SATISFIED.

Defendants are also wrong on predominance. Every borrower who paid any amount is injured and has damages because (1) under the New Jersey Consumer Fraud Act ("CFA") the entire loan, not just excess interest, is unlawful, *see* N.J. Stat. § 56:8-2.11 ("Any person violating the… act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."); (2) RICO damages are not limited to the excess interest, *see Gilmore v. Pawn King, Inc.*, 2016 WL 1180147, *3 n.2 (D. Conn. Mar. 25, 2016) ("To the extent that defendants claim they should only be required to pay the amount of interest in

excess of the lawful rate, that claim lacks merit.");[9] and (3) the amortization schedule allocated the vast majority of each payment to interest. (*See e.g.*, Defs.' Ex. L.) Because Defendants charged interest greater than the 16% allowed by law, all payments necessarily included amounts exceeding the legal limit.

This third point holds true even under usury law. For example, for Mr. MacDonald's loan of $5,000, at the maximum legal rate of 16% annually, Defendants were allowed to collect interest of no more than $800 per year, or $66.67 per month.[10] Adding in the monthly amount of $59.52 to repay the principal over the loan's 84-month term, the maximum Defendants were entitled to collect for a month was $126.19.[11] Yet, the monthly payments were $486.58—more than $360.39 of what is allowed. (*See e.g.*, *id.*) With a single payment, then, the borrower suffered an injury of at least $360.39. While Defendants would be entitled to retain the legal interest under usury law, *i.e.*, $66.67, along with the principal payment of $59.52, the remaining $360.39 are damages.[12] This basic fact of injury will remain true for all class members given the interest rates and the fact that all loans had flat, fixed payments with no balloon at the end. (Pls.' Ex. A:

---

[9] Plaintiffs intend to seek all interest paid, not principal.

[10] That is, $5,000 x 0.16 = $800. And, $800 ÷ 12 = $66.67. *See* N.J. Stat. Ann. § 31:1-1 ("when there is a written contract specifying a rate of interest, no person shall take above the value of $16.00 for the forbearance of $100.00 for a year.")

[11] That is, $5000 ÷ 84 = $59.52.

[12] While usury law would require class members to continue make payments towards principal and lawful interest, under the CFA as discussed above, the loans would simply be canceled.

CashCall Dep. at 119.)

Regardless, the proper calculation of damages is a merits issue common to the class. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) ("That defense is itself common to the claims made by all class members."); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Even assuming *arguendo* that Defendants' "net benefit" theory is correct, those class members who did not pay an amount greater than principal could easily be identified and excluded. *See Tyson Foods*, 136 S. Ct. at 1050 ("Whether that or some other methodology will be successful in identifying uninjured class members is a question that, on this record, is premature.").

The Court should also reject Defendants' arguments against predominance on the CFA, RICO, and unjust enrichment. Defendants do not even attempt to dispute that they committed the same unlawful conduct with respect to each class member—charging unconscionable and illegal interest rates. Contrary to Defendants' contention, this case does not involve individual inquiries on loss causation concerning what each class member knew about the terms of their loans, how many loans they took out, or the details of their customer service experience.

As Magistrate Judge Wettre has already held, a plaintiff's subjective experience or understanding is irrelevant. (*See* Ex. Pls.' X: Hearing Tr. at 6-9.)

"Causation under the CFA is not the equivalent of reliance." *Lee v. Carter–Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010). Rather, "[t]o establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful practice." *Heyert v. Taddese*, 431 N.J. Super. 388, 421 (App. Div. 2013). "Courts have generally found causation to be established for CFA purposes when a plaintiff has demonstrated a direct correlation between the unlawful practice and the loss[.]" *Id.* at 421. RICO also requires "some direct relation between the injury asserted and the injurious conduct…." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). An "ascertainable loss" under the CFA means that a "plaintiff must suffer a definite, certain and measurable loss, rather than [a theoretical] one[.]" *Heyert*, 431 N.J. Super. at 417.

