## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN S. MACDONALD and JESSICA C. SPEARMAN, | Civil Action No. 2:16-cv-02781-MCA-ESK |
| Plaintiffs, | Motion Date: April 6, 2020 |
| v. | |
| CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORP.; and J. PAUL REDDAM, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**INTRODUCTION**...................................................................................1

**RELEVANT BACKGROUND** ............................................................3

**I.**     **LITIGATION AND MEDIATION HISTORY** ......................3

**II.**    **OVERVIEW OF THE SETTLEMENT TERMS**.....................8

     **A. The Settlement Class** ......................................................8

     **B. Monetary Relief** ..............................................................8

     **C. Non-Monetary Relief** ....................................................11

     **D. Release of Claims** ...........................................................12

     **E. Class Notice and Settlement Administration** ............12

     **F. Attorneys' Fees, Costs, Administration Expenses, and Service Payments** ................................................................13

**ARGUMENT** .......................................................................................14

**I.**     **STANDARD OF REVIEW**.......................................................14

**II.**    **THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL**................................................18

     **A. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Meaningful Discovery, Treats Class Members Equitably Relative to Each Other, and Provides Adequate Relief for the Class** ................................18

     **B. The *Girsh* Factors Support Approval and Demonstrate that this Settlement Is Fair, Reasonable, and Adequate** ............23

**III.**   **THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED**..........................................................26

IV.    THE COURT SHOULD MODIFY THE EXISTING CLASS DEFINITIONS TO ACKNOWLEDGE A SINGLE SETTLEMENT CLASS, APPOINT THE NAMED PLAINTIFFS AS CLASS REPRESENTATIVES, APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVE THE PARTIES' AGREED UPON SETTLEMENT ADMINISTRATOR ...............................................................................................27

**CONCLUSION**...............................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Akishev v. Kapustin*, No. CV-13-7152-NLH-AMD,
2015 WL 12838316 (D.N.J. Sept. 21, 2015) ............................................................6

*Bernhard v. TD Bank, N.A.*,
No-08-4392-RBK-AMD, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) ............... 20-21

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015), *reh'g en banc denied*,
807 F.3d 839 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016) ................19

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
No. CV-15-07522-JFW-RAOx, 2016 WL 4820635
(C.D. Cal. Aug. 31, 2016) .............................................................................4

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
No. CV-15-07522-JFW-RAOx, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018),
*cross-appeals docketed*, 18-55479 (9th Cir.)......................................................4, 25

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
No. 18-55407, 18-55479, 2019 WL 5390028 (9th Cir. Oct. 21, 2019)....................4

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) .............................................................................21

*Garcia v. Gen. Motors Corp.*,
910 F.Supp. 160 (D.N.J. 1995) ................................................................................6

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)................................................................ 14, 17-18, 23

*Haas v. Burlington Cty.*,
No. 08-1102-NHL-JS, 2019 WL 413530 (D.N.J. Jan. 31, 2019)..................... 24-25

iii

*Hayes v. Delbert Servs. Corp.*,
811 F.3d 666 (4th Cir. 2016) ...................................................................19

*Hayes v. Delbert Servs. Corp.*,
No. 3:14-cv-00258-JAG, ECF No. 200 (E.D. Va. June 6, 2017)............................4

*Huffman v. Prudential Ins. Co. of Am.*,
2:10-cv-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ...................................17

*Inetianbor v. CashCall, Inc.*,
No. 13-60066-CIV-COHN/SELTZER, ECF No. 326
(S.D. Fla. May 15, 2017) ...................................................................4, 22

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002).................................................................26

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)..................................................................27

*In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)...................................................................14

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
No. 16-MD-2687-JLL-JAD, 2018 WL 7108059 (D.N.J. Dec. 3, 2018) ................23

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)..................................................................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................16

*In re PNC Fin. Services Grp., Inc.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006).....................................................22

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .....................................................22

*In re: Shop-Vac Mktg. & Sales Practices Litig.*,
No. 4:12-MD-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) .......................21

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................25

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
No. 08-CV-3610-CLW, 2015 WL 2383358 (D.N.J. May 18, 2015) ............... 20-21

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's,
London Members*,
No. 08-00235-CCC, 2019 WL 4877563 (D.N.J. Oct. 3, 2019)........................ 22-23

*MacDonald v. CashCall, Inc.*,
883 F.3d 220 (3d Cir. 2018)...........................................................................5

*Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015) ............................................19

*Myers v. Jani-King of Phila., Inc.*,
No. 09-1738, 2019 WL 2077719 (E.D. Pa. May 10, 2019)....................................15

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ...........................................26

*Robinzine v. Big Lots Stores, Inc.*,
No. 15-CV-7239, 2016 WL 212957 (N.D. Ill. Jan. 19, 2016).........................19

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
No. 16-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017) ................................... 21-22

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, No. 19-7
(cert. granted Oct. 18, 2019) ......................................................................4

*Smith v. Merck & Co.*,
No. 13-2970-MAS-LHG, 2019 WL 3281609 (D.N.J. July 19, 2019)......... 15, 17-19

*Swinton v. SquareTrade, Inc.*,
4:18-cv-00144-SMR-SBJ, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ..............16

*Titus v. Zestfinance, Inc.*, 18-05373 (W.D. Wa.)............................................... 19-20

*Udeen v. Subaru of Am., Inc.*,
No. 18-17334-RBK-JS, 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ..14-15, 17-18, 24

