## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN S. MACDONALD and JESSICA C. SPEARMAN, | Civil Action No. 2:16-cv-02781-MCA-ESK |
| Plaintiffs, | Hearing Date: October 1, 2020 |
| v. | |
| CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORP.; and J. PAUL REDDAM, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENTS

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

The Court should award the service awards, attorneys' fees, and costs....................2

   I.  The Court should award the well-earned service awards to Plaintiffs............2

   II.  The requested attorneys' fees are appropriate and should be awarded ...........4

      A. A percentage-of-the-fund award is appropriate and reasonable ...............4

      B. The requested 33% fee in this case is reasonable......................................6

      C. A lodestar cross check confirms the requested fee is reasonable............13

   III. The requested costs, including administrative expenses, are reasonable and should be awarded...................................................................................16

CONCLUSION ....................................................................................19

i

# TABLE OF AUTHORITIES

## Cases

*Bodnar v. Bank of Am., N.A.*, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ...... 15-16

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................................5

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).........3

*Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626
(D.N.J. Oct. 23, 2017)..............................................................................8-10, 12-13

*Chemi v. Champion Mortg.*, 2009 WL 1470429 (D.N.J. May 26, 2009)...............17

*Demmick v. Cellco P'ship*, No. CV 06-2163 (JLL), 2015 WL 13646311
(D.N.J. May 1, 2015) ...................................................................................... 17-18

*Dominguez v. Galaxy Recycling Inc.*, 2017 WL 2495406 (D.N.J. June 9, 2017)
..................................................................................................................................3

*Flores v. Express Servs., Inc.*, 2017 WL 1177098
(E.D. Pa. Mar. 30, 2017).................................................................... 11-12, 16

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ...................... 5-6

*High Street Rehabilitation, LLC v. American Specialty Health Incorporated*,
2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ..........................................................15

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006) ...................................................14

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199
(E.D. Pa. 2014).......................................................................................................18

*In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003)........................8

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).................................................. 5-6

*In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000)..........................12

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) .................11, 17

*In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059 (D.N.J. Dec. 3, 2018)....................................................................................................8

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)......................................................................... 5-6

*In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361 (E.D. Pa. 2005)...............6

*In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..........................................................................................6, 12

*In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)....................15

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...................4-6, 14-15

*In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. May 31, 2012) ............................................................................16

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456 (D.N.J. June 15, 2020) ....................................................................................... 15-16

*In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815 (3d Cir. 2010) ...........14

*Johnson v. Cmty. Bank, N.A.*, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013).........11

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563 (D.N.J. Oct. 3, 2019) ..................................... 7-10, 12

*Manuel v. Wells Fargo Nat'l Ass'n*, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) .....................................................................................................4

*Schuler v. Medicines Co.*, 2016 WL 3457218 (D.N.J. June 24, 2016)....................14

*Stevens v. SEI Investments Co.*, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020)..........15

*Turner v. ZestFinance, Inc.*, No. 19-293, Dkt. # 115 (July 9, 2020)......................12

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005).....................3

iii

## <u>Other</u>

4 Newberg on Class Actions § 11.38 .........................................................................4

4 Newberg on Class Actions § 14.7 .......................................................................15

*Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108
F.R.D. 237 (Oct. 8, 1985) ........................................................................................5

iv

## **INTRODUCTION**

After nearly four years of hard-fought litigation—including one full-blown appeal to the Third Circuit, dispositive motions practice covering a host of unresolved legal issues, completed fact discovery, and a thoroughly opposed decision certifying the class—the parties reached a global settlement in this class action challenging the interest rates charged to New Jersey borrowers who obtained and made payments on Western Sky loans. The parties' settlement—which this Court preliminarily approved on July 1, 2020—resolves the dispute by, among other things, requiring Defendants to pay a gross settlement amount of $14,500,000 into a common fund for the benefit of the class of New Jersey borrowers—a class that numbers more than 10,000. This recovery represents more than 70% of the interest paid over New Jersey's legal rate and, on average, will put approximately $900 directly back into class members' pockets. The settlement also includes significant non-monetary relief by requiring the Defendants: to inform any third parties who may have purchased the loans that the loans are cancelled and disputed, to contact all credit bureaus to request removal of any negative credit reporting by Defendants regarding the loans at issue, and to refrain from selling class members' personal data.

