# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN S. MACDONALD and JESSICA C. SPEARMAN, | Civil Action No. 2:16-cv-02781-MCA-ESK |
| Plaintiffs, | Hearing Date: October 1, 2020 |
| v. | |
| CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORP.; and J. PAUL REDDAM, | |
| Defendants. | |

**Declaration of Anna P. Prakash in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Payments**

1. My name is Anna P. Prakash. I am an attorney at Nichols Kaster, PLLP, and I am one of the Class Counsel in this matter. I submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Payments.

2. This declaration summarizes my experience and qualifications, as well as that of my firm and partners who worked on this case (*see infra* ¶¶ 4-18); the work my firm has performed in this matter (*see infra* ¶¶ 19-27); our fees and costs (*see infra* ¶¶ 28-36); settlement administration expenses (*see infra* ¶ 37); the work of the Named Plaintiffs (*see infra* ¶¶ 38-41); and the lack of objections to the requested

1

fee, cost, and service awards to date, notice, and class member recovery (*see infra* ¶¶ 42-43).

3. I intend to submit an additional declaration on September 14, 2020, in support of final approval of the parties' settlement.

### Class Counsel's Experience and Qualifications

4. Nichols Kaster has been engaged in the practice of law for over 40 years, and is devoted to plaintiff-side litigation, representing the interests of both consumers and employees. The firm has offices in Minneapolis and San Francisco, and currently employs 37 attorneys and 41 staff members, including paralegals, legal assistants, class action clerks, and information technology professionals. A copy of Nichols Kaster's law firm resume was submitted with my prior declaration in support of preliminary settlement approval. (ECF No. 93-26.)

5. Nichols Kaster has extensive class action and collective action experience. The firm has been appointed lead counsel or co-counsel on hundreds of class and collective actions, and has recovered significant sums for its clients over the years.

6. Nichols Kaster was named one of the top 50 elite trial firms by National Law Journal in September 2014. U.S. News & World Report has continued to name Nichols Kaster as a Best Law Firm and honored individual lawyers at the Firm as Best Lawyers consecutively since 2012. Law360 has listed Nichols Kaster as a top

plaintiffs' employment law firm, and Minnesota Lawyer has declared it one of Minnesota's top 100 firms. In 2020, the National Trial Lawyers and ALM named Nichols Kaster, PLLP the Employment Rights Law Firm of The Year. Nichols Kaster has received praise from numerous courts for its work.

7. The firm's lawyers have litigated dozens of cases through trial and have managed discovery in cases involving millions of pages of documents. The firm is also well regarded for its appellate work. *See e.g.*, *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) and *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2010).

8. I graduated from Cornell Law School in Ithaca, New York, in 2005, and after working for the state and federal governments, I joined Nichols Kaster, PLLP in March of 2009. I became a partner at the firm in 2016. I am admitted to the United States Supreme Court, Minnesota Supreme Court, United States Court of Appeals for the Fourth Circuit, United States Court of Appeals for the Sixth Circuit, United States Court of Appeals for the Seventh Circuit, United States Court of Appeals for the Eighth Circuit, United States Court of Appeals for the Ninth Circuit, United States District Court for the Northern District of Florida, United States District Court for the District of Minnesota, United States District Court for the Eastern District of Michigan, United States District Court for the Eastern District of Wisconsin, United States District Court for the

3

Western District of New York, and United States District Court for the District of Colorado.

9. I am one of the partners in the firm's Civil Rights and Impact Litigation practice group. My practice focuses on complex class actions on behalf of protected groups and those harmed by corporate or governmental wrongdoing. Over the course of my time at the firm, I have led the firm's National Consumer Class Action practice group, been a member of the firm's National Wage & Hour practice group, authored and argued class and individual appeals at the state and federal level, and worked consistently to pursue just causes and obtain meaningful relief on behalf of thousands of employees and consumers across the country under federal and state employment and consumer protection laws.

