## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| JOHN S. MACDONALD and JESSICA C. SPEARMAN, | Civil Action No. 2:16-cv-02781-MCA-ESK |
| Plaintiffs, | Hearing Date: October 1, 2020 |
| v. | |
| CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORP.; and J. PAUL REDDAM, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

RELEVANT BACKGROUND ...........................................................1

   I.     Litigation and Mediation History .......................................2

   II.    Overview of the Settlement ...............................................7

        A. The Settlement Class ....................................................7

        B.  Monetary Relief............................................................8

        C.  Non-Monetary Relief ..................................................11

        D.  Release of Claims .......................................................12

        E.  Attorneys' Fees, Costs, Administration Expenses, and Service
           Payments ...................................................................12

   III.   Preliminary Approval, Class Notice, Settlement
        Administration, and Reaction of the Class .....................13

ARGUMENT .....................................................................................15

   I.     Standard of Review ..........................................................15

   II.    The Settlement is Fair, Reasonable, and Adequate ......................17

        A. The Settlement is Fair, Reasonable, and Adequate in Light of
           Rule 23's Core Concerns............................................17

           1.  The Settlement was negotiated at arm's length ............17

           2.  The Settlement provides adequate relief........................18

           3.  The Settlement treats Settlement Class Members equitably
               relative to each other ...................................................21

      4.   The Class Representatives and Class Counsel have adequately represented the Settlement Class ...................................21

    B.  The Settlement is Fair, Reasonable, and Adequate under *Girsh* ........22

      1.   The complexity, expense, and likely duration of the litigation supports approval............................................................22

      2.   The reaction of the Settlement Class supports approval................23

      3.   The stage of the proceedings and the amount of discovery completed support approval ............................................................24

      4.   The risks associated with continued litigation support approval......................................................................................25

      5.   Defendants' likely inability to withstand a greater judgment supports approval ............................................................................26

      6.   The settlement is within the range of reasonableness, supporting approval......................................................................27

III.    THE CLASS NOTICE WAS REASONABLE......................................................28

IV.    THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED .............................30

CONCLUSION ...........................................................................................30

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Akishev v. Kapustin*, No. 13-7152-NLH-AMD, 2015 WL 12838316 (D.N.J. Sept. 21, 2015) ........................................................................................5

*Bell Atl. Corp. v. Bolger,* 2 F.3d 1304 (3d Cir.1993) .............................................24

*Bernhard v. TD Bank, N.A.*, No-08-4392-RBK-AMD, 2009 WL 3233541 (D.N.J. Oct. 5, 2009)........................................................................................21

*Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ............................................................................................... 19-20

*CFPB v. CashCall, Inc.*, No. 15-07522-JFW-RAOx, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016)................................................................................. 2-3

*CFPB v. CashCall, Inc.*, No. 15-07522-JFW-RAOx, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ..........................................................................3, 25

*Demmick v. Cellco P'ship*, No. 06-2163, 2015 WL 13643682 (D.N.J. May 1, 2015) ......................................................................................................29

*Doherty v. Hertz Corp.*, No. 10-359, 2014 WL 2916494 (D.N.J. June 25, 2014) ............................................................................................... 24-25

*Dominguez v. Galaxy Recycling Inc.*, No. 12-7521-LDW, 2017 WL 2495406 (D.N.J. June 9, 2017) ............................................................................20

*Garcia v. Gen. Motors Corp.*, 910 F. Supp. 160 (D.N.J. 1995) ................................5

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ..................................15-16, 22, 24-28

*Gomes v. Extra Space Storage, Inc.*,   No. 2:13–929, 2017 WL 2999020 (D.N.J. July 13, 2017)................................................................................26

*Haas v. Burlington Cty.*, No. 08-1102-NHL-JS, 2019 WL 413530 (D.N.J. Jan. 31, 2019) ....................................................................................................23

*Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) ................................................................................................19

*Hayes v. Delbert Serv. Corp.*, No. 3:14-00258-JAG, ECF No. 200 (E.D. Va. June 6, 2017) .......................................................................................3, 6

*In re Am. Family Enters.,* 256 B.R. 377 (D.N.J.2000) ...........................................19

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ................... 26-27

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ............................28

*In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000) *aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ...............................28

*In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................................................................15

*In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 and 05-1079, 2007 WL 2589950 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009).......................24

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) .......................20

*In re Natl. Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)........................................................................... 16-17, 28

*In re New Jersey Tax Sales Certificates Antitrust Litig*, No. 12-1893-MAS-TJB, 2016 WL 5844319 (D.N.J. Oct. 3, 2016)......................................................18

*In re Par Pharm. Sec. Litig.*, No. 06-3226-ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ....................................................................................... 23-24

*In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) .........24

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).......................................................................................16

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001)....................19

*In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) ..........................................................................18

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) ................................................................. 16-17

*Inetianbor v. CashCall, Inc.*, No. 13-60066-COHN/SELTZER, ECF No. 326 (S.D. Fla. May 15, 2017) ....................................................................................3, 21

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-00235-CCC, 2019 WL 4877563 (D.N.J. Oct. 3, 2019).. 20, 23-24

*Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, No. 03-4372 DMC, 2009 WL 4730185 (D.N.J. Dec. 4, 2009).......................................................18

*MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018) ......................................3

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) .....................27

*Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 3167736 (D.N.J. June 20, 2013)............................................................................................................25

*Saini v. BMW of N. Am., LLC*, No. 12-6105-CCC, 2015 WL 2448846 (D.N.J. May 21, 2015).................................................................................................................19

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ....................................................3

*Wood v. AmeriHealth Caritas Servs., LLC*, No. 17-3697, 2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) .....................................................................................17, 21

## Statutes, Rules, Regulations

Fed. R. Civ. P. 23(c)(2)...........................................................................................28

Fed. R. Civ. P. 23(e)(2)...................................................................... 15-18, 21-22

## Other

Advisory Committee Notes to 2018 Amendments to Rule 23 ................................16