Here, where Defendants have stipulated that they have data on what each and every class member paid—broken down by payments applied to various categories, including principal and interest—there is no question that the class members' losses are easily ascertained and causation neither speculative nor attenuated. *See id.* at 416-22; *Ryan v. Gina Marie, L.L.C.*, 420 N.J. Super. 215, 227 (App. Div. 2011); *see also Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 559, 964 (2009) ("More to the point, the overcharge in question is one that can be readily quantified and thus is ascertainable within the meaning of the CFA.").

## IV.   THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL.

Defendants' typicality defenses are irrelevant. As set forth in detail above, there is no reliance requirement under applicable law. This is true with respect to unlawful conduct *and* causation. (*See supra* Pt. III.) As such, whether the Class Representatives understood the language of their documents, got "what was promised," or had a good customer service experience is irrelevant.[13] *See Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006) (holding that a unique defense found to have "no merit" will not preclude class certification.).

In any event, Defendants' arguments are in no way "unique" to the Class Representatives. They are the type of arguments that would be made as to the class as a whole. *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (alleged defenses must be "inapplicable to many members of the class" to implicate typicality). Typicality is satisfied.

## V.   THE PROPOSED CLASS REPRESENTATIVES ARE ADEQUATE.

Defendants' adequacy arguments similarly miss the mark.[14] Defendants do not dispute that Ms. Spearman is adequate. Nor do they dispute that she and Mr.

---

[13] Much of the questioning Defendants highlight (such as the "validity" of the agreement) is inadmissible because they call for legal conclusions.

[14] Defendants' argument that local counsel Patricia Barasch of Schall & Barasch, LLC is inadequate is puzzling. Defendants provide no authority for the proposition that local counsel must also be designated as class counsel. Indeed, Plaintiffs have not requested that Ms. Barasch be designated as class counsel. But if it were required, she is qualified. (*See* Declaration of Patricia Barasch.)

MacDonald have capably represented the classes by assisting with the Complaints, responding to discovery, attending mediation and depositions, and demonstrating knowledge about the case. Defendants have identified no conflicts. *See In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 430 (3d Cir. 2016) (class representatives "ably discharged their duties by closely following the litigation, authorizing the filing of the [lawsuit], and approving… settlement").

Defendants' sole challenge to adequacy is that Mr. MacDonald purportedly "lacks credibility" because he could not recall the answers to some deposition questions.[15] The Third Circuit requires that a proposed representative possess "[a] minimal degree of knowledge about the litigation." *In re Nat'l Football League,* 821 F.3d at 430. Mr. MacDonald easily surpasses this standard. He testified, for example, about when he applied for his loan (Defs.' Ex B: MacDonald Dep. 66-67), why he applied (*id.* at 67, 233-235), the amount of the loan (*id.* at 70), the interest rate (Pls.' Ex. CC: MacDonald Dep. 71), how he heard about Western Sky (*id.* at 72), his review of the agreement (*id.* at 91-93), and his concerns about the high finance charge (*id.* at 97-100). He answered questions about the loan agreement itself (*id.* at 93-104), Western Sky's assignment of the loan to WS Funding (*id.* at 110-112), why he brought a lawsuit (Pls.' Ex. T: MacDonald Dep.

---

[15] Defendants deposed Mr. MacDonald for slightly more than five hours. (Second Declaration of Anna P. Prakash (Second Prakash Decl. ¶ 3).) Plaintiffs' Exhibits BB-DD are also attached to the Second Prakash Decl.

223-224), the identities of the Defendants (*id.* at 227), and his motivation to protect other consumers who were harmed by the practices at issue (*id.* at 247-248).

Notably, Defendants provide no detail about most of the instances where they contend Mr. MacDonald's answers were insufficient. They do not explain, for instance, how any of the questions were even material to the case, or whether Mr. MacDonald's answers were later clarified. The few examples given are either irrelevant, wrong, or drastically overblown. For example, Defendants do not explain why Mr. MacDonald needed to pinpoint the exact date of his divorce. He testified that it was in 2012, and apologetically conceded that he could not recall the exact date. (Pls.' Ex. CC: MacDonald Dep. 19-20.) Contrary to Defendants assertion, Mr. MacDonald *did* provide testimony about when he took out his loan (Defs.' Ex. B: MacDonald Dep. 66-67), the general "pitch" that was used (*id.* at 78), and the interest rate (Pls.' Ex. CC: MacDonald Dep. 70-71). As to questions about legal issues such as damages and what constitutes a RICO conspiracy, Mr. MacDonald appropriately deferred to his lawyers. (*See, e.g.*, *id.* at 230-232.)