*Williams v. Red Stone Inc.*, 18-02747 (E.D. Pa.)....................................................20

**RULES**

Fed. R. Civ. P. 23(c)...................................................................................26

Fed. R. Civ. P. 23(e)................................................................... 15-18, 26

**BRIEFING**

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
No. 18-55407, 18-55479, 2018 WL 5264051 (9th Cir. Oct. 19, 2018),
2019 WL 1757012 (9th Cir. Apr. 11, 2019) ............................................................4

**INTRODUCTION**

After nearly four years of hard-fought litigation, the parties in this class action have reached a settlement that provides meaningful relief to Settlement Class Members. This lawsuit challenged the interest rate charged to New Jersey borrowers who had taken out Western Sky loans and made payments on those loans to Defendants CashCall, Inc., W.S. Funding, LLC, Delbert Services Corp., and/or J. Paul Reddam ("Defendants"). The parties' settlement resolves the dispute by, among other things, requiring Defendants to pay a gross settlement amount of $14,500,000 into a common fund for the benefit of Settlement Class Members. This recovery for class members represents more than 70% of the interest Settlement Class Members paid over the New Jersey usury rate. Moreover, Defendants—who stopped collecting on the loans in 2016—have agreed to non-monetary relief that includes an agreement not to sell any Settlement Class Members' personal data and to inform any third parties who may have purchased the loans that the loans are cancelled and disputed. Defendants have also agreed to contact all consumer reporting agencies to which they previously had reported information regarding the loans and request permanent removal of any negative credit reporting previously reported to consumer reporting agencies in the name of any of the Defendants or Western Sky. Other relevant considerations also support preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, with the assistance of a well-respected mediator, Hon. Layn Phillips

1

(ret.);

- The proposed Settlement Class is consistent with the relevant requirements of Federal Rule of Civil Procedure 23;

- The Settlement provides for fair and reasonable monetary and prospective relief compared to settlements in other cases as described below;

- The Settlement provides for automatic distribution of the settlement funds via check to Settlement Class Members;

- The Class Release is appropriately tailored to the claims that were asserted in the action;

- The proposed settlement notices provide accurate and complete information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs John Scott MacDonald and Jessica Spearman ("Plaintiffs") now submit this Memorandum in support of their unopposed Motion for Preliminary Approval of Class Action Settlement.[1] Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) modifying the existing class definitions to acknowledge a single

---

[1] All capitalized terms have the meaning assigned to them in the parties' Settlement Agreement, unless otherwise specified herein. A copy of the Settlement Agreement ("Settlement," "Settlement Agreement," or "Agreement") is attached as **Exhibit 1** to the accompanying Declaration of Anna P. Prakash ("Prakash Decl.").

Settlement Class; (4) approving Atticus Administration LLC as the Settlement Administrator; (5) designating Plaintiffs as the Settlement Class Representatives; (6) designating Plaintiffs' counsel as Class Counsel; (7) scheduling a final approval hearing; and (8) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith.

## RELEVANT BACKGROUND

### I.   LITIGATION AND MEDIATION HISTORY

On May 17, 2016, Plaintiff MacDonald filed this class action lawsuit on behalf of himself and all other consumers in New Jersey who took out Western Sky consumer loans. (Compl., ECF No. 1.) The loans carried high interest rates, ranging from 79% to 200%. (Class Cert. Op. at 2, ECF No. 102.) Defendants believed these loans were not subject to state usury law based on their affiliation with Western Sky Financial, LLC ("Western Sky"), which was run by a member of the Cheyenne River Sioux Tribe. (*Id*.) Plaintiff disagreed that there was any tribal "affiliation" that would allow Defendants to claim sovereign immunity and alleged that the terms and conditions of the loans rendered them usurious, unconscionable, and otherwise unlawful under New Jersey law. (ECF No. 1.) Specifically, Plaintiff sought declaratory relief, alleged that Defendants were unjustly enriched, and alleged that Defendants violated New Jersey usury law, the New Jersey Consumer Fraud Act, and RICO. (*Id*) Plaintiff Spearman joined this case as a Plaintiff on September 25,

3

2018. (Amend. Compl., ECF No. 69.)[2]

Defendants have vigorously and emphatically contested the claims asserted by Plaintiffs, including a full-blown appeal up to the Third Circuit. To begin, Defendants moved to compel arbitration or, alternatively, dismiss this Action in September 2016. (ECF No. 11.) Judge Arleo denied Defendants' motion in April of 2017 (ECF No. 25), and Defendants then appealed to the Third Circuit (ECF No. 33). While the appeal was pending, Defendants brought a contested motion to stay