Given the value of this relief to the class and the uncertain nature and complexity of this contingent litigation, this Court should approve the request for $4,833,333.33 in attorneys' fees, $61,600.15 in costs, $46,745 in settlement

1

administration expenses, and $10,000 service awards to each of the Named Plaintiffs, to be paid from the gross settlement amount. As explained below, the awards fall comfortably in line with awards in similar cases and are fully consistent with the benchmarks set by the Third Circuit.[1]

## **ARGUMENT**

**The Court should award the service awards, attorneys' fees, and costs.**

The global settlement in this case was negotiated at arm's length by experienced counsel after sufficient discovery, the Named Plaintiffs as Class Representatives adequately represented the settlement class, and the relief provided for the class is fair and equitable to all settlement class members. As such, this Court will be able to approve the proposal under Federal Rule of Civil Procedure 23(e)(2) as well as the Third Circuit's factors, and should grant final approval.

### I.   The Court should award the well-earned service awards to Plaintiffs.

Plaintiffs request a modest award of $10,000 to each of the two Named Plaintiffs for their participation in litigating and settling this action and service to the

---

[1] Because the settlement agreement requires that Class Counsel file their fee petition at least fourteen days before the Opt-Out and Objection Deadline, this brief is being filed separately from the brief in support of final approval of the settlement. Plaintiffs will file their motion for final settlement approval on or before September 14, 2020. A proposed order as to both the fee petition and final approval is attached to the parties' settlement agreement as Exhibit B (ECF No. 112-5), and Plaintiffs will provide the Court the same order with placeholders filled in with their final approval brief on September 14.

class. The requested amounts were disclosed in the class notices. Declaration of Anna P. Prakash ("Prakash Decl.") ¶ 42; *see also* Notices, ECF Nos. 112-6, 112-7. In this case, Plaintiffs put their reputations on the line to assist with a nationwide lawsuit to combat predatory lending across the state. They understood their roles as representatives of the class as a whole and were answerable to counsel in prosecuting the case. Prakash Decl. ¶¶ 38-41. They were both deposed, as was Plaintiff MacDonald's ex-wife, and they both met with counsel multiple times and attended the settlement conference and were available throughout and engaged in mediation. *Id*. Each Plaintiff also responded to written discovery. *Id*. They undertook time-consuming searches for documents in response to discovery requests in this litigation, including searching for personal emails and financial records, and provided information for and reviewed discovery responses. *Id*. Throughout the course of their involvement, the Plaintiffs have remained concerned with the welfare of the class, including during mediation. *Id.*

Awards in the requested amount are reasonable and have been recognized by this District as "eminently appropriate." *Dominguez v. Galaxy Recycling Inc.*, 2017 WL 2495406, at *9 (D.N.J. June 9, 2017) (approving $10,000 service award from common fund); *see also Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22-23 (D.N.J. Apr. 8, 2011) (same); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257-58 (D.N.J. 2005) (same). And that is particularly true in the

consumer-protection setting, where courts have routinely approved similar service awards. *Manuel v. Wells Fargo Nat'l Ass'n*., 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016). The modest amount requested in this case, therefore, is appropriate and reasonable. *See generally 4 Newberg on Class Actions* § 11.38, at 11–80 (noting empirical data demonstrating that average service award is $16,000).

Given that, to date, there have been no objections to or comments regarding the Service Awards, and the Named Plaintiffs properly earned them through their participation in the case, the Court should approve the award.[2]

## II.   The requested attorneys' fees are appropriate and should be awarded.

Class Counsel seek an award for attorneys' fees, costs, including settlement administration expenses, to be paid from the Gross Settlement Amount. The requested amounts in this case—which involved four hard-fought years of litigation that included multiple mediations and a full-blown appeal raising complex arbitration issues to the Third Circuit—are both appropriate and reasonable.

### A. A percentage-of-the-fund award is appropriate and reasonable.

It is the Third Circuit's settled rule that, for cases that produce a common fund, "the percentage of common fund approach is the proper method of awarding attorneys' fees." *In re Rite Aid Corp. Sec. Litig.* ("*Rite Aid I*"), 396 F.3d 294, 306

---

[2] To the extent any class members raise objections after this brief has been filed, Class Counsel will address them in their final approval brief.

(3d Cir. 2005); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79 (1980) (noting that the Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund). As the Third Circuit has explained, the reason this approach is "generally favored" in cases like this one is because "it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Rite Aid I,*  396 F.3d at 300; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (confirming the appropriateness of this approach unless "the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation").