10. I have extensive class action experience. As one example, I was lead counsel for the plaintiff and argued the successful appeal in *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015), reh'g en banc denied, 807 F.3d 839 (7th Cir. 2015), cert. denied, 136 S. Ct. 1607 (2016). In that case, my client challenged the loan practices of a student loan guaranty agency under a breach of contract theory, as well as RICO. The case eventually settled on a class-wide basis in the eight-figure range. As another example, I represented a class of more than 2,000 exotic dancers successfully through all stages of a seven-year litigation leading up to trial and prevailed on affirmative summary judgment as to damages in excess

4

of $10 million. *See Hart v. Rick's Cabaret Int'l, Inc.,* 60 F. Supp. 3d 447 (S.D.N.Y. 2014) (granting plaintiffs' affirmative motion for summary judgment on damages, holding that no reasonable jury could conclude that the Rule 23 class of approximately 2,200 were owed less than $10.8 million dollars, holding that defendants violated New York Labor Law, and denying decertification of the Rule 23 class and FLSA collective). I was also part of the trial team in *Monroe v. FTS USA, LLC, et al.*, Court File No. 08-cv-02100 (W.D. Tenn.), a collective action that was tried in 2011 and resulted in a verdict for plaintiffs, affirmed on appeal by the Sixth Circuit Court of Appeals in 2017, and denied *certiorari* by the United States Supreme Court in 2018.

11. I have been named to the Rising Star List by *Super Lawyers* each year since 2013, named to the Top Women Attorneys in Minnesota List each year since 2016, named to Lawdragon 500 Leading Plaintiff Employment Lawyers list in 2018 and 2019, and to Best Lawyers in 2020. I regularly speak on consumer and class or collective litigation issues at continuing legal education seminars around the country, am an active member in plaintiff-side organizations with missions that include advancing the rights of consumers, and have been an adjunct professor of legal writing at the University of Minnesota Law School since 2017.

12. I shared responsibility for the prosecution of this action with Robert L. Schug, Brock J. Specht, and Matthew H. Morgan.

13. Mr. Schug is a partner with Nichols Kaster. He graduated *summa cum laude* from William Mitchell College of Law in 2006, and *summa cum laude* from Middle Tennessee State University in 2003. He became licensed to practice in Minnesota in 2006 and California in 2007.

14. Mr. Schug has spent the majority of his career with Nichols Kaster litigating complex wage and hour and discrimination class actions. He has also served as Director of Litigation at the Impact Fund, a nationally-recognized non-profit law firm in Berkeley, California, devoted to achieving social justice through large scale impact litigation. He is currently a member of the Impact Fund's Board of Directors and Grant Advisory Committee.

15. Mr. Schug has extensive experience litigating class actions. Representative cases include: *Harris v. Union Pacific Railroad Co.*, No. 16-381 (D. Neb.) (disability discrimination); *Bell v. Mich. Civ. Serv. Comm'n*, No. 17-003861 (Mich. Cir. Ct., Wayne Cty.) (race discrimination); *Ellis v. Costco Wholesale Corp.*, No. 04-3341 (N.D. Cal.) (gender discrimination); *Kennett v. Bayada Home Health Care, Inc.*, No. 14-02005 (D. Colo.) (worker misclassification); *Sliger v. Prospect Mortgage, LLC*, No. 11-465 (E.D. Cal.) (worker misclassification); *Bollinger v. Residential Capital, LLC*, No. 10-1123 (W.D. Wash) (worker misclassification); *Ruggles v. WellPoint, Inc.*, No. 08-cv-00201 (N.D.N.Y.) (worker misclassification); *Lyons v. Ameriprise Financial, Inc.*, No. 10-503 (D. Minn.) (unpaid wages). Mr.

Schug is a frequent speaker and presenter at national and local continuing legal education programs on a range of topics. He has recently spoken on disability discrimination class actions, the use of Rule 30(b)(6) depositions in class actions, the intersection of civil rights and consumer protect laws, and e-discovery. Mr. Schug has been named to the "Rising Stars" List by *Super Lawyers* (formerly by *Law & Politics*) for both Minnesota and Northern California.