**<u>Briefing</u>**

*Consumer Fin. Prot, Bureau v. CashCall, Inc.*,
No. 18-55407, 18-55479, 2018 WL 5264051 (9th Cir. Oct. 19, 2018),
2019 WL 1757012 (9th Cir. Apr. 11, 2019),
2019 WL 5390028 (9th Cir. Oct. 21, 2019)..............................................................3

## INTRODUCTION

With the Settlement notice period now closed and having received _no_ objections from the more than 10,000 Settlement Class Members, Plaintiffs—with Defendants' consent and agreement—request that the Court grant final settlement approval.[1] The Parties' Settlement is fair, reasonable, and adequate. It is the product of arms' length negotiations conducted by a private mediator with experienced counsel on both sides and was reached following hard-fought discovery, litigation, motion practice, and appeals. The Settlement provides significant non-monetary and monetary relief to class members—with the Gross Settlement Amount totaling more than 70% of the interest Settlement Class Members paid over the New Jersey usury rate. For these reasons, and those discussed herein, the Settlement complies with the Rule 23 and attendant case law, and the Court should grant final approval.

## RELEVANT BACKGROUND

The relevant background of this Litigation, mediation history, and summary of the Parties' Settlement is discussed in the preliminary approval brief (ECF No. 112-1) and largely repeated below for the Court's convenience, with updated information as relevant, including a summary of settlement administration activities

---

[1] Capitalized terms have the meaning given in the Settlement Agreement. (ECF No. 112-3.) The Parties' agreed upon proposed order is filed herewith and is drafted to approve both this Motion, as well as grant the pending Motion for Attorneys' Fees, Costs, and Class Representative Service Payments. (ECF No. 121.)

1

that occurred following Preliminary Approval.

## I.   LITIGATION AND MEDIATION HISTORY

On May 17, 2016, Plaintiff John MacDonald filed this class action lawsuit on behalf of himself and all other consumers in New Jersey who took out Western Sky consumer loans. (Compl., ECF No. 1.) The loans carried high interest rates, ranging from 79% to 200%. (Class Cert. Op. at 2, ECF No. 102.) Defendants CashCall, Inc., W.S. Funding, LLC, Delbert Services Corp., and J. Paul Reddam ("Defendants") believed these loans were not subject to state usury law based on their affiliation with Western Sky Financial, LLC ("Western Sky"), which was run by a member of the Cheyenne River Sioux Tribe. (*Id.*) Plaintiff disagreed that there was any tribal "affiliation" that would allow Defendants to claim sovereign immunity and alleged that the terms and conditions of the loans rendered them usurious, unconscionable, and otherwise unlawful under New Jersey law. (ECF No. 1.) Specifically, Plaintiff sought declaratory relief, alleged that Defendants were unjustly enriched, and alleged that Defendants violated New Jersey usury law, the New Jersey Consumer Fraud Act, and RICO. (*Id*) Plaintiff Jessica Spearman joined this case as a Plaintiff on September 25, 2018. (Amend. Compl., ECF No. 69.)[2]

---

[2] The legality of Western Sky loans such as those at issue in this case has been challenged in several different actions. (*See* Op. on Mot. To Dismiss at 4-6, ECF No. 24 (cataloguing cases).) For example, the Consumer Financial Protection Bureau ("CFPB") sued CashCall in California. *CFPB v. CashCall, Inc.*, No. 15-7522-JFW-RAOx (C.D. Cal.). There, although the court found Defendants liable, 2016 WL

Defendants have vigorously and emphatically contested the claims asserted by Plaintiffs, including a full-blown appeal up to the Third Circuit. To begin, Defendants moved to compel arbitration or, alternatively, dismiss this Action in September 2016. (ECF No. 11.) The Court denied Defendants' motion in April of 2017 (ECF No. 25), and Defendants then appealed to the Third Circuit (ECF No. 33). While the appeal was pending, Defendants brought a contested motion to stay discovery, which the Court granted on June 27, 2017. (ECF No. 39.) In February 2018, the Third Circuit affirmed this Court's order denying Defendants' motion to compel arbitration or dismiss in a published decision after oral argument. *MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018). After the case returned to the district court, Defendants filed their Answer in May of 2018 (ECF No. 50),

_____

4820635 (C.D. Cal. Aug. 31, 2016), and ordered them to pay a penalty, the court declined to order restitution to borrowers, including borrowers in New Jersey. *See* 2018 WL 485963 (C.D. Cal. Jan. 19, 2018). Both parties appealed, and the appeal was stayed pending a decision by the Supreme Court in *Seila Law LLC v. CFPB*, a case regarding the constitutionality of the CFPB. *CFPB v. CashCall, Inc*., No. 18-55407, 18-55479, 2018 WL 5264051 (9th Cir. Oct. 19, 2018), 2019 WL 1757012 (9th Cir. Apr. 11, 2019), 2019 WL 5390028, at *1 (9th Cir. Oct. 21, 2019). On June 29, 2020, the Supreme Court held that the structure of the CFPB violates separation of powers but that the agency may continue to operate. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020). The Ninth Circuit subsequently ordered that the docket in the CFPB's case against CashCall remain administratively closed pending conclusion of the remand proceedings in *Seila Law*. 18-55479, ECF No. 63 (Aug. 6, 2020). As to other actions, Defendants reached several state-specific settlements, including class settlements in Florida and Virginia. *See Inetianbor v. CashCall, Inc.*, No. 13-60066-COHN/SELTZER, ECF No. 326 (S.D. Fla. May 15, 2017) (granting final approval); *Hayes v. Delbert Serv. Corp.*, No. 3:14-00258-JAG, ECF No. 200 (E.D. Va. June 6, 2017) (granting final approval).

3

and discovery commenced shortly thereafter.