Finally, Defendants' contention that the lawsuit was not "initiated" by Mr. MacDonald is misleading at best. As his ex-wife Ilissa Martinez explained, she took responsibility for financial decisions during the marriage. (Pls.' Ex. DD: Martinez Dep. 52-53.) After learning of Mr. MacDonald's loan, she reached out to counsel and, together with Mr. MacDonald, provided information. (*Id.* at 53-54.)

After the divorce, Ms. Martinez had no further involvement. (*Id.* at 55-56.)[16] Mr. MacDonald filed this action and has diligently represented the putative classes.

## VI.   DEFENDANTS' LAST-DITCH WAIVER ARGUMENT FAILS.

The Third Circuit could hardly have been clearer: "the entire arbitration agreement…is unenforceable." *MacDonald v. CashCall, Inc*, 883 F.3d 220, 232 (3d Cir. 2018). This includes the class action ban.

To avoid this conclusion, Defendants argue that the class action ban is "separate and distinct from the arbitration provision." (Defs.' Br. at 30.) The contract itself contradicts this claim. The ban is found in the section entitled "WAIVER OF JURY TRIAL AND ARBITRATION," and says (1) that "[a]ny arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding," and (2) that as part of agreeing to waive the right to "participate in a class action lawsuit . . . the arbitrator has no authority to conduct class-wide proceedings." (*See e.g.*, Pls.' Exs. E, F.) The contract—again in the arbitration section—also refers to the ban as a "class-wide Arbitration waiver." (*Id.*) Contrary to Defendants' claim, the Third Circuit's reference to this provision does not "acknowledge[]" that it is distinct. (Defs.' Br. at 30.) Rather, it identified the provision as "demonstrat[ing]" that Defendants were misreading the contract. *See* 883 F.3d at 229-30.

---

[16] Notably, she could not recall the exact date of her divorce from Mr. MacDonald. (Pls.' Ex. DD: Martinez Dep. 18.)

Even were the class action ban not located within the arbitration agreement, it has long been the rule in New Jersey that a freestanding class action ban "act[s] effectively as an exculpatory clause." *Muhammad v. Cty. Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 20 (2006).[17] Class action bans are unenforceable when found in a "consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *Id.* (holding that, as a "matter of generally applicable state contract law," it is unconscionable for a company to deprive a consumer "of the mechanism of a class-wide action . . . in court litigation"). The class action ban would be unenforceable even if it were not located in the arbitration agreement.

Dated: <u>April 11, 2019</u>   <u>s/Patricia A. Barasch</u>
           **SCHALL & BARASCH, LLC**
           Patricia A. Barasch, NJ Bar No. 0055480

           *Attorneys for Plaintiffs John MacDonald and Jessica Spearman*

---

[17] New Jersey's rule that an arbitration agreement may be invalidated solely on the basis that it contains a class action ban is no longer valid. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that a state law rule like New Jersey's is preempted by the Federal Arbitration Act.) That does not disturb the rule that, outside of arbitration, a contractual class action ban is exculpatory and therefore unenforceable if it is found in a form consumer contract.

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2019, I caused the foregoing Reply Memorandum and attached declarations and exhibits to be served by ECF upon the following:

ANDREW MUSCATO     amuscato@skadden.com, austin.brown@skadden.com, drew.newman@skadden.com, judy.jackson@skadden.com, william.hendricks@skadden.com

JENNIFER ZOE GINDIN     jennifer.gindin@skadden.com

PATRICIA A. BARASCH     pbarasch@schallandbarasch.com

RICHARD M. SCHALL     rschall@schallandbarasch.com

Dated: April 11, 2019                     s/Patricia A. Barasch

                                          Patricia A. Barasch