---

[2] The legality of Western Sky loans such as those at issue in this case has been challenged in several different actions. (*See* Op. on Mot. To Dismiss at 4-6, ECF No. 24 (cataloguing cases).) These actions include an action brought by the Consumer Financial Protection Bureau ("CFPB") in the United States District Court of the Central District of California. *CFPB v. CashCall, Inc.*, No. CV-15-07522-JFW-RAOx (C.D. Cal.). In that case, although the Court found the defendants liable under federal law, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016), and ordered Defendants to pay a penalty, the court declined to order any restitution to borrowers in the states at issue in that litigation, including New Jersey. *See* 2018 WL 485963 (C.D. Cal. Jan. 19, 2018). Both the CFPB and Defendants appealed to the Ninth Circuit and that appeal has effectively been stayed pending a decision by the Supreme Court in a separate case regarding the constitutionality of the CFPB's structure. *CFPB v. CashCall, Inc*., No. 18-55407, 18-55479, 2018 WL 5264051 (9th Cir. Oct. 19, 2018), 2019 WL 1757012 (9th Cir. Apr. 11, 2019), 2019 WL 5390028, at *1 (9th Cir. Oct. 21, 2019); *Seila Law LLC v. CFPB*, No. 19-7 (cert. granted Oct. 18, 2019). As to other actions, Defendants have been able to reach several state-specific settlements, including settlements on a class-wide basis in Florida and Virginia. *See Inetianbor v. CashCall*, *Inc.*, No. 13-60066-civ-COHN/SELTZER, ECF No. 326 (S.D. Fla. May 15, 2017) (granting final settlement approval); *Hayes v. Delbert Serv. Corp.*, No. 3:14-cv-00258-JAG, ECF No. 200 (E.D. Va. June 6, 2017) (granting final approval). As to cases brought by classes or the government, only this case, the CFPB action, and an action brought by the Arizona Attorney General remain pending. (Declaration of Delbert O. Meeks ("Meeks Decl.") ¶ 2 (attached to the Settlement Agreement as Exhibit A.)

discovery, which the Court granted on June 27, 2017. (ECF No. 39.) In February 2018, the Third Circuit affirmed Judge Arleo's order denying Defendants' motion to compel arbitration or dismiss in a published decision after oral argument. *MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018). After the case returned to the district court, Defendants filed their Answer in May of 2018 (ECF No. 50), and discovery commenced shortly thereafter.

The discovery period in this case was intense, with the parties on a tight timeline and neither party willing to compromise their right to information. (Prakash Decl. ¶ 3.) Plaintiffs thoroughly researched liability and damages issues in this case and aimed their discovery at both those issues, as well as certification. (*Id.*) Plaintiffs pushed for written and document discovery, as did Defendants. (*Id.*) The parties took several disputes to Magistrate Judge Wettre, including the issue of whether Plaintiffs could depose Defendants in this case as opposed to relying on depositions taken by other counsel the CFPB and *Inetianbor* actions. (*Id.*) Upon receiving approval from Magistrate Judge Wettre, Plaintiffs deposed Defendants CashCall and Reddam, as well as CashCall's Chief Financial Officer. (*Id.*) They also examined the more than 16,000 documents they were able to obtain from Defendants through discovery. (*Id.*) Plaintiffs themselves were deposed, as was Plaintiff MacDonald's ex-wife, and each Plaintiff responded to written discovery. (*Id.*) The parties attended mediation in November of 2018 with Magistrate Judge Wettre; however, they did not reach

settlement. (*Id.*)

The case then proceeded to full briefing on class certification. In 2019, Plaintiffs moved for class certification, Defendants filed a response, and Plaintiffs filed a reply. (ECF Nos. 93, 96, 97.) The Court granted class certification in October of 2019, certifying the following two classes:

> **Four Year Class:** All individuals who, on or after May 17, 2012, made payments to one or more Defendants on loans originated by Cashcall, Inc., WS Funding, LLC, Delbert Services Corp., J. Paul Reddam, or Western Sky Financial, LLC where the borrower was a New Jersey resident.

> **Six Year Class:** All individuals who, on or after May 17, 2010, made payments to one or more Defendants on loans originated by Cashcall, Inc., WS Funding, LLC, Delbert Services Corp., J. Paul Reddam, or Western Sky Financial, LLC where the borrower was a New Jersey resident.

(ECF No. 103.)[3] Defendants then filed a Rule 23(f) petition, seeking interlocutory review of the class certification order, which the plaintiffs opposed. (*See* ECF No. 106.) The Third Circuit denied the petition in February 2020. Order, No. 19-8044

---

[3] The two classes account for the different statute of limitations for the claims brought on behalf of all class members, i.e., the RICO has a four-year statute of limitations and the other claims in the case have a six-year statute of limitations. (*See* Pls.' Class Cert. Br. at 16, ECF No. 93-1.) As such, all members of the Four Year Class are also members of the Six Year Class. Notably, both RICO and the New Jersey Consumer Fraud Act allow for treble damages. *Akishev v. Kapustin*, No. CV-13-7152-NLH-AMD, 2015 WL 12838316, at *6 (D.N.J. Sept. 21, 2015) (confirming mandatory treble damages under RICO); *Garcia v. Gen. Motors Corp.*, 910 F.Supp. 160, 166 (D.N.J. 1995) (confirming availability of treble damages under New Jersey Consumer Fraud Act).

(3d Cir. Feb. 6, 2020).

Shortly after the Third Circuit denied the Rule 23(f) petition, the parties attended mediation with retired federal district court judge Layn Phillips of Phillips ADR in California. (Ex. 1 ¶ 5.) Prior to mediation, the parties exchanged mediation briefs. Defendants' brief focused on their intent to move for summary judgment on their affirmative defense of res judicata based on the CFPB action. (Prakash Decl. ¶ 4.) Additionally, as part of an agreed-upon exchange of information, Defendants produced various items of loan-level data for each Settlement Class Member. (Meeks Decl. ¶ 4.) Defendants also produced, among other things, information to compare Defendants' previous class action settlements involving Western Sky loans, information on CashCall's financial condition, the total interest collected from Settlement Class Members, and the total interest collected from Settlement Class Members above the 16% civil usury limit in New Jersey. (*Id*. ¶¶ 3-5.) As to the Loans at Issue, Defendants represented that they had collected $31,095,143 in total interest, but that only $20,155,721.29 of that amount was interest above the New Jersey usury rate. (*Id*. ¶ 3.) In other words, the difference between the interest Defendants charged and what they would have charged had they limited themselves to New Jersey's civil usury rate, is $20,155,721.29. (*Id*.) The full-day mediation was successful, and the parties executed a core settlement terms that day that included a Gross Settlement Amount of $14,500,000. (Ex. 1 ¶¶ 22, 38.)