As a guide for determining whether a requested fee is reasonable, the Third Circuit has also set out ten relevant factors that "a district court must consider." *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009). Known as the *Gunter* and *Prudential* factors, they include:

> "(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and

duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases...(8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement."

*Id.* (citing G*unter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)); *see also Prudential*, 148 F.3d at 333-342. A district court must give "thorough consideration to each of the factors," *Diet Drugs*, 582 F.3d at 541, but they "need not be applied in a formulaic way" and even "one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

### B. The requested 33% fee in this case is reasonable.

These factors here, all weigh in favor of the reasonableness of the requested fee of $4,833,333.33, which is one third of the gross settlement amount. *See Rite Aid I*, 396 F.3d at 303–07; *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *44 (D.N.J. Nov. 9, 2005); (noting that a review of 289 settlements produced an "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *11 (E.D. Pa. 2005) (noting that "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses").

For starters, the size of the fund created and the number of borrowers it will benefit is substantial. The settlement requires the defendants to pay $14.5 million

6

into a common fund for a class of 10,588 New Jersey borrowers who were assessed usurious interest rates for loans they obtained from the defendants.[3] Prakash Decl. ¶ 43. This recovery represents more than 70% of the interest the class paid over New Jersey's legal limit. *Id.* In real dollars, if the requested fees, costs, administration expenses, and incentive awards are approved, this settlement will put an average of about $900 back into the pockets of each class member.[4] *Id.* The settlement also includes substantial non-monetary relief: As part of the settlement, Defendants must inform any third parties who may have purchased the loans that the loans are cancelled and the consumers' debt amounts are disputed, contact all credit bureaus to request removal of any negative credit reporting by Defendants regarding the loans at issue, and refrain from selling class members' personal data. Settlement Agreement, ¶ 37, ECF No. 112-3.

Courts within this Circuit have consistently held that a fund this size "weighs in favor of approval" of a 33% fee request. *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *6 (D.N.J. Oct.

---

[3] The preliminary approval motion states there are 10,574 class members. In the course of preparing for settlement notice mailing, Defendant located 14 additional class members. Prakash Decl. ¶ 43.

[4] The Settlement Agreement provides for payment of any approved attorney's fees in two installments, with each payment made at the same time and in the same proportion as the settlement checks to class members. Settlement Agreement, ¶ 41, ECF No. 112-3.

3, 2019) (approving a 33% fee of a $21.9 million fund); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (same, for a $10.7 million common fund); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *8 (D.N.J. Oct. 23, 2017) (same, for a $61.5 million fund); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 495-98 (E.D. Pa. 2003) (same, for $7 million settlement fund). The same goes for the number of class members who will benefit. *In re Liquid Aluminum,* 2018 WL 7108059, at *2 (noting class size of around 10,000).

The second factor also weighs in favor of the requested fee. The requested fee was disclosed in the class notices. Prakash Decl. ¶ 42; *see* Notices, ECF Nos. 112-6, 112-7. And, to date, Class Counsel have not been advised of any objections and do not anticipate that any member of the class will raise any meaningful objection to either the settlement terms or the requested fee. *See, e.g.*, *Lincoln Adventures*, 2019 WL 4877563, at *7 (noting that a "lack of any objections strongly supports approval").

The third factor—the skill and efficiency of the lawyers involved—likewise supports the requested fee. Class Counsel's skill and efficiency is "'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Castro*, 2017 WL 4776626, at *8.  In addition, "'[t]he

8

quality and vigor of opposing counsel' is relevant when evaluating the quality" of class counsel. *Id.*

Class Counsel in this case are experienced in litigating and settling class actions. Indeed, the firms involved in this case are preeminent plaintiff-side firms, with nationwide practices and extensive experience in class and multi-plaintiff litigation. Prakash Decl. ¶¶ 4-18; Wessler Decl. ¶¶ 3-8. Counsel in this case has represented hundreds of thousands of employees and consumers across the country and regularly take on cases of this size. Prakash Decl. ¶¶ 4-18; Wessler Decl. ¶¶ 5-8. They have extensive experience in both consumer-protection and RICO litigation, Prakash Decl. ¶¶ 4-18; Wessler Decl. ¶¶ 5-8, and have been actively involved in many cases involving the payday lending industry. Wessler Decl. ¶¶ 5-7. In the past four years, counsel in this case successfully argued and won five major decisions involving tribal lenders in the Third and Fourth Circuits and has settled multiple illegal lending cases against tribal lenders. *Id*. In this case, Class Counsel defeated a motion to dismiss, a motion to compel arbitration, a petition to appeal this Court's class certification decision, and a full appeal to the Third Circuit despite vigorous representation on behalf of Defendants by counsel from a prominent, national firm. *See* Prakash Decl. ¶¶ 19-27; Wessler Decl. ¶ 10; *Lincoln Adventures*, 2019 WL 4877563, at *7 (noting that a "favorable settlement negotiated by class counsel under these conditions is 'the clearest reflection of counsel's skill and evidence of

Plaintiffs' Counsel's hard work and sustained efforts'").