16.   Brock J. Specht is a partner at the firm and represents consumers, employees, and retirees in lawsuits against some of the country's largest corporations. This experience includes successfully representing clients in complex multimillion-dollar lawsuits in numerous federal courts across the country, in private arbitration, and before administrative agencies. Mr. Specht also has significant appellate experience arguing cases in both state and federal courts of appeals. Before joining Nichols Kaster, Mr. Specht practiced with a major Twin Cities law firm for several years, representing both individuals and major corporations in nationwide litigation involving a wide variety of substantive areas of law. Many of his cases have resolved through the payments of tens or hundreds of millions of dollars in settlements or awards. Mr. Specht's *pro bono* practice includes multiple appointments as a Special Assistant State Public Defender representing clients before the Minnesota Court of Appeals. Before entering private practice, Mr. Specht clerked for Judges Christopher J.

Dietzen and Bruce D. Willis at the Minnesota Court of Appeals. He has also served as an Adjunct Professor of Law at the University of St. Thomas School of Law, teaching appellate brief writing and coaching several successful moot court teams. Mr. Specht was named a Rising Star by Super Lawyers from 2016-2018, and a Super Lawyer in 2019 and 2020. He is a 2002 graduate of the University of Minnesota and a 2007 graduate of the University of St. Thomas School of Law.

17. Matthew H. Morgan is one of the firm's managing partners, leads the firm's Civil Rights and Impact Litigation team, and is a Minnesota State Bar Association Certified Civil Trial Law Specialist. He focuses on class and collective actions challenging discrimination, fraud or other unfair business practices in the areas of employment, consumer, housing, insurance, government contracts, health care and the environment. He has tried over 30 cases to verdict, and regularly speaks on topics related to civil litigation and trial. Mr. Morgan has been recognized as a Super Lawyer every year since 2014, and has been named to the Who's Who in Employment Law by Minnesota Law and Politics. He formerly served as an adjunct faculty member at William Mitchell College of Law (now Mitchell Hamline) teaching representation skills to first-year students and advanced advocacy to second- and third-year students. He is a member of the Minnesota State Bar Association's Civil Litigation Section's Governing Council and is a

frequent lecturer at legal seminars, focusing on litigation-related topics including trials and taking 30(b)(6) depositions. Mr. Morgan is a 1996 graduate of the University of Minnesota and a 2000 graduate of William Mitchell College of Law.

18. I understand that co-counsel at Gupta Wessler is submitting a separate declaration regarding experience, qualifications, and work on this matter. (*See also* Declaration of Patricia Barasch, ECF No. 97-5) (filed at class certification and discussing Ms. Barasch's experience and qualifications).

## Class Counsel's Work in this Litigation

19. My firm has steadfastly worked on this class action for more than four years. We began investigating this case well before it was filed, engaging in extensive factual and legal research, as well as meeting with Plaintiff MacDonald and consulting with co-counsel. We drafted, revised, and filed a detailed 25-page complaint, alleging various causes of action, including under the New Jersey Consumer Fraud Act, Racketeer Influenced Corrupt Organizations Act, and usury.

20. We successfully defended against Defendant's motion to compel arbitration or dismiss through briefing to this Court and assisted co-counsel in doing the same in response to Defendant's appeal to the Third Circuit.

21. When the case returned to this Court, we amended the complaint to add Plaintiff Spearman and then began the discovery process.

22. Discovery was hard-fought. My firm managed and ran the discovery

process on Plaintiffs' side, serving and responding to document requests and interrogatories, engaging in document review of well over 16,000 produced documents, defending both Plaintiffs' depositions, as well as the deposition of Mr. MacDonald's ex-wife, and deposing Defendant CashCall through its designated representative, as well as Defendant Reddam and Defendant's Chief Financial Officer. My firm researched liability and damages issues in this case and aimed discovery at both those issues, as well as certification. The parties pushed their arguments hard and took several disputes to Magistrate Judge Wettre. We attended mediation in November of 2018 with Magistrate Judge Wettre; however, the case did not settle.