The discovery period in this case was intense, with the parties on a tight timeline and neither party willing to compromise their right to information. (*See* March 12, 2020 Declaration of Anna P. Prakash ("First Prakash Decl.") ¶ 3, ECF No. 112-2.) Plaintiffs thoroughly researched liability and damages issues in this case and aimed their discovery at both those issues, as well as certification. (*Id.*) Plaintiffs pushed for written and document discovery, as did Defendants. (*Id.*) The parties took several disputes to Magistrate Judge Wettre, including the issue of whether Plaintiffs could depose Defendants in this case as opposed to relying on depositions taken by other counsel the CFPB and *Inetianbor* actions. (*Id.*) Upon receiving approval from Magistrate Judge Wettre, Plaintiffs deposed Defendants CashCall and Reddam, as well as CashCall's Chief Financial Officer. (*Id.*) They also examined the more than 16,000 documents they were able to obtain from Defendants through discovery. (*Id.*) Plaintiffs themselves were deposed, as was Plaintiff MacDonald's ex-wife, and each Plaintiff responded to written discovery. (*Id.*) The parties attended mediation in November of 2018 with Magistrate Judge Wettre; however, they did not reach settlement. (*Id.*; *see also* August 21, 2020 Declaration of Anna P. Prakash ("Second Prakash Decl.") ¶¶ 19-27, ECF No. 121-2 (discussing Class Counsel's work).)

The case then proceeded to full briefing on class certification. In 2019, Plaintiffs moved for class certification, Defendants filed a response, and Plaintiffs

filed a reply. (ECF Nos. 93, 96, 97.) The Court granted class certification in October

of 2019, certifying the following two classes:

> **Four Year Class:** All individuals who, on or after May 17, 2012,
> made payments to one or more Defendants on loans originated by
> Cashcall, Inc., WS Funding, LLC, Delbert Services Corp., J. Paul
> Reddam, or Western Sky Financial, LLC where the borrower was a
> New Jersey resident.

> **Six Year Class:** All individuals who, on or after May 17, 2010, made
> payments to one or more Defendants on loans originated by Cashcall,
> Inc., WS Funding, LLC, Delbert Services Corp., J. Paul Reddam, or
> Western Sky Financial, LLC where the borrower was a New Jersey
> resident.

(ECF No. 103.)[3] Defendants then filed a Rule 23(f) petition, seeking interlocutory

review of the class certification order, which the plaintiffs opposed. (*See* ECF No.

106.) The Third Circuit denied the petition in February 2020. Order, No. 19-8044

(3d Cir. Feb. 6, 2020).

Shortly after the Third Circuit denied the Rule 23(f) petition, the parties

attended mediation with retired federal district court judge Layn Phillips of Phillips

ADR in California. (Settlement Agreement ¶ 5, ECF No. 112-3.) Prior to mediation,

---

[3] The two classes account for the different statute of limitations for the claims
brought on behalf of all class members, i.e., the RICO has a four-year statute of
limitations and the other claims in the case have a six-year statute of limitations. (*See*
Pls.' Class Cert. Br. at 16, ECF No. 93-1.) As such, all members of the Four Year
Class are also members of the Six Year Class. Notably, both RICO and the New
Jersey Consumer Fraud Act allow for treble damages. *Akishev v. Kapustin*, No. 13-
7152-NLH-AMD, 2015 WL 12838316, at *6 (D.N.J. Sept. 21, 2015); *Garcia v. Gen.
Motors Corp.*, 910 F. Supp. 160, 166 (D.N.J. 1995).

the parties exchanged mediation briefs. Defendants' brief focused on their intent to move for summary judgment on their affirmative defense of res judicata based on the CFPB action. (First Prakash Decl. ¶ 4, ECF No. 112-2.)

Additionally, as part of an agreed-upon exchange of information, Defendants produced various items of loan-level data for each Settlement Class Member. (Declaration of Delbert O. Meeks ("Meeks Decl.") ¶ 4, ECF No. 112-4.) Defendants produced, among other things, information to compare Defendants' previous class action settlements involving Western Sky loans. For example, in both *Inetianbor* and *Hayes*, the gross settlement amount equaled approximately 35% of the difference between the interest charged on loans and the interest rate set by state usury law. (Meeks Decl. ¶ 3, ECF No. 112-4.) Defendants also provided information on CashCall's financial condition. (*See id*. ¶ 5 (reporting that CashCall's business has rapidly shrunk, that WS Funding, LLC and Delbert Services, Corp. are no longer operational, considerable uncertainty over the case pending at the Ninth Circuit, and an inability to guarantee that CashCall could withstand a full judgment or higher settlement).) Defendants provided information on the total interest collected from Settlement Class Members. There are 10,588 Settlement Class Members, Defendants collected $31,121,032.80 in interest from them, and $20,176,899.33 of that is interest over the 16% usury rate in New Jersey. (Second Prakash Decl. ¶ 43, ECF No. 121-2; September 14, 2020 Declaration of Anna P. Prakash ("Third

6

Prakash Decl.) ¶ 2.)[4]

The full-day mediation was successful, and the parties executed core settlement terms that day that included a Gross Settlement Amount of $14,500,000. (Settlement Agreement ¶¶ 22, 38, ECF No. 112-3.)

## II. OVERVIEW OF THE SETTLEMENT

### A. The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> All individuals who, on or after May 17, 2010, made payments to one or more Defendants on loans originated by CashCall, Inc., WS Funding, LLC, Delbert Services Corp., J. Paul Reddam, or Western Sky Financial, LLC where the borrower was a New Jersey resident.