7

## II.   OVERVIEW OF THE SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> All individuals who, on or after May 17, 2010, made payments to one
> or more Defendants on loans originated by CashCall, Inc., WS Funding,
> LLC, Delbert Services Corp., J. Paul Reddam, or Western Sky
> Financial, LLC where the borrower was a New Jersey resident.

(Ex. 1 ¶ 33.) This definition precisely matches the definition of the Six Year Class in the Court's certification order. (ECF No. 103.) Based on information provided by Defendants, there are approximately 10,574 Settlement Class Members (Meeks Decl. ¶ 4.)

### B.   Monetary Relief

Under the Settlement, Defendants will contribute a Gross Settlement Amount of $14,500,000 to a common fund. (Ex. 1 ¶ 22, 38.) Defendants have agreed that this and all terms in the Settlement will be binding regardless of the outcome of the CFPB action. (*Id.* ¶ 64.) Defendants will be jointly and severally responsible for the Gross Settlement Amount and will pay it into an account set up by the Settlement Administrator in two installments: the First Payment will be $10,000,000 and will be made within forty-five (45) days following the Effective Date of the Settlement.

(*Id.* ¶¶ 21, 30, 38.)[4]  The Second Payment will be $4,500,000 and will be made the later of forty-five (45) days following the Effective Date or the end of calendar year 2021. (*Id.* ¶¶ 21, 30, 38.) After accounting for any awarded attorneys' fees and costs, settlement administration expenses, and Class Representative service payments approved by the Court, the Net Settlement Fund will be allocated for distribution to eligible Settlement Class Members. (*Id.* ¶¶ 25, 39.)

As between Settlement Class Members, the Net Settlement Fund will be divided pro rata but weighted in proportion to the amount each Settlement Class Member paid on Western Sky loans (i.e., the Loans at Issue). (*Id.* ¶ 39.) Settlement Class Members will not be required to submit claim forms; rather, checks will issue. Payment to Settlement Class Members will be made via two checks in proportion to the amount of the Net Settlement Fund available after the First Payment and Second Payment, respectively. (*Id.*) The first check will be sent no later than five (5) business days following the First Payment, and the second check will be sent no later than five (5) business days following the Second Payment. (*Id.* ¶¶ 59, 60.)[5]

If approved by the Court, the service payments for each Named Plaintiff will

---

[4] The Effective Date is the date that this Settlement becomes completely final and there is no timely recourse by an appellant or objector who seeks to contest the Settlement. (Ex. 1 ¶ 19.)

[5] Notwithstanding the foregoing, there shall be a floor applied to each payment round, such that no Settlement Class Member will receive less than $10 per check. (*Id.* ¶ 39.)

be made by check by the Settlement Administrator at the same time the first checks following the First Payment are issued to the Settlement Class Members. (*Id.* ¶ 40.) This amount will be in addition to the pro rata amount paid to Plaintiffs, which will be distributed at the same time Settlement Class Members receive each of their checks. (*Id.* ¶¶ 39-40.) If approved by the Court, the out-of-pocket costs Class Counsel have advanced to fund this Litigation since May of 2016 will be wired to Class Counsel at the same time the first checks following the First Payment are issued to the Settlement Class Members. (*Id.* ¶ 41.) If approved by the Court, attorneys' fees will be paid to Class Counsel over two wires, each in proportion to the amount made available through the First Payment and Second Payment, respectively: The first will be wired to Class Counsel at the same time the checks following the First Payment are issued to the Settlement Class Members. (*Id.*) The second will be wired to Class Counsel at the same time the checks following the Second Payment are issued to Settlement Class Members. (*Id.*)

Settlement Class Members will have 120 days after checks are mailed to negotiate their checks. (*Id.* ¶ 43.) There will be two 120 day check negotiation periods: one following the First Payment and one following the Second Payment. After the first check negotiation period, the amounts Settlement Class Members did not cash will be held by the Settlement Administrator and those same amounts will be added to the second payments of those Settlement Class Members who did not

10

cash their first check. (*Id.*) Thirty (30) days following the close of the second check negotiation period, the Settlement Administrator will deliver any remaining amounts to the parties' chosen *Cy Pres* Recipient. (*Id.* ¶¶ 16, 43; Prakash Decl. ¶ 8 (discussing the *Cy Pres* Recipient.)

### C.    Non-Monetary Relief

Defendants stopped collecting on the Loans at Issue in 2016. (ECF No. 93-4 at 205-206.) If loans were sold to third parties, however, those third parties may still be collecting. (*Id.*) Thus, as further consideration in the resolution of this Litigation, Defendants agree to the following:

First, within thirty (30) days after the Effective Date, Defendants will provide Class Counsel with a list of Settlement Class Members' Western Sky Loans sold to third parties and the name and address of the third party to which each such loan was sold, to the extent available, and Defendants will provide notice to the third parties to which they sold the loans that such loans should be deemed canceled and that the amounts allegedly owed by consumers are in dispute. (Ex. 1 ¶ 37(a).)