The fourth factor, too, weighs in favor of approval. This case has been litigated for almost four years and involved both completed fact discovery and multiple rounds of dispositive briefing, including a motion to dismiss, a motion to compel arbitration, and a motion to certify the class. It also involved both a petition to appeal this Court's class certification order in the Third Circuit and a full-blown appeal (and oral argument) to the Third Circuit of this Court's order denying the defendants' motion to compel arbitration that resulted in a precedential opinion affirming this Court's decision. *See* Mem. ISO Prelim Approval at 3-7, ECF No. 112-1 The case also raised a host of uncertain legal issues, including difficult choice-of-law, claim preclusion, and arbitration questions that, until this case, "had not yet been formally adopted by the courts." *Castro*, 2017 WL 4776626, at *9. In addition, the parties reached the settlement agreement after mediation and extensive settlement negotiations. *See Lincoln Adventures*, 2019 WL 4877563, at *7.

The fifth factor—risk of nonpayment—also weighs in favor of approval. Class Counsel undertook this action entirely on a contingent fee basis, assuming a substantial risk that they "'would have to devote a significant amount of time and incur substantial expenses without any assurance of compensation for all their hard work and efforts.'" *Id.* at *7. As this Court has recognized, "[c]ourts recognize the risk of non-payment as a major factor in considering an award of attorney[s'] fees."

10

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012). Given the existing unresolved (and potentially outcome determinative) issues in the case, *see* Mem. ISO Prelim. Approval at 25-26, ECF No. 112-1,  Class Counsel's years-long decision to invest substantial effort and resources to obtain this favorable settlement strongly supports the requested fee in this case. *See* Prakash Decl. ¶¶ 28-37.

The amount of time class counsel devoted to this case—the sixth factor—also supports approval. Through mid-August 2020, class counsel devoted more than 2,275 hours of contingent work on this case, totaling an aggregate lodestar of $1,116,710.50. *See id.* ¶¶  28-29, 32 n.1; Wessler Decl. ¶ 12. Courts in this Circuit have frequently recognized that similar amounts to time expended support an award of a 33% fee. *Flores v. Express Servs., Inc.*, 2017 WL 1177098, at *3 (E.D. Pa. Mar. 30, 2017) (approving one-third fee in consumer-protection settlement where a total of 677.5 hours of work was performed "over the course of 32 months"); *Johnson v. Cmty. Bank, N.A.*, 2013 WL 6185607, at *8 (M.D. Pa. Nov. 25, 2013) (approving one-third fee in consumer class action where hours worked totaled 591.90).

Awards in similar cases also support the requested fee award here. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 122-23 (comparing the actual award requested to other awards in comparable settlements and ensuring that the award is consistent with what an attorney would have received if the fee were negotiated on the open market). As discussed above, a review of similar cases involving a range

of common funds in this Circuit demonstrates that "awards of one third the amount of the settlement fund are considered reasonable." *Lincoln Adventures,* 2019 WL 4877563, at *8; *see also Castro*, 2017 WL 4776626, at *9 (noting that a "one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method"). And that is particularly true for the kind of complex consumer-protection litigation at issue in this case. *See, e.g.*, *Flores*, 2017 WL 1177098, at *3  (noting that a one-third fee award is "within the range" of awards "granted in similar class action settlements" and approving such a fee in credit-reporting case where total common fund was $5.75 million). In fact, other recently settled litigation against similar tribal lending entities has resulted in an award of exactly one-third of the settlement fund amount. *See, e.g.*, *Turner v. ZestFinance, Inc.*, No. 19-293, Dkt. # 115 (July 9, 2020) (awarding one-third fee from $6,146,660 common fund in tribal payday lending settlement and noting that such an award is both "reasonable and appropriate").