23. My firm also took the lead in researching and drafting Plaintiffs' Motion for Class Certification. The Court granted Class Certification on October 31, 2019. We assisted co-counsel in responding to Defendant's 23(f) petition, which was denied in early 2020.

24. Through the case, we consulted and worked with an expert on strategy pertaining to damages and in preparation for expert disclosures that would have occurred had the case not settled.

25. Throughout the course of this case and leading up to the final mediation, my firm continued to evaluate strategy on a regular basis and analyze relevant developments in other litigation that could impact this case.

26. The parties attended a private mediation with retired Judge Layn Phillips on February 10, 2020. I attended, along with co-counsel from my firm. Other co-counsel and the Named Plaintiffs participated by phone at times throughout the day. The mediation ran the entire day and resulted in settlement.

27. Following mediation, my firm drafted and finalized the settlement agreement and exhibits, as well as papers in support of preliminary settlement approval, communicated with defense counsel and the settlement administrator regarding settlement tasks, and has been working towards final approval, including by working on related motion papers.

## Class Counsel's Fees and Costs

28. The work summarized above required the efforts of numerous attorneys and professional staff at Nichols Kaster. It is Nichols Kaster's practice to maintain detailed and contemporaneous records of all billable case work performed by attorneys and staff. At Nichols Kaster, time is kept in tenth-of-a-minute (.10) increments and recorded in the law firm's time management software, AdvantageLaw. I have reviewed our firm's billing records and have exercised billing judgment to exclude time that could be considered unnecessary. The summary chart that follows is a copy of the resultant timekeeper summary in this action as of August 19, 2020.

*Attorneys*

| Name | Position | Bar Admission Date | Hours | Rate | Total |
|---|---|---|---|---|---|
| Anna Prakash | Partner | 2005 | 510.6 | $500.00 | $255,300.00 |
| Brock Specht | Partner | 2007 | 426.4 | $475.00 | $202,540.00 |
| Robert Schug | Partner | 2006 | 381 | $500.00 | $190,500.00 |
| Megan Yelle | Contract Attorney | 2009 | 104.4 | $350.00 | $36,540.00 |
| Matthew Morgan | Partner | 2000 | 82.1 | $600.00 | $49,260.00 |
| Laura Baures | Staff Attorney | 2011 | 17.2 | $350.00 | $6,020.00 |
| Joshua Hegarty | Contract Attorney | 2016 | 13.3 | $250.00 | $3,325.00 |
| Cameron Goff | Contract Attorney | 2016 | 12.5 | $250.00 | $3,125.00 |
| Paul Lukas | Partner | 1991 | 1.3 | $700.00 | $910.00 |
| Rebekah Bailey | Partner | 2008 | 0.6 | $475.00 | $285.00 |
| Reena Desai | Partner | 2007 | 0.5 | $475.00 | $237.50 |
| Eleanor Frisch | Associate | 2014 | 0.5 | $300.00 | $150.00 |
| Matthew Helland | Partner | 2005 | 0.2 | $625.00 | $125.00 |
| Kai Richter | Partner | 1999 | 0.2 | $600.00 | $120.00 |
|  |  |  | **1550.8** |  | **$748,437.50** |