(*Id.* ¶ 33.) This definition matches the definition of the Six Year Class in the Court's certification order. (ECF No. 103.) And, in the July 1, 2020 Preliminary Approval

---

[4] The Third Prakash Decl. is filed contemporaneously with this brief and notes that the information on prior settlements and financial condition described above is consistent with what Defendants produced prior to mediation. (Third Prakash Decl. ¶ 2.) The interest numbers stated above are slightly higher than those produced prior to mediation. During the course of transmitting information to the Settlement Administrator for the notice mailing, Defendants discovered 14 additional Settlement Class Members, bringing the total number to 10,588 (up from 10,574). (Second Prakash Decl. ¶ 43, ECF No. 121-2; Meeks Decl. ¶ 5, ECF No. 112-4.) Considering the interest payments of these Settlement Class Members, the total interest collected for the Settlement Class is $31,121,032.80 (up from $31,095,143) and the amount of interest above the New Jersey usury rate is $20,176,899.33 (up from $20,155,721.29). (Third Prakash Decl. ¶ 2; Meeks Decl. ¶ 3, ECF No. 112-4.) Given how small the difference in numbers is, both before and after the addition of the 14 Settlement Class Members, the Gross Settlement Amount of $14,500,000 equals 72% of the amount of interest paid over the New Jersey usury rate.

7

Order, the Court certified the Settlement Class. (ECF No. 118.) Based on information provided by Defendants, there are 10,588 Settlement Class Members (*See* Second Prakash Decl. ¶ 43, ECF No. 121-2.)

### B.    Monetary Relief

Under the Settlement, Defendants will contribute a Gross Settlement Amount of $14,500,000 to a common fund. (Settlement Agreement ¶ 22, 38, ECF No. 112-3.) Moreover, Defendants have agreed that this and all terms in the Settlement will be binding regardless of the outcome of the CFPB action. (*Id.* ¶ 64; *see supra* n.2.) Defendants will be jointly and severally responsible for the Gross Settlement Amount and will pay it into an account set up by the Settlement Administrator in two installments: the First Payment will be $10,000,000 and will be made within forty-five (45) days following the Effective Date of the Settlement. (Settlement Agreement ¶¶ 21, 30, 38, ECF No. 112-3.)[5] The Second Payment will be $4,500,000 and will be made the later of forty-five (45) days following the Effective Date or the end of calendar year 2021. (*Id.* ¶¶ 21, 30, 38.) After accounting for any awarded attorneys' fees and costs, settlement administration expenses, and Class Representative service payments approved by the Court, the Net Settlement Fund will be allocated for distribution. (*Id.* ¶¶ 25, 39.)

---

[5] The Effective Date is the date that this Settlement becomes completely final and there is no timely recourse by an appellant or objector who seeks to contest the Settlement. (*Id.* ¶ 19.)

As between Settlement Class Members, the Net Settlement Fund will be divided pro rata but weighted in proportion to the amount each Settlement Class Member paid on Western Sky loans (i.e., the Loans at Issue). (*Id.* ¶ 39.) Notwithstanding the foregoing, there shall be a floor applied to each payment round, such that no Settlement Class Member will receive less than $10 per check. (*Id.*) Accordingly, and if attorneys' fees, Class Representative service payments, and costs, including settlement administration expenses, are awarded as requested (*see* Br. ISO of Mot. for Fees, Costs, and Service Payments, ECF No. 121-1), individual Settlement Class Members net recoveries are expected to start at $20, with the highest recoveries expected to be in the $10,000 and $15,000 range, and with the average per class member expected to be approximately $900. (Third Prakash Decl. ¶ 3.) Settlement Class Members will not be required to submit claim forms; rather, checks will issue. Payment to Settlement Class Members will be made via two checks in proportion to the amount of the Net Settlement Fund available after the First Payment and Second Payment, respectively. (Settlement Agreement ¶ 39, ECF No. 112-3.) The first check will be sent no later than five (5) business days following the First Payment, and the second check will be sent no later than five (5) business days following the Second Payment. (*Id.* ¶¶ 59, 60.) Notably, given the absence of objections, Settlement Class Members will be mailed their first check this calendar year provided that the Final Approval Order is entered by November 6, 2020.

If approved by the Court, the service payments for each Named Plaintiff will be made by check by the Settlement Administrator at the same time the first checks following the First Payment are issued to the Settlement Class Members. (*Id.* ¶ 40.) This amount will be in addition to the pro rata amount paid to Plaintiffs, which will be distributed at the same time Settlement Class Members receive each of their checks. (*Id.* ¶¶ 39-40.) If approved by the Court, the out-of-pocket costs Class Counsel have advanced to fund this Litigation since May of 2016 will be wired to Class Counsel at the same time the first checks following the First Payment are issued to the Settlement Class Members. (*Id.* ¶ 41.) If approved by the Court, attorneys' fees will be paid to Class Counsel over two wires, each in proportion to the amount made available through the First Payment and Second Payment, respectively: The first will be wired to Class Counsel at the same time the checks following the First Payment are issued to the Settlement Class Members. (*Id.*) The second will be wired to Class Counsel at the same time the checks following the Second Payment are issued to Settlement Class Members. (*Id.*)

Settlement Class Members will have 120 days after checks are mailed to negotiate their checks. (*Id.* ¶ 43.) There will be two 120 day check negotiation periods: one following the First Payment and one following the Second Payment. After the first check negotiation period, the amounts Settlement Class Members did not cash will be held by the Settlement Administrator and those same amounts will

be added to the second payments of those Settlement Class Members who did not cash their first check. (*Id.*) Thirty (30) days following the close of the second check negotiation period, the Settlement Administrator will deliver any remaining amounts to the parties' chosen *Cy Pres* Recipient. (*Id.* ¶¶ 16, 43; First Prakash Decl. ¶ 8, ECF No. 112-2 (discussing the *Cy Pres* Recipient.)

### C.    Non-Monetary Relief

Defendants stopped collecting on the Loans at Issue in 2016. (ECF No. 93-4 at 205-206.) If loans were sold to third parties, however, those third parties may still be collecting. (*Id.*) Thus, as further consideration in the resolution of this Litigation, Defendants agree to the following:

First, within thirty (30) days after the Effective Date, Defendants will provide Class Counsel with a list of Settlement Class Members' Western Sky Loans sold to third parties and the name and address of the third party to which each such loan was sold, to the extent available, and Defendants will provide notice to the third parties to which they sold the loans that such loans should be deemed canceled and that the amounts allegedly owed by consumers are in dispute. (Settlement Agreement ¶ 37(a), ECF No. 112-3.)