Second, within thirty (60) days of the Effective Date, Defendants will contact applicable credit bureaus to request that any negative credit reporting by Defendants or their agents regarding the Loans at Issue be removed. (*Id*. ¶ 37(b).)

Third, as of the Effective Date, Defendants will refrain from selling any Settlement Class Member's personal data.  (*Id.* ¶ 37(c).)

11

### D.    Release of Claims

In exchange for the relief provided by the Settlement, all Settlement Class Members who do not timely opt out of this Settlement, will release Defendants, their current, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, representatives, successors, predecessors-in-interest, related entities and each of their respective officers, directors, employees, and insurers and assigns and all persons acting for or on their behalf, including Defendant Reddam (the "Released Parties") from the following: any and all claims the Settlement Class has arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint and Amended Complaint, including but not limited to any and all claims related to Western Sky Loans. (*Id.* ¶¶ 53, 18.)

### E.    Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Postcard Notice") via first-class mail. (*Id.* ¶ 28, Ex. D.) The Postcard Notice will provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) Settlement Class members' right to object or opt out of the settlement and the deadline for doing so; (5) the release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the

amount of requested Class Representative compensation; (8) appearing at and the date, time, and location of the final approval hearing; and (10) the website where the Long Form Notice of settlement will be posted. (*Id.*, Ex. D.) The Long Form Notice contains more detail on the above information. (*Id.* ¶ 24, Ex. C.)

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the following documents or links to the following documents: the operative Complaint, Settlement Agreement and its Exhibits, Settlement Notices, Preliminary Approval Order and any other Court orders related to the Settlement, and any other documents or information mutually agreed-upon by the Parties. (*Id.* ¶ 49.) When filed, the Settlement Administrator also will post or include links to Plaintiff's Motion for Attorneys' Fees and Costs, Administrative Expenses, and the Class Representative's Service Payments. (*Id.*)

**F.   Attorneys' Fees, Costs, Administration Expenses, and Service Payments**

The Settlement Agreement requires that Class Counsel file their Motion for Attorneys' Fees and Costs at least fourteen (14) days before the Opt-Out and Objection Deadlines. (*Id.* ¶ 57.) Under the Settlement, these fees are subject to Court approval and are capped at no more than one-third of the Gross Settlement Fund ($4,833,333.33), plus litigation costs and settlement administration expenses. (*Id.* ¶ 41.) Class Counsel's out-of-pocket litigation costs to date are approximately $70,000

and the estimated costs of settlement administration is $46,750. (Prakash Decl. ¶¶ 9-10.) The Settlement also provides for a service award up to $10,000 for each Class Representative, subject to Court approval. (Ex. 1 ¶ 40; Prakash Decl. ¶¶ 5-7, 9 (discussing amounts and previewing fee petition).)

## **ARGUMENT**

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts are mindful that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

 "Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing." *Udeen v. Subaru of Am., Inc.*, No. 18-17334-RBK-JS, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019). "At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation.  If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to all class members who would

14

be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement." *Id.* (internal citation omitted). "Generally, [w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.* (internal citations and quotations omitted); *Smith v. Merck & Co.*, No. 13-2970-MAS-LHG, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019) (internal citations and quotations omitted). If the court grants preliminary approval, the court then directs "that notice be provided to all of the potential class members who would be bound by the settlement agreement," allowing them to object or opt out of the settlement, and then holds a fairness hearing to make a final determination on whether the settlement is "fair, reasonable, and adequate." *Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2019 WL 2077719, at *3 (E.D. Pa. May 10, 2019).

Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendments. The amended rule states that, at the preliminary approval stage, the court must determine whether settlement notices should be distributed to class members by considering whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) in turn specifies factors the court must ultimately consider at the final approval stage in determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including  timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Courts considering motions for preliminary approval after 2018 have taken different views as to whether these amendments altered or merely codified existing case law. *Compare Swinton v. SquareTrade, Inc.*, 4:18-cv-00144-SMR-SBJ, 2019 WL 617791, at *4-5 & n.9 (S.D. Iowa Feb. 14, 2019) (concluding that the amendments "are mostly form over substance" and "largely codify existing case law") *with In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (stating that the "will likely be able to" standard "appears to be more exacting than the prior requirement"). Courts in this district have continued to apply the same legal standards to preliminary approvals after the

16

2018 amendments. *See generally Udeen*, 2019 WL 4894568 (citing pre-amendment case law, including *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *Smith*, 2019 WL 3281609 (citing pre-amendment case law).

Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.*

In *Girsh*, the Third Circuit identified nine factors courts should consider in granting final approval of a settlement under Rule 23(e):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (internal citations and quotations omitted)*; see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). This District has held that the an analysis focused on the basic presumption

17

of fairness, i.e., arm's-length negotiations between experienced, capable counsel after meaningful discovery, is "sufficient for preliminary approval," while noting "it is important to consider the final approval factors [under *Girsh*] during this stage so as to identify any potential issues that could impede [final approval]." *Udeen*, 2019 WL 4894568, at *3.