In addition, the requested fee is consistent with a privately negotiated contingent fee in the marketplace for comparable litigation. That is because attorneys "regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Remeron*, 2005 WL 3008808, at *16; *see also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

The value of benefits attributable to the efforts of class counsel relative to the

12

efforts of other groups likewise weighs in favor of the requested award. This case was investigated and brought entirely by private counsel and grosses more than 70% of all illegal interest paid by New Jersey consumers. Prakash Decl. ¶ 43 (further noting that those New Jersey class members will receive $900 on average, with maximum recoveries expected to be in the five figures). And, although the Consumer Financial Protection Bureau initiated an enforcement action against Defendants, that action has not led to any relief for New Jersey consumers, and Defendants have agreed to fund this settlement regardless of the ultimate outcome in the enforcement action. *See* Memo ISO Prelim Approval at 25-26, ECF No. 112-1.

Finally, although this settlement includes standard terms, it also includes a requirement that Defendants agree not to sell any class members' personal data, to inform any third parties who may have purchased the loans that the loans are cancelled and that the consumers debt amounts are disputed, and to contact all credit bureaus to request removal of any negative credit reporting by Defendants regarding the loans at issue. These features of the settlement hold "real value" because it means that class members no longer need to worry about future collection efforts. *Castro*, 2017 WL 4776626, at *9.

### C. A lodestar cross check confirms the requested fee is reasonable.

The lodestar cross-check here confirms the reasonableness of the fee requested. The lodestar crosscheck "is performed by dividing the proposed fee award

13

by the lodestar calculation, resulting in a lodestar multiplier." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). In this context, the Third Circuit has instructed courts to undertake an "abridged lodestar analysis," which involves "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid I*, 396 F.3d at 305. This cross-check requires neither "mathematical precision nor bean-counting" and "does not trump the primary reliance on the percentage of common fund method." *Id.* at 306-07 (instructing district courts that they "may rely on summaries submitted by the attorneys and need not review actual billing records"). Instead, it serves only to ensure that the requested fee is reasonable. *Id.*

Because "[t]he multiplier is a device that attempts to account for the contingent nature of risk involved in a particular case and the quality of the attorneys' work," *Rite Aid I*, 396 F.3d at 305-06, it "'need not fall within any pre-defined range." *Schuler v. Medicines Co.*, 2016 WL 3457218, at *10 (D.N.J. June 24, 2016). However, the Third Circuit has recognized that percentage awards that result in multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010). But although multipliers of one to four "are a common baseline, courts in the Third Circuit recognize that larger settlements

14

or earlier settlements can—and often do—produce higher multipliers." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *15 (D.N.J. June 15, 2020); *see, e.g.*, *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16 and stating "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis"); *Bodnar v. Bank of Am., N.A.*, 2016 WL 4582084, at *5-*6 (E.D. Pa. Aug. 4, 2016) (approving 33% fee and finding 4.69 multiplier was "appropriate and reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving fee award "with a 6.96 multiplier"); *see also 4 Newberg on Class Actions* § 14.7 (noting that courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher).

Here, class counsels' lodestar totals $1,116,710.50, which reflects more than 2,275 hours of professional time during a period of more than four years and produces a lodestar multiplier of 4.33.[5] That falls well within the range of similar

---

[5] Class counsel's hourly rates are reasonable for this Circuit and in complex, class action litigation. *See* Prakash Decl. ¶¶ 28 (timekeeper summary with rates), 29, 32 n.1; Wessler Decl. ¶ 12 (timekeeper summary with rates); *High Street Rehab., LLC v. Am. Specialty Health Incorporated*, 2019 WL 4140784, at *14 (E.D. Pa. Aug. 29, 2019) (approving rates up to $1,095 as "well within the range of what is reasonable and appropriate in this market" for complex class actions). Consistent with the Third Circuit's approach, Class Counsel have provided a summary of hours worked to support the lodestar cross-check. *See Rite Aid I*, 396 F.3d at 306-07. Although courts in this Circuit do not typically "review actual billing records," *id.* at *13, Class Counsel can provide them upon request.

multipliers in cases in this Circuit where counsel took the case on a contingent basis, faced the risk of nonrecovery, and obtained a significant recovery for class members in the face of substantial opposition by highly motivated and well-funded defendants. *See Valeant*, 2020 WL 3166456, at *15 (approving 4.4 multiplier); *Bodnar*, 2016 WL 4582084, at *5 (approving 4.69 multiplier); *Flores*, 2017 WL 1177098, at *4 (approving 4.6 multiplier). Particularly in light of the result achieved, the requested fee of $4,833,333.33 is a reasonable, appropriate award for this case. Notably here, the class was made aware of the proposed fee award through notice and there have been no objections to date. Prakash Decl. ¶ 42.