*Support Staff*

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Kristine Nelson | Paralegal | 71.5 | $175.00 | $12,512.50 |
| Heather O'Neil | Paralegal | 42.8 | $175.00 | $7,490.00 |
| Charlie O'Meara | Law Clerk | 41.9 | $175.00 | $7,332.50 |
| Andrew Peterson | Law Clerk | 19 | $175.00 | $3,325.00 |
| Erin Zanmiller | Paralegal | 18.6 | $175.00 | $3,255.00 |
| Caitlin Thompson | Paralegal | 17.3 | $175.00 | $3,027.50 |
| Cameron Pylka | Litig. Support Specialist | 17.2 | $175.00 | $3,010.00 |
| Angi Kittelson | Litig. Support eDiscovery Manager | 11.6 | $175.50 | $2,030.00 |
| Ali Hitt | Law Clerk | 10.4 | $175.00 | $1,820.00 |
| Andrew McCarty | Law Clerk | 5.7 | $175.00 | $997.50 |
| Alex Wise | Damages Analyst | 4.4 | $175.00 | $770.00 |
| Abou Amara | Law Clerk | 4 | $175.00 | $700.00 |
| Jacob Skold | Class Action Clerk | 1.9 | $175.00 | $332.50 |
| Chris Rued | Paralegal | 1.3 | $175.00 | $227.50 |
| Liz Luebesmier | Paralegal | 0.9 | $175.00 | $157.50 |
| Jake Smith | Class Action Clerk | 0.1 | $175.00 | $17.50 |
| Cha Yang | Help Desk Analyst | 0.1 | $175.00 | $17.50 |
|  |  | **268.7** |  | **$47,022.50** |

|  |  |  |
|---|---|---|
| ***Total - Attorneys and Support Staff*** | **1,819.5** | **$795,460.00** |

29. As reflected by this summary, as of August 19, 2020, Nichols Kaster attorneys and staff (including paralegals, law clerks, legal assistants, class action clerks, and information technology professionals have spent more than *1,819* hours on this action, resulting in a lodestar of *$795,460*. We would be happy to provide detailed billing records if the Court deems them necessary or helpful.

30. My firm expects to perform additional work on behalf of the settlement class, with co-counsel's assistance, including: (1) researching and drafting Plaintiffs' motion for final approval of the settlement; (2) researching, drafting, and filing responses to any objections to the settlement (though, to date, there are none); (3) preparing for and attending the Final Fairness Hearing; (4) if final approval is granted, supervising the settlement administrator to ensure proper and efficient distribution of payments to the class members; and (5) taking other actions necessary to support the settlement through until the conclusion of the settlement period. Based on my experience supporting and supervising similar settlements, I expect that we will spend at least an additional 50-100 hours of professional time after the date of this Declaration.

31. All of the work described above has been undertaken on a contingent basis. To date, my firm has not been compensated for any of this work.

32. In my professional opinion and based on my personal knowledge of the work that was performed and the requirements of this case and similar cases, all of

the time summarized above was reasonable and necessary.[1]

33. In connection with the action, Nichols Kaster also has advanced significant costs. We maintain records regarding out-of-pocket litigation costs expended on each case in the ordinary course of business. Below is a summary of Nichols Kaster's out-of-pocket litigation costs in this case:

| *Category* | *Cost* |
|---|---|
| Mediation | $17,515.00 |
| Travel expenses | $15,669.95 |
| Deposition and transcript costs | $10,594.62 |
| Expert fees | $6,300.00 |
| Online research and records requests | $5,071.36 |
| Court fees and admissions | $3,941.44 |
| Service (process server and FedEx) | $860.66 |
| Postage, shipping, copies | $439.12 |
| *TOTAL* | *$60,392.15* |

34. Because our firm handled this action on a contingent basis, we have not yet received reimbursement for any portion of the **$60,392.15** in costs we have advanced.

35. These expenses do <u>not</u> include expenses of settlement administration, which are broken out separately below. In the event that the Court would like further detail or documentation concerning these expenses, we would be happy to provide

---

[1] I understand that Ms. Barasch's office in New Jersey has additionally spent approximately 26.5 additional hours through June 30, 2020 on this litigation, with 15.7 hours attributable to Ms. Barasch at a rate of $450 and 10.8 hours attributable to support staff at a rate of $150, for a total amount of $8,685. This work was unquestionably necessary given presence in New Jersey and her familiarity with and practice before New Jersey courts.

it.

36. In my professional opinion and based on my experience prosecuting this action and overseeing the conduct of the litigation, all of these expenses were reasonable and necessarily incurred in connection with the action.