Second, within thirty (60) days of the Effective Date, Defendants will contact applicable credit bureaus to request that any negative credit reporting by Defendants or their agents regarding the Loans at Issue be removed. (*Id.* ¶ 37(b).)

11

Third, as of the Effective Date, Defendants will refrain from selling any Settlement Class Member's personal data.  (*Id.* ¶ 37(c).)

### D.    Release of Claims

In exchange for the relief provided by the Settlement, all Settlement Class Members who do not timely opt out of this Settlement, will release Defendants, their current, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, representatives, successors, predecessors-in-interest, related entities and each of their respective officers, directors, employees, and insurers and assigns and all persons acting for or on their behalf, including Defendant Reddam (the "Released Parties") from the following: any and all claims the Settlement Class has arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint and Amended Complaint, including but not limited to any and all claims related to Western Sky Loans. (*Id.* ¶¶ 53, 18.)

### E.  Attorneys' Fees, Costs, Administration Expenses, and Service Payments

The Settlement Agreement requires that Class Counsel file their Motion for Attorneys' Fees, Costs, and Class Representative Service Payments at least fourteen (14) days before the Opt-Out and Objection Deadlines. (*Id.* ¶ 57.) Accordingly, Class Counsel filed their motion on August 21, 2020, with supporting declarations. (ECF Nos. 121 through 121-4.) Consistent with the Settlement, Class Counsel's motion

12

seeks one-third of the Gross Settlement Fund ($4,833,333.33), plus litigation costs and settlement administration expenses. (*See* Br. ISO Mot. for Fees, Costs, and Service Payments, ECF No. 121-1; *see also* Second Prakash Decl., ECF No. 121-2; Declaration of Matthew W. H. Wessler ("Wessler Decl."), ECF No. 121-3; Settlement Agreement ¶¶ 41-42, ECF No. 112-3.) Class Counsel has requested their out-of-pocket litigation costs of $61,600.15, plus the expected $46,745 to be charged by the Settlement Administrator for administering the Settlement. (*See* Br. ISO Mot. for Fees, Costs, and Service Payments, ECF No. 121-1; *see also* Second Prakash Decl., ¶¶ 33-37, ECF No. 121-2; Wessler Decl., ¶ 13, ECF NO. 121-3; Settlement Agreement ¶¶ 41-42, ECF No. 112-3.) Consistent with the Settlement Agreement, the Motion for Attorneys' Fees, Costs, and Class Representative Service Payments seeks a service payment of $10,000 for each Class Representative. (*See* Br. ISO Mot. for Fees, Costs, and Service Payments, ECF No. 121-1; *see also* Second Prakash Decl., ECF No. 121-2; Wessler Decl., ECF NO. 121-3; Settlement Agreement ¶ 40, ECF No. 112-3.)

III.   **PRELIMINARY APPROVAL, CLASS NOTICE, SETTLEMENT ADMINISTRATION, AND REACTION OF THE CLASS.**

The Court granted Preliminary Approval of the Settlement on July 1, 2020, and approved the Parties' agreed upon Postcard and Long Form Notices and proposed manner of distribution. (ECF No. 118.)

The Parties and Settlement Administrator worked together to collect and

update Settlement Class Member addresses and on July 21, 2020, the Settlement Administrator mailed the approved Postcard Notice to class members via first-class mail and posted the approved Long Form Notice to the Settlement Website. (Third Prakash Decl. ¶ 2; Declaration of Christopher Longley ("Longley Decl.") ¶¶ 4-7;[6] *see* Settlement Agreement ¶¶ 24, 28, Exs. C and D, ECF Nos. 112-3, 112-6, 112-7.)[7] Class Counsel's Motion for Attorneys' Fees, Costs, Class Representative Service Payments was posted to the Settlement Website on August 21, 2020, the day it was filed. (Longley Decl. ¶ 7.)

The Objection and Opt-Out Deadline agreed to and listed in the approved Postcard and Long Form Notices was September 4, 2020. (Third Prakash Decl. ¶ 4; Longley ¶ 8; *see* Settlement Agreement ¶ 26, ECF No. 112-3.) September 4 was also the date for Settlement Class Members to request to appear at the final approval hearing. (Third Prakash Decl. ¶ 4; Longley Decl. ¶ 9; *see* Settlement Agreement Ex. C, ECF No. 112-6.) Notably, no Settlement Class Member has opted out of the Settlement, objected to the Settlement or requested fees, costs, or service payments, or requested to appear at the hearing. (Third Prakash Decl. ¶ 4; Longley Decl. ¶ 9.)

---

[6] As with the Third Prakash Decl., the Longley Decl. is filed contemporaneously with this Motion. Plaintiffs note that notice pursuant to the Class Action Fairness Act ("CAFA") was also mailed following Preliminary Approval. (*See* Declaration of Thomas J. Nolan Confirming Service of CAFA Notice, ECF No. 113.)

[7] Following address updates, skip tracing, and remailings, only 414 (or just under 4%) of the Postcard Notices were undeliverable. (Longley Decl. ¶ 6 (discussing 239 plus 175 undeliverable Notices).)

14

# ARGUMENT

## I.   STANDARD OF REVIEW

"[W]hether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts are mindful that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

At the final approval stage, the court must determine whether a settlement is "fair, reasonable, and adequate" using the following criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The goal of [subsection (e)(2)] is not to displace any factor [developed through case law], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to

approve the proposal." Advisory Committee Notes to 2018 Amendments to Rule 23.

The Third Circuit has identified nine factors courts should consider in granting final

approval of a settlement under Rule 23(e):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157*; see also In re Natl. Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). The court may consider additional factors where appropriate. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

Additionally, an initial "presumption of fairness attaches to a proposed settlement if '(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) (quoting *In re NFL Players Litig*, 821 F.3d at 436.