## II.   THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

Here, the settlement was negotiated at arm's length by experienced counsel after sufficient discovery, the Class Representatives adequately represented the Settlement Class, and the relief provided for the class is fair and equitable to all Settlement Class Members. As such, this Court will be able to approve the proposal under Federal Rule of Civil Procedure 23(e)(2) as well as the Third Circuit's factors, and should grant preliminary approval.

### A.   The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Meaningful Discovery, Treats Class Members Equitably Relative to Each Other, and Provides Adequate Relief for the Class.

"A settlement is presumed fair when it results from arms-length negotiations between experienced, capable counsel after meaningful discovery," *Smith*, 2019 WL 3281609, at *4 (internal citations and quotations omitted), and where it does not "improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Udeen*, 2019 WL 4894568 at *2 (internal citations and quotations omitted). *See* Fed. R. Civ. P. 23(e)(2). So it is

18

here.

First, the parties attended a full day mediation with a well-respected mediator, retired United States District Court Judge Layn Phillips. (*See* Ex. 1 ¶ 5.) "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Smith*, 2019 WL 3281609 at *4 (internal citations and quotations omitted).

Second, counsel for Plaintiffs and Defendants are knowledgeable and experienced in complex class actions. (*See* February 8, 2019 Declaration of Anna P. Prakash in Support of Class Cert. ¶¶ 7-8 (discussing Class Counsel's experience) and Ex. Z (Nichols Kaster Firm Resume), ECF Nos. 93-3 and 93-26; February 8, 2019 Declaration of Matthew W.H. Wessler in Support of Class Cert. ¶¶ 2-7, ECF No. 93-2; April 11, 2019 Declaration of Patricia A. Barasch in Support of Class Cert. ¶¶ 2-7, ECF No. 97-5.)[6]

---

[6] *See e.g., Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016) (holding that a tribal payday lender's forced-arbitration contract was categorically unenforceable because it prospectively waived consumers' statutory rights); *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015), *reh'g en banc denied,* 807 F.3d 839 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1607 (2016) (reversing the district court's dismissal of plaintiff's complaint against a student loan guarantor for wrongfully charging collection fees on defaulted student loans); *Robrinzine v. Big Lots Stores, Inc.,* No. 15-CV-7239, 2016 WL 212957 (N.D. Ill. Jan. 19, 2016) (denying defendant's motion to dismiss and holding that plaintiffs sufficiently stated a claim for willful violations of the Fair Credit Reporting Act); *Titus v.*

19

Third, the Settlement occurred after Class Counsel conducted a thorough investigation; prepared a detailed Complaint; exchanged and negotiated over extensive document and written discovery with Defendants; involved Magistrate Judge Wettre in those disputes, as well as a dispute over whether Class Counsel could take depositions in this case instead of relying on those taken by counsel in earlier matters; and thoroughly researched the merits of Defendants' arguments. (Prakash Decl. ¶ 3.)

Fourth, all Settlement Class Members, including the Named Plaintiffs, will receive their pro rata share of the Net Settlement Fund weighted to account for the amount of interest each person paid on the Loans at Issue. (Ex. 1 ¶ 39.) Thus, the Settlement treats class members equitably relative to each other. This, too, warrants preliminarily settlement approval. *Bernhard v. TD Bank, N.A.*, No-08-4392-RBK-AMD, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement in employment action where "the monetary distribution is otherwise calculated proportionate to the number of weeks in which individual class members actually worked").[7] Relatedly, the Settlement proposes a fair end effective method

_____

*Zestfinance, Inc.*, 18-05373 (W.D. Wa.); *Williams v. Red Stone Inc.*, 18-02747 (E.D. Pa.)).

[7] The Named Plaintiffs will also be asking for a service payments with the forthcoming fee petition. (Ex. 1 ¶¶ 40-41.) Their anticipated requested amounts are modest in comparison to the total recovery achieved, will be in recognition of the benefits achieved by the class, and consistent with awards in this District and public policy. *See e.g., Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08-CV-

of distributing settlement funds to Class Members, which will be done automatically

via U.S. Mail, without requiring Class Members to submit claim forms or other

paperwork. (Ex. 1 ¶ 59-60, Exs. C-D (notices).)

Fifth, the Settlement provides adequate relief for the Settlement Class. The

Gross Settlement Amount is $14,500,000. (Ex. 1 ¶¶ 22, 38.) This represents more

than 70% of the difference between the interest Settlement Class Members paid and

what they would have paid had Defendants charged only the maximum New Jersey

usury rate. (*See supra* at 7 (explaining that Settlement Class Members paid

$20,155,721.29 over the usury rate).) Even when viewing the total interest paid, i.e.,

the $31,095,143, and potential trebling, the amount achieved through the Settlement

is significant. As courts within the Third Circuit have explained, "[t]he

proposed settlement amount does not have to be dollar-for-dollar the equivalent of

the claim…. and a satisfactory settlement may only amount to a hundredth or even

a thousandth part of a single percent of the potential recovery." *In re: Shop-Vac*

*Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219, at *2 (M.D.

Pa. May 26, 2016) (internal citations and quotations omitted); *see Rudel Corp. v.*

*Heartland Payment Sys., Inc.*, No. 16-2229, 2017 WL 4422416, at *2 (D.N.J. Oct.

---

3610-CLW, 2015 WL 2383358, at *8–9 (D.N.J. May 18, 2015); *Bernhard*, 2009
WL 3233541, at *2 (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145
(E.D. Pa. 2000)) ("Courts routinely approve incentive awards to compensate named
plaintiffs for services they provided and the risks they incurred during the course of
class action litigation.").