### III.   The requested costs, including administrative expenses, are reasonable and should be awarded.

Class Counsel has requests the $61,600.15 in unreimbursed expenses they have incurred in prosecuting this case, and the $46,745 they will incur to pay settlement administration expenses. Prakash Decl. ¶¶ 33-37; Wessler Decl. ¶ 13. The notices distributed to the class informed them that Class Counsel would seek approximately $70,000 in costs,  as well as the $46,750 in administration expenses, both more than that now sought. Prakash Decl. ¶ 42; *see* Notices, ECF Nos. 112-6, 112-7.

As to the $61,600.15 in litigation costs, "[t]his type of reimbursement has been expressly approved by the Third Circuit," *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *8 (D.N.J. May 31, 2012), and covers all "costs

16

expended for the purposes of litigating this action, including fees for experts, costs associated with creating and maintaining electronic document databases, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 125 (D.N.J. 2012) (awarding costs that were "reasonably and appropriately incurred during the prosecution of this case based on the summaries provided"); *see also Demmick v. Cellco P'ship*, No. CV 06-2163 (JLL), 2015 WL 13646311, at *5 (D.N.J. May 1, 2015) (noting that "[c]ourts in this district have found that travel and lodging for court or deposition appearances, reasonable photocopying expenses, telephone and facsimile charges, postal, messenger and express mail service charges, witness and expert fees, computer-assisted research fees, filing fees, deposition and trial transcript fees, and other expenses are incidental to and reasonably incurred in connection with litigation and thus recoverable"); *Chemi v. Champion Mortg.*, 2009 WL 1470429, at *13 (D.N.J. May 26, 2009) (same and awarding costs based on "the summary of expenses attached to the affidavit's filed by Plaintiffs in support of their request for expenses" which "is sufficient to satisfy the Court that the expenses requested by Plaintiffs' counsel are reasonable"). Here, because all the requested costs were reasonably incurred for purposes of prosecuting this litigation, the requested amount should be awarded.

Similarly, settlement administration costs are reasonable and should be

approved. Consistent with this Court's preliminary approval order, Atticus Administration, LLC has been administering the settlement in this matter. Prakash Decl. ¶ 37. Atticus' expected bill for administering this settlement is $46,745, a bill which will be borne by Class Counsel for expenses incurred regardless of whether the settlement itself is ultimately approved. Notably, the amount is a negotiated price resulting from significant discounts given in order to match a bid from another respected settlement administration company. Prakash Decl. ¶ 37. Among other things, Atticus has or will oversee and execute: preparation of notices, address updates, and first class postage; project management; preparing and sending CAFA notice; remailing; telephone support; website; and distribution of settlement proceeds through two rounds of check-mailing. *Id.* Settlement administration costs such as these are routinely approved and should be approved here. *See e.g.*, *Demmick*, 2015 WL 13646311, at *1 (finding fees and expenses of settlement administrator "reasonable and necessary in order to disseminate class notice and perform settlement administration services"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 225 (E.D. Pa. 2014) (approving fees for notice and claims administration). *See also* Prakash Decl. ¶ 37 (noting the competitive nature of the price negotiated for the class).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the requested fees, costs, including administrative expenses, and service awards, and enter the order that will be submitted with Plaintiffs' forthcoming motion for final settlement approval.

Dated: August 21, 2020          Respectfully submitted,

s/Patricia A. Barasch

**NICHOLS KASTER, PLLP**
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
Robert L. Schug, MN Bar No. 0387013*
Matthew H. Morgan, MN Bar No. 304657*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
aprakash@nka.com
bspecht@nka.com
schug@nka.com
morgan@nka.com

**GUPTA WESSLER PLLC**
Matthew Wessler*
1700 L Street, NW, Suite 312
Washington, DC 20036
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
matt@guptawessler.com

**SCHALL & BARASCH, LLC**
Patricia A. Barasch, NJ Bar No. 0055480
Moorestown Office Center

19

110 Marter Ave, Suite 105
Moorestown, NJ 08057
Telephone: (856) 914-9200
Facsimile: (856) 914-9420
pbarasch@schallandbarasch.com

\* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs John MacDonald, Jessica Spearman, and the Settlement Class*

20