## Settlement Administration Expenses

37. Consistent with this Court's preliminary approval order, Atticus Administration, LLC has been administering the settlement in this matter. I have used Atticus in previous settlements and view their work favorably. That personnel at Atticus have administered at least one other settlement involving CashCall is notable. Atticus' anticipated bill for administering this settlement is $46,745. This is a negotiated price resulting from significant discounts given in order to match a bid from another respected settlement administration company. Based on my professional experience, this cost is competitive and relatively low given the number of class members and the fact that there will be two rounds of check-mailing should settlement be approved. Among other things, Atticus has or will oversee and execute: preparation of notices, address updates, and first class postage; project management; preparing and sending CAFA notice; remailing; telephone support; website; and distribution of settlement proceeds.

## Named Plaintiffs' Commitment to this Litigation and the Class

38. Each of the two Named Plaintiffs has been actively involved in this

litigation.

39. Both Plaintiffs MacDonald and Spearman were available to me throughout the February 10 mediation and spoke with me on more than one occasion during that day, including shortly before the parties reached an agreement on the monetary settlement amount.

40. Even before mediation, Plaintiff John MacDonald had been an active participant in this litigation. He met with and consulted with counsel in person prior to filing this action and has participated in several subsequent in-person and telephonic conferences with counsel. He undertook time-consuming searches for documents in response to discovery requests in this litigation, including searching for personal emails and financial records, and provided information for and reviewed discovery responses. He also attended the Third Circuit's mandatory mediation session by telephone, the court-ordered settlement conference in Newark, and his deposition in New York City. I understand that he traveled approximately an hour each way to attend his deposition in New York City, which took the day, and that he had to take time off of work for both the deposition and settlement conference. And, he has generally been available and responsive to counsel throughout the three years of this litigation. Defendants also chose to depose Mr. MacDonald's ex-wife. Mr. MacDonald has consistently refused to settle this case on an individual basis and has remained dedicated to obtaining class-wide relief. He has continued to stay in touch

with counsel throughout the settlement process.

41.     Plaintiff Jessica Spearman has similarly been involved in this litigation. She, too, has searched for numerous documents, including personal emails, has provided information for and reviewed discovery responses, and consulted with counsel prior to joining this action. For her deposition, Ms. Spearman had to travel nearly 50 miles and, for the settlement conference, nearly 100 miles from her home in Sicklerville. For both, she took time off of work. Ms. Spearman has generally been available and responsive to counsel throughout the course of her involvement in this litigation. Ms. Spearman has remained concerned with the welfare of the class throughout her time in this litigation, including during mediation. She has continued to stay in touch with counsel throughout the settlement process.

### **Class Notice, Recovery, and Lack of Objections**

42.     The settlement notices that were approved by the Court disclosed the terms of the settlement and also listed the amount of fees, costs, settlement administration expenses, and service payments Plaintiffs and Class Counsel anticipated seeking. Notably, the amounts listed in the notices are the same or higher than those Plaintiffs and Class Counsel now seek. That is, Class Counsel and Plaintiffs seek the same fee and service payments listed in the notices, but a *lower* amount of costs and settlement administration expenses than that listed in the notices. To date, none of the class members have objected to the settlement terms or

the proposed fees, costs, including administrative expenses, or service awards.

43. During the course of providing information for the mailing of class notice, I understand that Defendant discovered 14 additional New Jersey borrowers who fall within the settlement class definition. These 14 people were included in the notice mailing. With the addition of these 14 people, the class now numbers 10,588. The additional of the 14 people has little impact on the overall distribution of settlement funds. Based on Defendant's representations to me regarding the amounts associated with the loans of the 14 additional class members, the gross settlement amount of $14.5 million still equals just over 70% of the difference between what Defendant charged in interest and what they would have charged had they been abiding by New Jersey's usury rate and, if the requested amounts are rewarded, class members will still be receiving—on average—around $900, with maximum recoveries expected to be in the five figures. Plaintiffs' forthcoming motion for final approval is expected to discuss class member recovery in more detail.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 21, 2020                s/Anna P. Prakash
                                      Anna P. Prakash