II.    **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

The Parties' Settlement is presumed fair. Negotiations occurred at arm's length through a private mediator, settlement was reached after the close of full fact discovery, counsel has extensive experience in complex class actions and consumer litigation, and no Settlement Class Member has objected to the Settlement. (*See supra* at 3-7, 14; *see also* Second Prakash Decl., ¶¶ 4-18, ECF No. 121-2; Wessler Decl., ¶¶ 2-9, ECF No. 121-3.) This strongly supports final approval. *See In re Valeant Pharm.*, 2020 WL 3166456, at *7 (citing *In re NFL Players Litig.*, 821 F.3d at 436). Consideration of the other relevant factors also confirms that the settlement is fair, reasonable, and adequate.

### A. The Settlement is Fair, Reasonable, and Adequate in Light of Rule 23's Core Concerns.

1. The Settlement was negotiated at arm's length.

The Settlement was "negotiated at arm's length[,]" Fed. R. Civ. P. 23(e)(2)(B). The Parties attended a full day mediation with private mediator on February 10, 2020. (*See supra* at 5-7.) Mediation was successful, and the Parties filed their Settlement Agreement on March 13, 2020. (ECF No. 112-3.) "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Wood v. AmeriHealth Caritas Servs., LLC*, No. 17-3697, 2020 WL 1694549, at *6 (E.D. Pa. Apr. 7, 2020) (brackets, quotations, and citation omitted).

17

This supports approval.

      2.  <u>The Settlement provides adequate relief.</u>

The "relief provided for the class is adequate[.]" Fed. R. Civ. P. 23(e)(2)(C). The Settlement requires Defendant to pay a gross settlement amount of $14,500,000. (*See supra* at 8.) This represents more than 70% of the interest Settlement Class Members paid above the New Jersey usury rate and is more than double the percentage recovery in comparable cases against Defendants. (*See supra* at 6-8, n.4.) Even when viewing the total interest paid, i.e., the $31,121,032.80 (*see id*.), and trebling, the amount achieved through the Settlement is significant. *See Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372-DMC, 2009 WL 4730185, at *7 (D.N.J. Dec. 4, 2009) (granting final approval where settlement was slightly below 10% of the total realizable value of the action)*; In re New Jersey Tax Sales Certificates Antitrust Litig*, No. 12-1893-MAS-TJB, 2016 WL 5844319, at *9 (D.N.J. Oct. 3, 2016) (granting final approval where cash settlements were approximately 2.5% of the best possible recovery); *see also In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim…. and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential

recovery.") (internal citations and quotations omitted).[8] The Settlement is all the more reasonable given the costs, risks, and delay associated with further litigation through expert discovery, summary judgment, trial, and appeals. (*See infra* at 22-26.)

Relatedly, the Settlement proposes a fair end effective method of distributing settlement funds to Class Members, which will be done automatically via U.S. Mail, without requiring Class Members to submit claim forms or other paperwork. (*See supra* at 9.) This, too, supports approval. *See e.g.*, *Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688, at *9 (E.D. Pa. Mar. 25, 2020).

And, any awarded attorney's fees will be paid at the same time that class members receive their checks. (*See supra* at 10-11.) Class Counsel has requested the standard and routinely-awarded one-third of the Gross Settlement Amount in fees, as well as the reasonable costs of litigation, including settlement administration expenses, and a modest $10,000 in service payments to each of the Named Plaintiffs. (*See supra* at 12-13.) These awards are thoroughly discussed in the pending fee

---

[8] *See also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting study showing that since 1995, securities class settlements have "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Saini v. BMW of N. Am., LLC*, No. 12-6105-CCC, 2015 WL 2448846, at *9 (D.N.J. May 21, 2015) ("single damages, not treble or punitive damages, are the appropriate yardstick by which the fairness of a proposed class action settlement should be measured" (*quoting In re Am. Family Enters.,* 256 B.R. 377, 425 (D.N.J.2000)); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (describing settlement of between 13 and 48% of damages as "outstanding").

petition. (*See* Br. ISO Mot. for Fees, Costs, and Service Payments, ECF No. 121-1; Second Prakash Decl., ECF No. 121-2; Wessler Decl., ECF No. 121-3.)[9] *See also Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-00235-CCC, 2019 WL 4877563, at \*6 (D.N.J. Oct. 3, 2019) (approving a 33% fee of a $21.9 million fund); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 125 (D.N.J. 2012) (awarding costs that were "reasonably and appropriately incurred during the prosecution of this case"); *Dominguez v. Galaxy Recycling Inc.*, No. 12-7521-LDW, 2017 WL 2495406, at \*9 (D.N.J. June 9, 2017) (approving $10,000 service award from common fund).

The Settlement also provides meaningful non-monetary relief to stop third parties from collecting on the loans, take steps to stop negative credit reporting, and to keep Settlement Class Members' personal data from being sold. (*See supra* at 11-12.) This, too, supports approval. *See Bodnar*, 2016 WL 4582084, at \*5 ("The value of the settlement is actually greater in light of the meaningful injunctive relief….").

In sum, this Settlement is well within the range of reasonableness.

---

[9] As discussed above, if approved, attorneys' fees will be paid to Class Counsel over two wires, each in proportion to the amount made available through the First Payment and Second Payment, respectively: The first will be wired to Class Counsel at the same time the checks following the First Payment are issued to the Settlement Class Members. The second will be wired to Class Counsel at the same time the checks following the Second Payment are issued to Settlement Class Members. (*See supra* at 10-11.)