4, 2017) (preliminarily approving settlement in case alleging improper fee charges where settlement fund was approximately 36% of defendant's revenue from improper fee charges); *In re PNC Fin. Services Grp., Inc.*, 440 F. Supp. 2d 421, 435-36 (W.D. Pa. 2006) (approving 12% of estimated losses because this "constitute[d] a very reasonable range of settlement when compared to the best possible recovery discounted by the attendant risks of proceeding to trial"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").[8]

Further, the Gross Settlement Amount will only be reduced for amounts awarded by the Court for attorneys' fees, Class Representative service payments (*see supra* at n. 7), litigation costs and settlement administration expenses (*see supra* at 13; Ex. 1 ¶ 25). As to attorneys' fees, Class Counsel anticipates requesting one-third of the Gross Settlement Amount. This percentage is typically awarded in this District. *See Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-00235-CCC, 2019 WL 4877563, at *6 (D.N.J. Oct. 3,

---

[8] What is more, if the requested fees, costs, administration expenses, and incentive awards are approved as requested, the average net per person recovery would be approximately $901. (Prakash Decl. ¶ 9.) This, too, supports approval. *See e.g., Inetianbor*, No. 13-cv-600066, Order of Final Approval and Judgment, ECF No. 326 (May 15, 2017) (where the gross fund from which fees, costs, expenses, and incentive awards were paid was approximately $14,417,810, but the total number of class member was approximately 26,774).

2019) (awarding one-third of gross class settlement as attorneys' fees); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-MD-2687-JLL-JAD, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (same). Moreover, any awarded fees will be paid at the same time that Settlement Class Members are paid and in proportion to the First and Second Installments, respectively. (Ex. 1 ¶ 41.) Class Counsel will fully brief their request for attorneys' fees with their forthcoming fee petition, which will be filed and posted on the Settlement Website at least 14 days prior to the objection and opt-out deadline. (*Id.* ¶¶ 49, 57.)

Finally, the Settlement provides meaningful non-monetary relief to stop third parties from collecting on the loans, take steps to stop negative credit reporting, and to keep Settlement Class Members' personal data from being sold. (*Id.* ¶ 37.) As such, this Settlement—particularly when compared to the percentage of recovery in Defendants' other class settlements challenging the interest rate on Western Sky loans—is well within the range of reasonableness. (Meeks Decl. ¶ 3.)

For all of these reasons, the Settlement is presumptively fair and the Court grant preliminary settlement approval.

**B.  The *Girsh* Factors Support Approval and Demonstrate that this Settlement Is Fair, Reasonable, and Adequate.**

Preliminary consideration of the *Girsh* factors also demonstrates that the Settlement is fair, reasonable, and adequate, and that obstacles to final approval are

23

unlikely.[9]

First, the complexity, expense, and likely duration of the litigation weigh in favor of approval. Plaintiff MacDonald filed this case in May of 2016, and this litigation is nearly four years old. (ECF No. 1.) Defendants have appealed or petitioned for appeal after each major case event—including a full-blown appeal with oral argument in the Third Circuit. (*See supra* at 3-7.) Moreover, Class Counsel has incurred nearly $70,000 in out-of-pocket costs (Prakash Decl. ¶ 9), and those costs would rise dramatically given that expert disclosures and discovery would be the next steps in this litigation had the parties not settled. *Udeen*, 2019 WL 4894568, at *3 ("The first *Girsh* factor supports preliminary approval because the potential costs of continued motion practice and trial in this case could be significant."). This, paired with Defendants' intent to move for summary judgment on their affirmative defense of res judicata and their ability and propensity to appeal, demonstrate that, absent the Settlement, the class may see no recovery for years. *Haas v. Burlington Cty.*, No. 08-1102-NHL-JS, 2019 WL 413530, at *6 (D.N.J. Jan. 31, 2019) (granting approval where plaintiffs estimate the time to judgment, including trial, would take another three years).

Second, fact discovery is complete and the case is thus at a stage where

---

[9] The factor that weighs the reaction of the class to settlement is best assessed after Settlement Class Members have received notice and an opportunity to object or exclude themselves.

counsel for both parties had an "adequate appreciation of the merits of the case before negotiating." *Id.* at \*6 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). This, too, supports approval.

Third, while Plaintiffs are confident in their ability to prevail on liability, establish damages, and maintain class certification through trial, they appreciate the unexpected nature and inherent risks of litigation. *See e.g.*, *CFPB v. CashCall, Inc.*, No. CV-15-07522-JFW-RAOx, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) (declining to order restitution). Notably, if the Ninth Circuit were to reverse the restitution order in the CFPB action was reversed and restitution for New Jersey borrowers was ordered, Plaintiffs' potential recovery could be significantly diminished and, regardless, CashCall would likely be unable to pay a full judgment in this action.

Fourth, Defendants have expressed uncertainty over whether they could withstand a large judgment. (Meeks Decl. ¶ 5.) WS Funding, LLC and Delbert Services, Corp. are no longer operational. (*Id.*) Defendant CashCall, Inc.'s business has rapidly shrunk in recent years. (*Id.* ) And, both CashCall and Defendant Reddam have yet to see what comes of the appeals in the CFPB litigation, where the government continues to seek an award of restitution. (*Id.*) In light of this, and Defendants ability and willingness to commit that the amount of this Settlement will be honored regardless of the outcome in the CFPB action (Ex. 1 ¶ 64), this factor

supports approval.