3.  The Settlement treats Settlement Class Members equitably relative to each other.

The Settlement "treats class members equitably relatively to each other." Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members, including the Named Plaintiffs, will receive their pro rata share of the Net Settlement Fund weighted to account for the amount each person paid on the Loans at Issue. (*See supra* at 9.) Thus, the Settlement treats class members equitably relative to each other. *See Wood*, 2020 WL 1694549, at *7 (approving pro rata percentage allocations as equitable); *see also Bernhard v. TD Bank, N.A.*, No. 08-4392-RBK-AMD, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009). What is more, if the requested fees, costs, administration expenses, and incentive awards are approved, the average net per person recovery would be approximately $900, with the highest recoveries reaching into the five figures. (*See supra* at 9.) This supports approval. *See e.g., Inetianbor*, No. 13-60066-COHN/SELTZER, Order of Final Approval and Judgment, ECF No. 326 (May 15, 2017)  (granting final approval where the gross fund from which fees, costs and service awards were paid was approximately $14,417,810, but the total number of class member was approximately 26,774).

4.  The Class Representatives and Class Counsel have adequately represented the Settlement Class.

The "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As explained in detail in their motion for

21

attorneys' fees, expense, and class representative service payments, both Class Counsel and the Named Plaintiffs have demonstrated a commitment to the class and high quality representation throughout the four-plus years of this case. (*See* ECF No. 121-1; *see also* Second Prakash Decl. ¶¶ 4-27, 38-41, ECF No. 121-2; Wessler Decl. ¶¶ 2-10, ECF No. 121-3.) In this case, Class Counsel defeated a motion to dismiss and compel arbitration, prevailed on the appeal of that motion, worked through numerous discovery disputes, won class certification, and successfully opposed Defendants' petition for appellate review of the certification decision. (*See supra* at 3-6.) Moreover, the Named Plaintiffs have given time and energy to this litigation, and without their work, there would be no settlement for the class, whose interests they have kept in mind throughout the case and in agreeing to settle at mediation. (*See supra* at 3-6; *see also* Second Prakash Decl. ¶¶ 38-41, ECF No. 121-2.)[10]

### B. The Settlement Is Fair, Reasonable, and Adequate under *Girsh*.

Analysis of the factors articulated in *Girsh* also demonstrates the fairness, reasonableness, and adequacy of the Settlement.

1. The complexity, expense, and likely duration of the litigation supports approval.

The first *Girsh* factor examines the complexity, expense, and likely duration

---

[10] Aside from the Parties' filed Settlement Agreement (ECF No. 112-3), there is no "agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). (*See* Third Prakash Decl. ¶ 5.)

of litigation. This factor weighs in favor of approval. This is a complex class action involving a class of more than 10,000 borrowers and claims under several laws, including RICO. Plaintiff MacDonald filed this case in May of 2016, and this Litigation is more than four years old. Defendants have appealed or petitioned for appeal after each major case event—including a full-blown appeal with oral argument in the Third Circuit. Moreover, Class Counsel has incurred considerable out-of-pocket costs, which would rise dramatically given that expert disclosures and discovery would be the next steps in this Litigation. (*See supra* at 12-13.) If the case went forward with expert discovery and dispositive motions, as well as trial and the inevitable appeals, it would certainly continue for several more years. "Each of these stages involves time, expense, and risk to all parties. A certain result now, rather than an uncertain result potentially years from now, weighs in favor of settlement." *Lincoln Adventures,* 2019 WL 4877563, at *3–5; *Haas v. Burlington Cty.*, No. 08-1102-NHL-JS, 2019 WL 413530, at *6 (D.N.J. Jan. 31, 2019) (granting approval where plaintiffs estimated the time to judgment would take another three years).

2. The reaction of the Settlement Class supports approval.

The second *Girsch* factor examines the reaction of the class. Here, not one of the 10,888 Settlement Class Members has objected to the Settlement or requested exclusion. (*See supra* at 14.) This overwhelmingly positive response to the Settlement strongly supports approval. *See In re Par Pharm. Sec. Litig.*, No. 06-

23

3226-ES, 2013 WL 3930091, at *5 (D.N.J. July 29, 2013) ("[T]he lack of any objections or exclusions strongly supports approval of the Settlement."); *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 and 05-1079, 2007 WL 2589950, at *5 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 269 (E.D. Pa. 2012) (the "Third Circuit Court of Appeals has recognized the practical conclusion that it is generally appropriate to assume that 'silence constitutes tacit consent to the agreement' in the class settlement context.") (quoting *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1313 n.15 (3d Cir.1993)).

### 3. The stage of the proceedings and the amount of discovery completed support approval.

The third *Girsh* factor examines the stage of proceedings and the amount of discovery completed. Here, the Settlement was reached after the close of fact discovery. As discussed above and in earlier filings, discovery was both thorough and hard-fought, with numerous depositions, the production and review of tens of thousands of documents. (*See supra* at 3-6; *see* Second Prakash Decl. ¶¶ 19-27, ECF No. 121-2.) At the time of settlement, Defendants had provided Plaintiffs information on damages and only expert discovery remained prior to trial. In sum, given the advanced stage of litigation, "the parties have a sufficient understanding of the strengths and weaknesses of the case to reach an informed and fair settlement." *Lincoln Adventures*, 2019 WL 4877563, at *4. This supports approval. *See id.*; *see also Doherty v. Hertz Corp.*, Civ. No. 10-359, 2014 WL 2916494, at *5 (D.N.J. June

25, 2014) (granting approval where "the substantial discovery by the parties allowed for negotiation of the settlement with all counsel being aware of the strengths and weaknesses of their respective positions based on disclosure of the facts and a careful analysis of those facts with respect to their claims and defenses").

4.   The risks associated with continued litigation support approval.

The fourth, fifth, and sixth *Girsh* factors examine the risks of establishing liability and damages and maintaining the class action through the trial.

As to liability, while Plaintiffs are confident in their claims, litigation is inherently risky. *See Pro v. Hertz Equip. Rental Corp.*, Civ. No. 06-3830, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (finding this factor to support approval given that settlement "provides substantial monetary and injunctive benefits without the inherent risk of being unable to establish liability during litigation"). This is particularly true given that Defendants intend to raise a res judicata defense at summary judgment (*see supra* at 6)—a defense upon which the Court has not yet opined in this case.