Finally, as discussed above, this settlement falls well within the range of reasonableness in light of the best possible recovery. This is underscored by the attendant risks of litigation, including Defendants' potential inability to withstand a greater judgment. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125-26 (D.N.J. 2002) (emphasizing defendants' inability to withstand a larger judgment as weighing in favor of reasonableness). For all of these reasons, the Court should grant preliminary settlement approval.

## III.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via first-class mail. (Ex. 1 ¶ 46.) This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Postcard Notice and Long Form Notice are also reasonable.

Both include, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) Settlement Class members' right to object or opt out of the settlement and the deadline for doing so; (5) the release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the amount of requested Class Representative compensation; (8) the date, time, and location of the final approval hearing; and (10) the website where the Long Form Notice of settlement will be posted. (Exs. C-D to Ex. 1.) These notices are reasonable as they "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement[.]" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

## IV.   THE COURT SHOULD MODIFY THE  EXISTING CLASS DEFINITIONS TO ACKNOWLEDGE A SINGLE SETTLEMENT CLASS, APPOINT THE NAMED PLAINTIFFS AS CLASS REPRESENTATIVES, APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVE THE PARTIES' AGREED UPON SETTLEMENT ADMINISTRATOR.

The Court previously certified a Four Year Class and a Six Year Class. (ECF No. 103.) All members of the Four Year Class are members of the Six Year Class. (*See supra* at 6, 8.) The Settlement Class, as agreed to by the parties, mirrors the Six Year Class. (*See id.*) Accordingly, the parties have reached a settlement on behalf of all class members. Plaintiffs now ask that, for the purpose of settlement, the Four and Six Year Classes be modified to acknowledge a single class, i.e., that those

27

classes be consolidated into a single Settlement Class.[10] For all of the reasons stated in Plaintiffs' briefs in support of class certification and this Court's opinion granting certification, certification remains sound. (*See* ECF Nos. 93-1, 97, 102.)

Similarly, the Court previously appointed Plaintiffs as Class Representative and Plaintiffs' Counsel as Class Counsel. (ECF Nos. 102-103.) They now respectfully request the same appointments as to the Settlement Class. As to the Plaintiffs, they were actively involved in decision making by phone during the February 10 mediation. (Prakash Decl. ¶¶ 5-7.) Even before mediation, both were active participants in litigation, meeting with counsel, engaging in time-consuming discovery, and sticking through this multi-year litigation with an eye towards the class. (*Id.*) Indeed, without the Plaintiffs, this action may never have been brought, sustained, or settlement achieved. As to Class Counsel, their adequacy has been demonstrated through their work in bringing this case, defeating a motion to dismiss, prevailing at the Third Circuit on a full-blown appeal, successfully navigating discovery, prevailing on a contested motion for class certification, defeating a petition to appeal the certification order, and successfully reaching a class-wide settlement. (*See supra* at 3-7; Prakash Decl. ¶ 3; *see also* February 8, 2019 Declaration of Anna P. Prakash in Support of Class Cert. ¶¶ 7-8 (discussing Class Counsel's experience) and Ex. Z (Nichols Kaster Firm Resume), ECF Nos. 93-3 and

---

[10] Defendants agree to certification for settlement purposes only.

28

93-26; February 8, 2019 Declaration of Matthew W.H. Wessler in Support of Class

Cert. ¶¶ 2-7, ECF No. 93-2; April 11, 2019 Declaration of Patricia A. Barasch in

Support of Class Cert. ¶¶ 2-7, ECF No. 97-5.)

Finally, the parties' chosen settlement administrator, Atticus Administration,

LLC, is more than capable of handling settlement administration in this case. (*See*

Declaration of Christopher Longley.) In fact, leadership at Atticus has administered

similar class action settlements, including settlements involving CashCall. (*See id*.)

Moreover, Class Counsel has worked with the administrator in previous settlements,

views their work favorably, and considers their costs competitive and reasonable.

(Prakash Decl. ¶ 10.)

For all of these reasons, as discussed in the Court's opinion granting class

certification and Plaintiffs' briefs in support, the Court should modify the existing

class definitions to acknowledge a single Settlement Class, appoint Plaintiffs as the

Settlement Class Representatives, appoint Plaintiffs' counsel as Settlement Class

Counsel, and appoint Atticus Administration, LLC the Settlement Administrator.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court

preliminarily approve the Settlement and enter the accompanying Preliminary

Approval Order.

Respectfully submitted,

Dated: March 12, 2020                    s/Patricia A. Barasch

**NICHOLS KASTER, PLLP**
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
Robert L. Schug, MN Bar No. 0387013*
Matthew H. Morgan, MN Bar No. 304657*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
aprakash@nka.com
bspecht@nka.com
schug@nka.com
morgan@nka.com

**GUPTA WESSLER PLLC**
Matthew Wessler*
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
matt@guptawessler.com

**SCHALL & BARASCH, LLC**
Patricia A. Barasch, NJ Bar No. 0055480
Moorestown Office Center
110 Marter Ave, Suite 302
Moorestown, NJ 08057
Telephone: (856) 914-9200
Facsimile: (856) 914-9420
pbarasch@schallandbarasch.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs John MacDonald, Jessica Spearman, and the Classes*

30