While Plaintiffs are equally confident in their ability to prove damages, further litigation would likely involve costly expert reports on damages, disputes over expert reports, and, again, the outcome is not certain. *See e.g.*, *CFPB v. CashCall, Inc.*, No. CV-15-07522-JFW-RAOx, 2018 WL 485963, at *11-14, 16 (C.D. Cal. Jan. 19, 2018) (declining to order restitution). Moreover, if the Ninth Circuit were to reverse

the order denying restitution in the CFPB case, Plaintiffs may well face an argument on offsetting damages and, in any event, Defendants may no longer be able to pay a judgment at that point. (*See supra* at 6.)

Finally, though Plaintiffs view the risk of decertification as minimal, Defendants are likely to move for decertification. Regardless, the outcome of a class trial on Plaintiffs' RICO and any outstanding claims and damages issues is unpredictable and the time and costs associated with a class trial are great. *Gomes v. Extra Space Storage, Inc.*, No. 2:13–929, 2017 WL 2999020, at *2 (D.N.J. July 13, 2017) ("Because trial is risky, it is logical for the class members to accept the award from the Settlement Agreement and move on.").

5. <u>Defendants' likely inability to withstand a greater judgment supports approval</u>.

The seventh *Girsh* factor examines the ability of defendants to withstand a greater judgment. Here, Defendants have expressed uncertainty over whether they could withstand a larger judgment. WS Funding, LLC and Delbert Services, Corp. are no longer operational. Defendant CashCall, Inc.'s business has rapidly shrunk in recent years. And, both CashCall and Defendant Reddam have yet to see what comes of the appeals in the CFPB litigation, where the government continues to seek an award of restitution. (*See supra* at 2-3, n.2.) Given this, and Defendants' ability and willingness to commit that this Settlement will be honored regardless of the outcome in the CFPB action (*see supra* at 8), this factor supports approval. *In re AremisSoft*

26

*Corp. Sec. Litig.*, 210 F.R.D. 109, 125-26 (D.N.J. 2002) (emphasizing defendants'

inability to withstand a larger judgment as weighing in favor of reasonableness).[11]

      6.  <u>The settlement is within the range of reasonableness, supporting
approval</u>.

The eighth and ninth *Girsh* factors examine the range of reasonableness of the

settlement fund in light of the best possible recovery and all the attendant risks of

litigation. As discussed above, this settlement falls well within the range of

reasonableness in light of the best possible recovery. (*See supra* at 18-20.) This is

underscored by the attendant risks of litigation, including Defendants' potential

inability to withstand a greater judgment. Here, the Settlement provides for more

than 70% of the difference between the New Jersey usury rate and the interest

Settlement Class Members paid above that rate. And, even when viewed against the

total interest Settlement Class Members paid or the potential for treble damages, the

Gross Settlement Amount is well within the range of reasonableness. (*See supra* at

18-20 (quoting cases on the approved range of recovery).)

Moreover, the Settlement secures relief regardless of the outcome of the

CFPB action and provides significant monetary and non-monetary relief now. All of

---

[11] *See also McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 645 (E.D. Pa. 2015)
("Even if solvency could be assured, I would follow my district court colleagues
within the Third Circuit who regularly find a settlement to be fair even though the
defendant has the practical ability to pay greater amounts.") (internal quotations
omitted).

this supports approval. *See In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved…. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*.") (internal citations and quotations omitted)*, aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).

## III.   THE CLASS NOTICE WAS REASONABLE

The class notice program in this case was reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Nat'l Football Players Litig.*, 821 F.3d at 435 (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)). That is the type of notice that was provided here.

The Settlement Administrator provided direct notice of the Settlement to the Settlement Class via U.S. Mail to their last known address and, after searching for

addresses, skip traces, and remailing, just over 96% of the notices were successfully delivered. (*See supra* at 13-14, n.7.) This confirms the effectiveness of the notice program. *See e.g., Demmick v. Cellco P'ship*, No. 06-2163, 2015 WL 13643682, at *5 (D.N.J. May 1, 2015) (approving settlement where notice plan reached approximately 76.1% of likely settlement class members).

The content of the Settlement Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (6) the date and time of the final approval hearing; (7) contact information for the Settlement Administrator; and (8) information regarding Class Counsel and the amount that Class Counsel would seek in attorneys' fees and costs (including settlement administration expenses), as well as the amount of the proposed Class Representative service awards. (Settlement Agreement Exs. C-D, ECF Nos. 112-6 and 112-7.)

No Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website— which contained the Long Form Notice and Settlement Agreement—call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel. All of

29

this supports approval.

## IV.   THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED.

Finally, for all the reasons stated in Plaintiffs' Motion for Class Certification, the Court's order and opinion granting certification, Plaintiffs' Preliminary Approval briefing on certification, and the Preliminary Approval Order modifying the certification order to certify the Settlement Class, the Settlement Class should remain certified for the purposes of this Settlement. (*See* ECF Nos. 93-1, 97, 102-103, 112-1, 118.)

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this unopposed Motion for Final Settlement Approval and the pending unopposed Motion for Attorneys' Fees, Costs, and Class Representative Service Awards, and enter the accompanying proposed order.

Respectfully submitted,

Dated: September 14, 2020          s/Patricia A. Barasch

**NICHOLS KASTER, PLLP**
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
Robert L. Schug, MN Bar No. 0387013*
Matthew H. Morgan, MN Bar No. 304657*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

aprakash@nka.com
bspecht@nka.com
schug@nka.com
morgan@nka.com

**GUPTA WESSLER PLLC**
Matthew Wessler*
1700 L Street, NW, Suite 312
Washington, DC 20036
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
matt@guptawessler.com

**SCHALL & BARASCH, LLC**
Patricia A. Barasch, NJ Bar No. 0055480
Moorestown Office Center
110 Marter Ave, Suite 105
Moorestown, NJ 08057
Telephone: (856) 914-9200
Facsimile: (856) 914-9420
pbarasch@schallandbarasch.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs John MacDonald, Jessica Spearman, and the Settlement Class*